UNITED STATES DISTRICT COURT
Southern District of Florida

Case Number: _____

Ahuva Gamliel _____

_____

_____

                                        Plaintiff(s)

v.

Magicsoft Group inc. _____

_____

_____

_____

                                        Defendant(s)

FILED BY _MCO_ D.C.

NOV 18 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

(TITLE OF DOCUMENT)

NOTICE OF REMOVAL _____

I, Gabriel Bar Shany  defendant, in the above styled cause,

Filed notice of removal as attached.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Certificate of Service**

I Gabriel Bar Shany, certify that on this date  November 18, 2025  a true copy  of the foregoing document was

mailed to: Joshua H. Eggnatz Esq, 7450 Griffin Rd, Suite 230 Davie, FL 33314

name(s) and address(es)

_____

_____

_____

By:

| | |
|---|---|
| Gabriel Bar Shany | /s/Gabriel Bar Shany |
| Printed or typed name of Filer | Signature of Filer |
| | |
| | |
| Florida Bar Number | E-mail address |
| 305-890-1334 | |
| Phone Number | Facsimile Number |

323 Sunny isles Blvd, 7th Floor , Sunny Isles beach FL 33160

Street Address

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION        CASE NO.: 2025-004959-CA-01

AHUVA GAMLIEL,
            Plaintiff,

vs.

MAGICSOFT GROUP INC. d/b/a
DealEstate.Ai, BELLA COHEN,
GABRIEL BAR SHANY, and SHANI BAR,
            Defendants.

_____/

**NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**TO THE CLERK OF THE CIRCUIT COURT AND TO ALL PARTIES AND THEIR
COUNSEL OF RECORD:**

> Defendants Bella Cohen, Gabriel Bar Shany, and Shani Bar (hereinafter "Removing
> Defendants") hereby give notice of removal of this action to the United States District
> Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1334, 1452(a), and
> 1446.

**I.
STATUTORY AUTHORITY FOR REMOVAL**

1. Title 28, United States Code, Section 1452(a) authorizes removal of "any claim or
   cause of action in a civil action" to the district court for the district where the civil
   action is pending, provided that the district court has jurisdiction under 28 U.S.C. §
   1334. The statute imposes no requirement that the removing party be the debtor in
   bankruptcy. See Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1094 (9th Cir. 2004);
   Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 995 (5th Cir. 1985).
2. The United States District Court for the Southern District of Florida possesses subject
   matter jurisdiction over this action under 28 U.S.C. § 1334(b), which confers upon
   district courts "original but not exclusive jurisdiction of all civil proceedings arising
   under title 11, or arising in or related to cases under title 11."
3. This proceeding is "related to" a bankruptcy case currently pending before the United
   States Bankruptcy Court for the Southern District of New York, as more fully
   described herein.

**II.
TIMELINESS OF REMOVAL**

4. On September 26, 2025, an involuntary petition under Chapter 7 of the Bankruptcy
   Code was filed against MAGICSOFT GROUP INC. (the "Debtor") in the United

A TRUE COPY
CERTIFICATION ON LAST PAGE

States Bankruptcy Court for the Southern District of New York, Case No. 4:25-bk-35888.

5. On November 5, 2025, Plaintiff commenced an Adversary Proceeding in the United States Bankruptcy Court for the Southern District of New York involving the parties to this action and arising from substantially identical facts and claims, Adversary Proceeding No. 25-09019-kyp, assigned to the Honorable Kyu Young Paek, United States Bankruptcy Judge.

6. On November 6, 2025, this Court entered an Order purporting to grant default against Removing Defendants notwithstanding the automatic bankruptcy stay.

7. This Notice of Removal is filed within thirty days of the entry of the default order and within a reasonable time after the grounds for removal became fully apparent to Removing Defendants. Removal is therefore timely under 28 U.S.C. § 1446(b). See Church v. Accretive Health, Inc., 654 F.3d 537, 540 (5th Cir. 2011); Encompass Ins. Co. v. Stone Mansion Restaurant Inc., 902 F.3d 147, 152 (3d Cir. 2018).

## III.
## PROCEDURAL HISTORY

8. On March 30, 2025, Plaintiff filed her original Complaint in this Court.

9. On July 9, 2025, Plaintiff filed her First Amended Complaint.

10. On August 20, 2025, this Court entered an Order granting Defendants' counsel's Motion to Withdraw and directing all Defendants to retain substitute counsel or file notice of self-representation within thirty days.

11. On August 26, 2025, this Court entered an Order directing each Defendant to respond to Plaintiff's Amended Complaint within twenty days of compliance with the August 20, 2025 Order.

12. On September 26, 2025, the filing of an involuntary petition under Chapter 7 of the Bankruptcy Code against the Debtor (Case No. 4:25-bk-35888, Bankr. S.D.N.Y.) automatically invoked the stay under 11 U.S.C. § 362(a), thereby tolling all deadlines in this action by operation of federal law. See In re Coho Energy, Inc., 395 F.3d 198, 203 (5th Cir. 2004) ("The automatic stay tolls all statutes of limitations and other deadlines for action against the debtor."); Drywall Tapers & Pointers of Greater N.Y. v. Local 530 of Operative Plasterers' & Cement Masons', 954 F.2d 69, 74 (2d Cir. 1992).

13. On September 29, 2025, Plaintiff filed her Amended Renewed Motion for Court's Default. Notably, in footnote 1 of that motion, Plaintiff expressly acknowledged the bankruptcy filing, stating that she was "amending this motion in light the potential automatic stay against MAGICSOFT GROUP INC."

14. On November 3, 2025, Removing Defendants filed their Opposition to Plaintiff's Motion for Default, contending that federal bankruptcy law precluded entry of default because the automatic stay had tolled all deadlines before they came due.

15. On November 5, 2025, this Court conducted a hearing on Plaintiff's Motion for Default. Removing Defendants appeared pro se and argued that federal bankruptcy law rendered compliance with this Court's orders legally impossible. On that same date, Plaintiff commenced Adversary Proceeding No. 25-09019-kyp in the bankruptcy court.

16. On November 6, 2025, this Court entered its Order granting default against Removing Defendants, stating that Removing Defendants "failed to comply" with prior orders

A TRUE COPY
CERTIFICATION ON LAST PAGE

without addressing Removing Defendants' argument that compliance was prohibited by the automatic stay.

17. Copies of all process, pleadings, and orders served upon Removing Defendants in this action are attached hereto as Exhibit A and incorporated herein by reference.

# IV.
## SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1334(b)

18. The District Court possesses subject matter jurisdiction over this action under 28 U.S.C. § 1334(b) because this action is "related to" a bankruptcy case pending in the Southern District of New York.

19. A civil proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); accord Lemieux v. Young, 211 F.3d 1277, 1282 (11th Cir. 2000). The "related to" test is to be construed broadly to permit "considerable flexibility." In re Wood, 825 F.2d 90, 93 (5th Cir. 1987).

20. This action satisfies the "related to" test for multiple independent reasons, any one of which suffices to establish federal jurisdiction.

## A. Indemnification Obligations Create Direct, Immediate Claims Against the Bankruptcy Estate

21. Removing Defendants are independent contractors of the Debtor pursuant to written agreements executed in the ordinary course of the Debtor's business. These agreements contain mandatory indemnification provisions obligating the Debtor to indemnify, defend, and hold harmless Removing Defendants against any claims, demands, losses, liabilities, and expenses—including attorneys' fees—arising from Removing Defendants' performance of services for the Debtor.

22. Pursuant to these indemnification agreements, every dollar that Removing Defendants expend in defending this action creates an immediate and automatic claim against the bankruptcy estate. Unlike a guarantee, which is contingent and secondary, indemnification is primary and immediate. The distinction is legally significant.

23. The indemnification obligations render the bankruptcy estate the real party in interest. Removing Defendants are merely conduits through which Plaintiff seeks to reach and deplete estate assets, thereby interfering with orderly estate administration and prejudicing other creditors—precisely the harms that the automatic stay is designed to prevent.

24. Federal courts have uniformly held that actions against non-debtor parties who are entitled to indemnification from a bankruptcy debtor are "related to" the bankruptcy case and fall within the bankruptcy court's jurisdiction:

   a. In A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986), the Fourth Circuit held that when indemnification obligations exist, "suits against non-debtor defendants are, in actuality, suits against the debtor" because "whatever the non-debtor defendants pay to satisfy claims against them is reimbursable from the debtor." The court extended the automatic stay to protect the bankruptcy estate from depletion through indemnification obligations.

   b. In Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991), the Third Circuit explicitly stated: "Where officers and directors are entitled to indemnification from the debtor corporation, suits against them may be stayed

A TRUE COPY
CERTIFICATION ON LAST PAGE

because such suits, in reality, are against the debtor." This principle applies with equal force here.

c. In Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287–88 (2d Cir. 2003), the Second Circuit held that the automatic stay extends to non-debtor parties when "there is such an identity of interest between debtor and third party that the debtor may be considered the real party defendant."

d. In Credit Suisse First Bos. Corp. v. Gowrish, 191 F. App'x 162, 165 (3d Cir. 2006), the Third Circuit applied the "unusual circumstances" test and found that indemnification obligations satisfied that standard.

e. In In re Zale Corp., 62 F.3d 746, 760 (5th Cir. 1995), the Fifth Circuit held that the automatic stay extends to protect the bankruptcy estate from depletion through indemnification obligations.

f. In In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993), the Sixth Circuit held that corporate officers entitled to indemnification from a debtor corporation are protected by the automatic stay because suits against them would deplete estate assets.

25. Bankruptcy courts have likewise consistently extended the automatic stay to indemnified parties:

g. In In re Am. Film Techs., Inc., 175 B.R. 847, 855 (Bankr. D. Del. 1994), the bankruptcy court stayed proceedings against directors and officers because the debtor's indemnification obligations would deplete estate assets and defeat the fundamental purpose of the automatic stay.

h. In In re Family Health Servs., Inc., 105 B.R. 937, 942–43 (Bankr. C.D. Cal. 1989), the court stayed collection actions against non-debtor members specifically because "judgments against nondebtors would trigger claims for indemnification from the debtor," thereby depleting estate assets.

i. In In re Uni-Marts, LLC, 399 B.R. 400, 416 (Bankr. D. Del. 2009), the court held that when action against a non-debtor will have a "material effect upon reorganization efforts" through indemnification obligations, the automatic stay extends to that non-debtor.

26. Allowing this action to proceed will deplete the bankruptcy estate, interfere with orderly estate administration, prejudice other creditors, and undermine the collective bankruptcy process. These consequences fall squarely within the "related to" test and establish federal jurisdiction.

**B. Adversary Proceeding Pending in Bankruptcy Court Involves Identical Parties and Claims**

27. On November 5, 2025—the very day of the default hearing in this Court—Plaintiff commenced Adversary Proceeding No. 25-09019-kyp in the United States Bankruptcy Court for the Southern District of New York. The Adversary Proceeding involves the identical parties to this action.

28. The Adversary Proceeding arises from the identical facts, transactions, and business relationships that form the basis of this state court action. Plaintiff has thus elected to litigate these claims in the bankruptcy court.

29. The bankruptcy court possesses comprehensive jurisdiction over all matters affecting the bankruptcy estate under 28 U.S.C. § 1334(a) and (b), including adversary proceedings. Bankruptcy Rule 7001.

A TRUE COPY
CERTIFICATION ON LAST PAGE

30. When an adversary proceeding is pending in bankruptcy court involving identical parties and claims, parallel state court proceedings are necessarily "related to" the bankruptcy case because they implicate the same core issues affecting estate administration. In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992); see also In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987).

31. Permitting this action to proceed in state court while Adversary Proceeding No. 25-09019-kyp proceeds in bankruptcy court creates an unacceptable risk of inconsistent judgments, duplicative discovery, wasteful litigation expenses, and interference with orderly bankruptcy administration. The bankruptcy court is better positioned to resolve all related disputes in a single, coordinated proceeding.

**C. Automatic Stay Applicability Constitutes Core Bankruptcy Issue**

32. The central legal issue presented by this case is whether the automatic stay under 11 U.S.C. § 362(a) extends to Removing Defendants through indemnification obligations and whether this Court's entry of default violated federal bankruptcy law.

33. Only the bankruptcy court possesses jurisdiction to determine stay applicability and to grant relief therefrom. In re James Wilson Assocs., 965 F.2d at 169; In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1301 (7th Cir. 1997) ("The bankruptcy court has exclusive jurisdiction to determine whether the automatic stay applies.").

34. This core bankruptcy issue directly affects estate administration, creditor priorities, and the integrity of the bankruptcy process. Resolution of this issue is properly within the exclusive purview of the bankruptcy court, not this state court.

**D. Determining Debtor's Liability and Contractual Obligations Affects Estate Administration**

35. Plaintiff's claims against Removing Defendants require determining the nature, scope, and validity of the Debtor's conduct and potential liability to Plaintiff. Any finding of liability against Removing Defendants based on acts performed for the Debtor will necessarily determine or affect the Debtor's own liability to Plaintiff.

36. Resolution of this action also requires interpreting and applying the independent contractor agreements between Removing Defendants and the Debtor, including the indemnification provisions. These contractual interpretations will directly affect the calculation of claims against the estate and the administration of estate assets.

37. Such determinations are core bankruptcy matters affecting estate valuation, claim allowance, asset distribution, and creditor priorities—all within the bankruptcy court's comprehensive jurisdiction under 28 U.S.C. § 1334.

## V.
## PLAINTIFF'S COUNSEL'S MISREPRESENTATION OF PUIG V. PADC MARKETING, LLC

38. At the November 5, 2025 hearing, Plaintiff's counsel cited Puig v. PADC Mktg., LLC, 26 So. 3d 45 (Fla. 3d DCA 2009), and argued that the automatic stay does not extend to Removing Defendants. This argument reflects a material misreading of controlling authority.

39. Puig involved a guarantee obligation—a contingent, secondary liability that arises only upon default by the primary obligor. The Third District concluded that a

guarantee is insufficient to extend the automatic stay because the guarantor and debtor are "separate and distinct entities" with no identity of interests. Puig, 26 So. 3d at 46–47.

40. Critically, however, Puig explicitly distinguished guarantees from indemnification obligations and recognized that "unusual circumstances" warranting stay extension exist "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Id. at 47 (citing A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991)).

41. The very authorities upon which Puig relies support extension of the stay to indemnified parties. Puig cites with approval A.H. Robins, which held that the stay extends to non-debtors with indemnification obligations because "suits against non-debtor defendants are, in actuality, suits against the debtor." A.H. Robins, 788 F.2d at 999.

42. Puig also cites Maritime Electric, which explicitly held: "Where officers and directors are entitled to indemnification from the debtor corporation, suits against them may be stayed because such suits, in reality, are against the debtor." Maritime Elec., 959 F.2d at 1204. This is precisely the situation presented here.

43. The distinction between guarantees and indemnification is fundamental and dispositive:

    j.  A guarantee is secondary, contingent, and may never be triggered. The guarantor pays only if the primary obligor defaults. Puig correctly held this insufficient.

    k.  Indemnification is primary, automatic, and immediate. Every dollar spent by the indemnified party creates an instant claim against the indemnitor. The indemnified party and indemnitor have an identity of interests that renders them, in substance, the same party for purposes of the automatic stay.

44. Federal bankruptcy courts have uniformly recognized this distinction and extended the stay to indemnified parties while declining to extend it to guarantors. See In re Family Health Servs., Inc., 105 B.R. at 942 (distinguishing guarantees from indemnification and staying actions against indemnified parties).

45. Moreover, Florida is not the source of controlling law on this issue. Whether the automatic stay extends to indemnified parties is a question of federal bankruptcy law, not state procedural law. Federal circuit courts have uniformly held that mandatory indemnification obligations create the "unusual circumstances" necessary to extend the automatic stay as discussed above.

46. This uniform federal authority controls, not the Florida Third District's decision in Puig addressing guarantee obligations under Florida law.

47. The Court should not rely on a mischaracterization of Puig. The case, properly understood and applied to indemnification situations, supports extension of the automatic stay to Removing Defendants. The federal circuit authority upon which Puig itself relies compels that conclusion.

## VI.
## THE DEFAULT ORDER IS VOID AB INITIO

48. The November 6, 2025 default order is void ab initio because it was entered in violation of the automatic bankruptcy stay. "Any order entered in violation of the automatic stay is void ab initio." Kalb v. Feuerstein, 308 U.S. 433, 439 (1940); accord

A TRUE COPY
CERTIFICATION ON LAST PAGE

In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992); Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).

49. A void judgment is a legal nullity that may be attacked at any time, directly or collaterally, without limitation. Security Farms v. Int'l Bhd. of Teamsters, 124 F.3d 999, 1003 (9th Cir. 1997); Williams v. Hall, 966 F.2d 616, 618 (11th Cir. 1992).

50. The automatic stay became effective upon filing of the bankruptcy petition—September 26, 2025—without need for judicial action or notice to creditors. In re Club Assocs., 956 F.2d 1065, 1068 (11th Cir. 1992) ("The automatic stay is self-executing; it is effective immediately upon the filing of a bankruptcy petition.").

51. The stay "tolls all statutes of limitations and other deadlines for action against the debtor." In re Coho Energy, Inc., 395 F.3d at 203. All deadlines in this action were tolled by operation of federal law from September 26, 2025 forward. Removing Defendants could not comply with this Court's orders without violating the automatic stay.

52. Parties cannot be faulted for complying with federal law. In re Lansdowne Family Trust, 478 B.R. 650, 656 (B.A.P. 9th Cir. 2012). Entry of default for failure to meet tolled deadlines is legally improper and constitutes reversible error.

## VII.
## REMOVAL REQUIRES NO CONSENT FROM CO-DEFENDANT IN BANKRUPTCY

53. Removing Defendants need not obtain consent from co-defendant MAGICSOFT GROUP INC. to effect removal.

54. The "forum defendant rule" of 28 U.S.C. § 1441(b)(2) does not apply to removal under 28 U.S.C. § 1452(a). Bankruptcy removal is governed exclusively by § 1452, which contains no forum defendant restriction.

55. Moreover, the Debtor is currently subject to the automatic stay and cannot participate in this litigation without bankruptcy court approval. The rule of unanimity requiring all defendants to consent to removal does not apply when a co-defendant is in bankruptcy and legally incapable of consenting. In re White Mountain Mining Co., 403 F.3d 164, 167 (4th Cir. 2005); Belton v. Stephan's, Inc., 177 F.3d 144, 147 n.2 (2d Cir. 1999).

## VIII.
## RESERVATION OF RIGHTS REGARDING WILLFUL STAY VIOLATIONS

56. Plaintiff's September 29, 2025 motion for default expressly acknowledged the bankruptcy filing in footnote 1, demonstrating actual knowledge of the automatic stay. Notwithstanding this knowledge, Plaintiff proceeded to prosecute the motion without first seeking relief from the automatic stay from the bankruptcy court.

57. Willful violations of the automatic stay entitle the injured party to actual damages, costs, and attorneys' fees. 11 U.S.C. § 362(k)(1); In re Dawson, 390 F.3d 1139, 1148 (9th Cir. 2004). "Willfulness" requires only knowledge of the bankruptcy filing and an intentional act in violation of the stay; no specific intent to violate the stay is required. In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989).

58. Removing Defendants expressly reserve all rights to file appropriate motions seeking damages, costs, and attorneys' fees under 11 U.S.C. § 362(k)(1) for willful violations of the automatic stay, and to seek referral of counsel's conduct to appropriate

A TRUE COPY
CERTIFICATION ON LAST PAGE

authorities for potential violations of applicable rules of professional conduct, at such time and in such court as may be appropriate.

## IX.
## VENUE IN THE SOUTHERN DISTRICT OF FLORIDA

59. Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1452(a) because this action is currently pending in Miami-Dade County, Florida, which lies within the Southern District of Florida.

60. Removing Defendants intend to file a Motion to Transfer Venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1412, given that the main bankruptcy case (Case No. 4:25-bk-35888) and the Adversary Proceeding (Adv. Proc. No. 25-09019-kyp) are both pending before Judge Kyu Young Paek in that district.

## X.
## NO PRIOR REMOVAL ATTEMPTED

61. No party has previously sought to remove this action to federal court.

## XI.
## CERTIFICATION

62. Pursuant to Local Rule 5.1(a) of the United States District Court for the Southern District of Florida, Removing Defendants certify that this matter is not appropriate for referral to mediation at this time given the pending bankruptcy proceedings and the need for bankruptcy court determination of stay-related issues.

WHEREFORE, Removing Defendants respectfully request that this Court take no further action in this matter, and that following removal to the United States District Court for the Southern District of Florida, the federal court:

1. Declare that this action is properly removed and "related to" the bankruptcy case pending in the Southern District of New York;

2. Vacate the November 6, 2025 default order as void ab initio;

3. Stay all proceedings pending resolution of the bankruptcy case and Adversary Proceeding No. 25-09019-kyp;

4. Transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1412 for coordination with the bankruptcy case and adversary proceeding; and

A TRUE COPY
CERTIFICATION ON LAST PAGE

\

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of November, 2025, a true and correct copy of the foregoing Notice of Removal was served by U.S. Mail and email upon all parties and counsel of record as follows:

Joshua H. Eggnatz, Esquire
Michael J. Pascucci, Esquire
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, Florida 33314
Email: JEggnatz@JusticeEarned.com
Email: MPascucci@JusticeEarned.com
Email: LegalAssist@justiceearned.com

Ahuva Gamliel (Plaintiff)
By Her Attorney

*MAGICSOFT GROUP INC. d/b/a DealEstate.Ai was not served due to the automatic bankruptcy stay under 11 U.S.C. § 362(a).*

/s/ Gabriel Bar Shany
GABRIEL BAR SHANY
On behalf of all Removing Defendants

STATE OF FLORIDA, COUNTY OF MIAMI-DADE
I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN THIS OFFICE
JUAN FERNANDEZ-BARQUIN, Clerk of the Court and Comptroller, Miami-Dade County
AD 20
Deputy Clerk

5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 13, 2025


/s/ Bella Cohen
BELLA COHEN, Pro Se
323 Sunny Isles Blvd., 7th Floor
Sunny Isles Beach, FL 33160
Telephone: (310) 409-5906
Email: bella@dealestate.ai


/s/ Gabriel Bar Shany
GABRIEL BAR SHANY, Pro Se
323 Sunny Isles Blvd., 7th Floor
Sunny Isles Beach, FL 33160
Telephone: (305) 890-1334
Email: gabi@dealestate.ai



/s/ Shani Bar
SHANI BAR, Pro Se
323 Sunny Isles Blvd., 7th Floor
Sunny Isles Beach, FL 33160
Telephone: (305) 890-7029
Email: shani@dealestate.ai

United States Bankruptcy Court
Southern District of New York



## Notice of Involuntary Bankruptcy Case Filing

An involuntary bankruptcy case concerning the debtor(s) listed below was filed under Chapter 7 of the United States Bankruptcy Code, entered on 08/18/2025 at 09:24 AM and filed on 08/17/2025.

**MagicSoft Grp Inc.**
2 Cradinal Ln.
Monsey, NY 10952
Tax ID / EIN: 00-0000000

The case was filed by the following petitioning creditor(s):

**Aron Berlin**
4118 14th Ave
Brooklyn, NY 11219

The case was assigned case number 25-35888-kyp to Judge Kyu Young Paek.

If you would like to view the bankruptcy petition and other documents filed by the petitioning creditor(s) and the debtor, they are available at our *Internet* home page http://ecf.nysb.uscourts.gov or at the Clerk's Office, 355 Main Street, Poughkeepsie, NY 12601.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Vito Genna**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/17/2025 09:02:44 | | |
| PACER Login: | BARRYAK1964 | Client Code: | |
| Description: | Notice of Filing | Search Criteria: | 25-35888-kyp |
| Billable Pages: | 1 | Cost: | 0.10 |



**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-004959-CA-01
SECTION: CA06
JUDGE: Charles Johnson

**Ahuva Gamliel**

Plaintiff(s)

vs.

**MAGICSOFT GROUP INC et al**

Defendant(s)

_____/

## ORDER ON DEFENDANTS' COUNSEL'S MOTION TO WITHDRAW

THIS CAUSE HAVING come before this Court on Motion to Withdraw as Attorney for Defendants', MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR filed July 18, 2025, and appropriate notice having been given, it is hereby,

ORDERED AND ADJUDGED as follows:

1. The Motion to Withdraw is GRANTED.

1. Movant shall mail and email a copy of this order whenever possible to

a. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at  gabi@dealestate.ai.

b. Defendant BELLA COHEN at bella@dealestate.ai.

c. Defendant GABRIEL BAR SHANY at  gabi@dealestate.ai.

d. Defendant SHANI BAR shani@dealestate.ai.

e. Within 30 days from the date of this order, each of the Defendants shall either:

f. Retain a new counsel and have that counsel file a written appearance with the Clerk of the Court, OR

g. File a written notice with the Clerk of the Court advising that each, or of which, of the Defendants will represent himself/herself.

**(NOTE: IF MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai IS A CORPORATION, TRUSTEE OR A TRUST, PERSONAL REPRESENTATIVE**

**OF AN ESTATE, OR OTHERWISE NAMED IN A REPRESENTATIVE CAPACITY, THEN IT BY LAW MUST RETAIN COUNSEL.)**

h. **https://www.myflcourtaccess.com/default.aspx). Any party or counsel may sign up for text alerts IN ADDITION TO proper registration on the portal. If a party is not able to check an email account regularly, but has a working phone with text capability, the Court strongly encourages signing up for text alerts (https://www.jud11.flcourts.org/Programs-and-Services/Online- Services/Hearing-Text-Alerts).**

i. Failure by any Defendant to comply with the preceding paragraphs will create a presumption that the Defendant no longer wishes to participate in this lawsuit and the Court may sua sponte or on motion of opposing party impose sanctions against that Defendant. Sanctions may include the imposition of fees and costs, striking of pleadings, entry of default, and dismissal with prejudice.

j. In the interim, each of the Defendants are required to comply with orders/notices requiring Defendants' appearance in court; any pending order requiring compliance is stayed for thirty (30) days.

k. THE CLERK OF THE COURTS AND PLAINTIFF'S COUNSEL IS DIRECTED TO SEND ALL FUTURE NOTICES, PLEADINGS, MOTIONS AND OTHER DOCUMENTS FILED IN THIS CASE TO:

Defendants may be served at the following address:

l. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at 323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

m. Defendant BELLA COHEN at 323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

n. Defendant GABRIEL BAR SHANY at 323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

o. Defendant SHANI BAR at 323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

Contacted via telephone at the following number(s):

p. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at (305) 890-1334.

q. Defendant BELLA COHEN at (310) 409-5906.

r. Defendant GABRIEL BAR SHANY at (305) 890-1334.

s. Defendant SHANI BAR at (305) 890- 7029.

Contacted and served documents at their following designated via email(s):

t. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at gabi@dealestate.ai.

u. Defendant BELLA COHEN at bella@dealestate.ai.

v. Defendant GABRIEL BAR SHANY at gabi@dealestate.ai.

w. Defendant SHANI BAR at shani@dealestate.ai.

x. Each of the Defendants are responsible for updating their address by filing a notice of new address with the Clerk of the Court and providing a copy to the opposing counsel. Failure to update the address shall constitute a waiver of any defenses due to lack of notice.

y. **THIS ORDER DOES NOT CHANGE ANY CURRENT TRIAL SETTING IN THIS CASE.**

z. **THIS ORDER DOES NOT CANCEL ANY PENDING FORECLOSURE SALE DATE.**

aa. **THE PARTIES SHOULD NOTE THAT THE GRANTING OF THIS MOTION TO WITHDRAW IS NOT A STAY OF THIS CASE NOR WILL IT RESULT IN A CONTINUANCE OR EXTENSION OF TIME FOR ANY PENDING MOTION, HEARING DATE OR TRIAL DATE. HOWEVER, ANY PENDING ORDER REQUIRING COMPLIANCE IS STAYED FOR THIRTY (30) DAYS.**

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 20th day of August, 2025.

2025-004959-CA-01 08-20-2025 10:08 AM
Hon. Charles Johnson

**CIRCUIT COURT JUDGE**
Electronically Signed

---

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

---

**Electronically Served:**

- Joshua H. Eggnatz: JEggnatz@JusticeEarned.com
- Joshua H. Eggnatz: SGizzie@JusticeEarned.com
- Joshua H. Eggnatz: LegalAssist@justiceearned.com
- Michael J. Pascucci: MPascucci@JusticeEarned.com
- Omar M Salazar II: omar@lawlp.com
- Omar M Salazar II: robin@lawlp.com
- Omar M Salazar II: christina@lawlp.com
- Robin Richison: robin@lawlp.com
- Robin Richison: christina@lawlp.com

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2025-004959-CA-01
SECTION: CA06
JUDGE: Charles Johnson

**Ahuva Gamliel**

Plaintiff(s)

vs.

**MAGICSOFT GROUP INC et al**

Defendant(s)

_____/

**ORDER ON PLAINTIFF'S AMENDED RENEWED MOTION FOR COURT'S DEFAULT AGAINST THE INDIVIDUAL DEFENDANTS**

      THIS CAUSE having come before the Court on Plaintiff's Amended Renewed Motion for Court's Default against Defendants, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR, individually and collectively, for their failure to plead or otherwise defend within the period of time provided by law, and for their failure to comply with the Court's Orders, and the Court being otherwise fully advised in the premises, including its review of record and hearing argument from counsel and the parties at the duly noticed November 5, 2025 hearing on the above cause, the Court finds, and it is hereby **ORDERED and ADJUDGED** as follows:

1. Plaintiff's Renewed Motion for Court's Default is **GRANTED.**

2. On August 20, 2025, the Court entered its Order on Defendants' Counsel's Motion to Withdraw ("Withdraw Order"). The Court ordered all Defendants to retain new counsel or file a written notice with the Clerk advising that each, or of which, of the Defendants will represent him/her/itself within 30 days. All of the Defendants have failed to comply with the Court's Withdraw Order.

3. On August 26, 2025, the Court entered its Order on Plaintiff's Motion for Court's Default, and Defendant's Motion for Extension of Time to Respond to Plaintiff's Amended Complaint ("Order to Respond to Amended Complaint"). The Court ordered each Defendant to file their respective response to Plaintiff's Amended Complaint within 20 days of compliance of the Court's Withdraw Order, and ordered that a failure by any Defendant to timely comply with the Withdraw Order may result in the Court's imposition of sanctions,

including the imposition of fees and costs, striking of pleadings, and an entry of default. All of the Defendants have failed to comply with the Order to Respond to Amended Complaint.

4. The Court's written Withdraw Order, and the Court's oral instructions to each of the Defendants that were physically present at the August 19, 2025 hearing on the above motions clearly advised Defendants that: "Failure by any Defendant to comply with the preceding paragraphs will create a presumption that the Defendant no longer wishes to participate in this lawsuit and the Court may sua sponte or on motion of opposing party impose sanctions against that Defendant. Sanctions may include the imposition of fees and costs, striking of pleadings, entry of default, and dismissal with prejudice."

5. No Defendant has retained new counsel, filed a notice that he or she intends to proceed pro se, or responded to the Amended Complaint.

6. Because each of Defendants has failed to comply with the Withdraw Order and the Order to Respond to Amended Complaint, and have otherwise failed to defend as required by law, the Court enters a Court's default against the Defendants BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR, individually and collectively, and awards Plaintiff entitlement to attorney's fees and costs as permitted by applicable law.

7. Plaintiff shall file an affidavit of damages and costs, including the basis for the amount of, reimbursable attorney's fees and costs, to be set for a final hearing on damages for the entry of a final default judgment against the Defendants.

8. Plaintiff is entitled to an award of attorney's fees and costs in an amount to be determined by the Court. The Court reserves jurisdiction to determine the amount of attorneys' fees and costs in this litigation.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 6<u>th</u> day of November, 2025.

<u>2025-004959-CA-01 11-06-2025 5:16 PM</u>
Hon. Charles Johnson

**CIRCUIT COURT JUDGE**
Electronically Signed

---

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

---

**Electronically Served:**

- Joshua H. Eggnatz: jeggnatz@justiceearned.com
- Joshua H. Eggnatz: sgizzie@JusticeEarned.com
- Joshua H. Eggnatz: JEggnatz@JusticeEarned.com
- Joshua H. Eggnatz: SGizzie@JusticeEarned.com
- Joshua H. Eggnatz: LegalAssist@justiceearned.com
- Michael J. Pascucci: MPascucci@JusticeEarned.com
- Gabriel Bar Shany: gabi@dealestate.ai
- Bella Cohen: bella@dealestate.ai
- Shani Bar: shani@dealestate.ai
- Magicsoft Group Inc. d/b/a DealEstate.Ai: gabi@dealestate.ai
- Omar M Salazar II: omar@lawlp.com
- Omar M Salazar II: robin@lawlp.com
- Omar M Salazar II: nick@lawlp.com
- Robin Richison: robin@lawlp.com
- Robin Richison: christina@lawlp.com

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA**

Case No.: 2025-004959-CA-01

AHUVA GAMLIEL

     *Plaintiff,*

vs.

MAGICSOFT GROUP INC. d/b/a
DealEstate.Ai, BELLA COHEN,
GABRIEL BAR SHANY, and SHANI BAR

     *Defendants.*

_____/

## PLAINTIFF'S RENEWED MOTION FOR COURT'S DEFAULT

COMES NOW, the Plaintiff, AHUVA GAMLIEL, pursuant to FLA. R. CIV. P. 1.500(b), and moves for entry of a default by the Court against Defendants, MAGICSOFT GROUP INC. d/b/a DealEstate.Ai, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR for their failure to plead or otherwise defend within the period of time provided by law, and for their failure to comply with the Court's Orders. In support thereof states as follows:

1.   On March 30, 2025, Plaintiff filed her original Complaint.

2.   On July 9, 2025, Plaintiff filed her First Amended Complaint.

3.   On August 20, 2025, the Court entered its Order on Defendants' Counsel's Motion to Withdraw ("Withdraw Order"). Attached as **Exhibit A.** The Court ordered all Defendants to retain new counsel or file a written notice with the Clerk advising that each, or of which, of the Defendants will represent him/her/itself within 30 days. All of the Defendants have failed to comply with the Court's Withdraw Order.

4.   On August 26, 2025, the Court entered its Order on Plaintiff's Motion for Court's Default, and Defendant's Motion for Extension of Time to Respond to Plaintiff's Amended Complaint ("Order to Respond to Amended Complaint"). Attached as **Exhibit B**. The Court ordered each Defendant to file their respective response to Plaintiff's Amended Complaint within 20 days of compliance of the Court's Withdraw Order, and ordered that a failure by any Defendant to timely comply with the Withdraw Order may result in the Court's imposition of sanctions, including the imposition of fees and costs, striking of pleadings, and an entry of default. All of the Defendants have failed to comply with the Order to Respond to Amended Complaint.

5.   The Court's written Withdraw Order, and oral admonishment to the Defendants at the August 19, 2025 hearing on the above motions also clearly advised Defendants that: "Failure by any Defendant to comply with the preceding paragraphs will create a presumption that the Defendant no longer wishes to participate in this lawsuit and the Court may sua sponte or on motion of opposing party impose sanctions against that Defendant. Sanctions may include the imposition of fees and costs, striking of pleadings, entry of default, and dismissal with prejudice."

6.   Because each of Defendants has failed to comply with the Withdraw Order and the Order to Respond to Amended Complaint, and have otherwise failed to defend, the Court should impose sanctions against the Defendants, including the entry of a Court's default against the Defendants, and awarding entitlement to attorney's fees and costs as permitted by applicable law.

7.   Upon entry of a Court's default, Plaintiff will file an affidavit of damages, costs, and basis for the amount of, reimbursable attorney's fees and costs, to be set for a final hearing on damages for entry of a final default judgment.

2

WHEREFORE, Plaintiff respectfully requests that the Court enter a default judgment against Defendants, individually and collectively, together with such other relief that the Court deems just and proper.

**Respectfully Submitted,**

Dated: September 22, 2025.

/s/ Joshua H. Eggnatz
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
MPascucci@JusticeEarned.com
JEggnatz@JusticeEarned.com
SGizzie@JusticeEarned.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was filed via the Florida Court's e-filing portal this 22nd day of September 2025 and served on all counsel of record.

/s/ Joshua H. Eggnatz
Joshua H. Eggnatz

## SERVICE LIST

Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai
Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160
gabi@dealestate.ai
(305)890-1334
Defendant BELLA COHEN
Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160
(310) 409-5906

Defendant GABRIEL BAR SHANY

Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160

gabi@dealestate.ai

(305)890-1334

Defendant SHANI BAR

Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160

shani@dealestate.ai

(305) 890- 7029

# EXHIBIT A

Filing # 229821283 E-Filed 08/20/2025 10:15:50 AM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2025-004959-CA-01
SECTION: CA06
JUDGE: Charles Johnson

**Ahuva Gamliel**

Plaintiff(s)

vs.

**MAGICSOFT GROUP INC et al**

Defendant(s)

_____/

## ORDER ON DEFENDANTS' COUNSEL'S MOTION TO WITHDRAW

THIS CAUSE HAVING come before this Court on Motion to Withdraw as Attorney for Defendants', MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR filed July 18, 2025, and appropriate notice having been given, it is hereby,

ORDERED AND ADJUDGED as follows:

1. The Motion to Withdraw is GRANTED.

1. Movant shall mail and email a copy of this order whenever possible to

a. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at gabi@dealestate.ai.

b. Defendant BELLA COHEN at bella@dealestate.ai.

c. Defendant GABRIEL BAR SHANY at gabi@dealestate.ai.

d. Defendant SHANI BAR shani@dealestate.ai.

e. Within 30 days from the date of this order, each of the Defendants shall either:

f. Retain a new counsel and have that counsel file a written appearance with the Clerk of the Court, OR

g. File a written notice with the Clerk of the Court advising that each, or of which, of the Defendants will represent himself/herself.

**(NOTE: IF MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai IS A CORPORATION, TRUSTEE OR A TRUST, PERSONAL REPRESENTATIVE**

**OF AN ESTATE, OR OTHERWISE NAMED IN A REPRESENTATIVE CAPACITY, THEN IT BY LAW MUST RETAIN COUNSEL.)**

h. **https://www.myflcourtaccess.com/default.aspx). Any party or counsel may sign up for text alerts IN ADDITION TO proper registration on the portal. If a party is not able to check an email account regularly, but has a working phone with text capability, the Court strongly encourages signing up for text alerts (https://www.jud11.flcourts.org/Programs-and-Services/Online- Services/Hearing-Text-Alerts).**

i. Failure by any Defendant to comply with the preceding paragraphs will create a presumption that the Defendant no longer wishes to participate in this lawsuit and the Court may sua sponte or on motion of opposing party impose sanctions against that Defendant. Sanctions may include the imposition of fees and costs, striking of pleadings, entry of default, and dismissal with prejudice.

j. In the interim, each of the Defendants are required to comply with orders/notices requiring Defendants' appearance in court; any pending order requiring compliance is stayed for thirty (30) days.

k. THE CLERK OF THE COURTS AND PLAINTIFF'S COUNSEL IS DIRECTED TO SEND ALL FUTURE NOTICES, PLEADINGS, MOTIONS AND OTHER DOCUMENTS FILED IN THIS CASE TO:

Defendants may be served at the following address:

l. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at  323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

m. Defendant BELLA COHEN at  323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

n. Defendant GABRIEL BAR SHANY at  323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

o. Defendant SHANI BAR at  323 Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160.

Contacted via telephone at the following number(s):

p. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at  (305) 890-1334.

q. Defendant BELLA COHEN at  (310) 409-5906.

r. Defendant GABRIEL BAR SHANY at  (305) 890-1334.

s. Defendant SHANI BAR at  (305) 890- 7029.

Contacted and served documents at their following designated via email(s):

t. Defendant MAGICSOFT GROUP INC. D/B/A DEALESTATE.Ai at  gabi@dealestate.ai.

u. Defendant BELLA COHEN at  bella@dealestate.ai.

v. Defendant GABRIEL BAR SHANY at gabi@dealestate.ai.

w. Defendant SHANI BAR at shani@dealestate.ai.

x. Each of the Defendants are responsible for updating their address by filing a notice of new address with the Clerk of the Court and providing a copy to the opposing counsel. Failure to update the address shall constitute a waiver of any defenses due to lack of notice.

y. **THIS ORDER DOES NOT CHANGE ANY CURRENT TRIAL SETTING IN THIS CASE.**

z. **THIS ORDER DOES NOT CANCEL ANY PENDING FORECLOSURE SALE DATE.**

aa. **THE PARTIES SHOULD NOTE THAT THE GRANTING OF THIS MOTION TO WITHDRAW IS NOT A STAY OF THIS CASE NOR WILL IT RESULT IN A CONTINUANCE OR EXTENSION OF TIME FOR ANY PENDING MOTION, HEARING DATE OR TRIAL DATE. HOWEVER, ANY PENDING ORDER REQUIRING COMPLIANCE IS STAYED FOR THIRTY (30) DAYS.**

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 20<u>th</u> day of August, 2025.

<u>2025-004959-CA-01 08-20-2025 10:08 AM</u>
Hon. Charles Johnson

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- Joshua H. Eggnatz: JEggnatz@JusticeEarned.com
- Joshua H. Eggnatz: SGizzie@JusticeEarned.com
- Joshua H. Eggnatz: LegalAssist@justiceearned.com
- Michael J. Pascucci: MPascucci@JusticeEarned.com
- Omar M Salazar II: omar@lawlp.com
- Omar M Salazar II: robin@lawlp.com
- Omar M Salazar II: christina@lawlp.com
- Robin Richison: robin@lawlp.com
- Robin Richison: christina@lawlp.com

Defendant GABRIEL BAR SHANY

Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160

gabi@dealestate.ai

(305)890-1334

Defendant SHANI BAR

Sunny Isles Blvd., 7th Floor, Sunny Isles Beach, FL 33160

shani@dealestate.ai

(305) 890- 7029

# EXHIBIT B

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2025-004959-CA-01
SECTION: CA06
JUDGE: Charles Johnson

**Ahuva Gamliel**

Plaintiff(s)

vs.

**MAGICSOFT GROUP INC et al**

Defendant(s)

_____/

## ORDER ON PLAINTIFF'S MOTION FOR COURT'S DEFAULT, AND DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S AMENDED COMPLAINT

THIS CAUSE HAVING come before this Court on Plaintiff's Motion for Court's Default filed July 22, 2025, and Defendants' Motion for Extension of Time to Respond to Plaintiff's Amended Complaint filed July 22, 2025, and appropriate notice having been given, it is hereby,

ORDERED AND ADJUDGED:

1. Defendants' Motion for Extension is GRANTED, as follows:
    a. Each Defendant shall file their response to Plaintiff's Amended Complaint by no later than 20 days from the date that Defendants shall either retain a new counsel and have that counsel file a written appearance with the Clerk of the Court, OR file a written notice with the Clerk of the Court advising that each, or of which, of the Defendants will represent himself/herself, as ordered by the Court's separately issued Order on Defendants' Counsel's Motion to Withdraw.

    b. Failure by any Defendant to timely retain new counsel or file his/her written notice that he/she will represent himself/herself, or timely respond to the Amended Complaint, will create a presumption that the Defendant no longer wishes to participate in this lawsuit and the Court may sua sponte or on motion of opposing party impose sanctions against that Defendant. Sanctions may include the imposition of fees and costs, striking of pleadings, entry of default, and dismissal with prejudice.

2. The Court reserves ruling on Plaintiff's Motion for Court's Default.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>26th day of August,</u> <u>2025</u>.

<u>2025-004959-CA-01 08-26-2025 11:23 AM</u>
Hon. Charles Johnson

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

- Joshua H. Eggnatz: JEggnatz@JusticeEarned.com
- Joshua H. Eggnatz: SGizzie@JusticeEarned.com
- Joshua H. Eggnatz: LegalAssist@justiceearned.com
- Michael J. Pascucci: MPascucci@JusticeEarned.com
- Omar M Salazar II: omar@lawlp.com
- Omar M Salazar II: robin@lawlp.com
- Omar M Salazar II: christina@lawlp.com
- Robin Richison: robin@lawlp.com
- Robin Richison: christina@lawlp.com

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2025-004959-CA-01

AHUVA GAMLIEL,                               :
                                             :
        *Plaintiff,*                         :
                                             :
vs.                                          :
                                             :
MAGICSOFT    GROUP,    INC.    d/b/a         :
DealEstate.Ai, BELLA COHEN, GABRIEL          :
BAR SHANY, and SHANI BAR                     :
                                             :
        *Defendants.*                        :

---

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, AHUVA GAMLIEL, files this First Amended Complaint and sues Defendants,

MAGICSOFT GROUP, INC. d/b/a DealEstate.Ai, BELLA COHEN, GABRIEL BAR SHANY,

and SHANI BAR (collectively, "Defendants").

Plaintiff paid money to Defendants under false, deceptive, and unfair pretenses.

Defendants, collectively and individually, misled Plaintiff and induced her to pay money towards

a multi-family syndication investment. Defendants failed to perform as promised and they refuse

to return Plaintiff's money.

## THE PARTIES, JURISDICTION, AND VENUE

1.      This is an action for damages that is at least eighty-five thousand dollars

($85,000.00), exclusive of costs, fees, interest, and punitive damages and is otherwise within the

jurisdiction of this Court.

2.      Plaintiff, ("Gamliel" and/or "Plaintiff"), is a resident of the State of Florida.

3.      Defendant, MAGICSOFT GROUP, INC. d/b/a DealEstate.Ai. ("MagicSoft"), is Delaware corporation with its principal place of business located at 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. MagicSoft lists as its Registered Agent: UNITED AGENT GROUP INC. 1521 CONCORD PIKE SUITE 201, WILMINGTON, DE 19803. MagicSoft carries on business and holds itself out to the public as DealEstate.Ai, including through its website (https://dealestate.ai/) and other online social media platforms.

4.      MagicSoft, through its principal and identical officers and agents, also incorporated a separate, but related, affiliated, successor, and/or alter ego company in Florida named Magicsoft Grp., Inc., a Florida corporation with its principal place of business located at 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Defendant listed as its Registered Agent: UNITED STATES CORPORATION AGENTS, INC., 476 RIVERSIDE AVE. JACKSONVILLE, FL 32202.

5.      However, Magicsoft Grp., Inc. filed Articles of Dissolution in Florida on April 30, 2024. Based upon investigation of counsel and Plaintiff's personal knowledge, Magicsoft Grp., Inc. operated through its successor, affiliated, alter ego, and/or related Delaware corporate entity – the named Defendant in this case, MagicSoft Group, Inc. The two companies are one in the same and alter-egos of each other. Defendant Cohen told Plaintiff that the Florida filing was redundant of MagicSoft Group, Inc., and the reason for dissolution.

6.      Defendant Bella Cohen ("Cohen") is and was MagicSoft's Chief Executive Officer and principal director of MagicSoft. Cohen is a Florida resident and operates MagicSoft in Miami-Dade County, Florida. Cohen's principal place of business is at MagicSoft's principal place of business, 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Cohen personally participated or aided in the making of the sale and misrepresentations to Plaintiff, and

personally financially benefited and profited from Plaintiff's funds as if they were her own. Cohen manages, operates, and controls MagicSoft, in concert with, in conjunction with, and with the participation of Bar and Mrs. Bar.

7.      Defendant Gabriel Bar Shany ("Mr. Bar" or "Bar") is and was MagicSoft's Chief Technology Officer and director of MagicSoft. Mr. Bar is a Florida resident and operates MagicSoft in Miami-Dade County, Florida. Mr. Bar's principal place of business is at MagicSoft's principal place of business, 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Mr. Bar personally participated or aided in the making of the sale and misrepresentations to Plaintiff, and personally financially benefited and profited from Plaintiff's funds as if they were his own. Mr. Bar manages, operates, and controls MagicSoft, in concert with, in conjunction with, and with the participation of Cohen and Mrs. Bar.

8.      Defendant Shani Bar ("Mrs. Bar" and Mr. Bar's spouse) is and was MagicSoft's Chief Marketing Officer and director of MagicSoft. Bar is a Florida resident and operates MagicSoft in Miami-Dade County, Florida. Mrs. Bar's principal place of business is at MagicSoft's principal place of business, 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Mrs. Bar personally participated or aided in the making of the sale and misrepresentations to Plaintiff, and personally financially benefited and profited from Plaintiff's funds as if they were her own. Ms. Bar manages, operates, and controls MagicSoft, in concert with, in conjunction with, and with the participation of Cohen and Bar.

9.      Defendants' breaches occurred in Miami-Dade County and Plaintiff's Agreement (defined below) with MagicSoft was entered into in Miami-Dade County. Additionally, Defendants purposely availed themselves to the jurisdiction of this Court by contracting with Plaintiff, a Florida resident, and by conducting its principal operations in Miami-Dade County.

10.     Venue for this action is proper pursuant to *Florida Statute* § 48.193, as the causes of action accrued in Miami-Dade County.

11.     All conditions precedent to bringing and maintaining this action have occurred, have been excused or were waived.

12.     Plaintiff has retained the undersigned law firm to represent her in this action and has agreed to pay reasonable attorney's fees and costs for which Plaintiff is entitled to be reimbursed.

**FACTUAL BACKGROUND**

**Multifamily Syndication is Complex and Has Barriers to Entry.**

13.     Multifamily syndication is the process of gathering capital from a group of investors, known as a "syndicate," to invest in a multifamily property.

14.     Syndication allows investors to invest in bigger real estate deals than they could individually or through smaller partnerships, helping build wealth for passive and active investors.

15.     Multifamily syndication can be complex. In most scenarios, a first-time syndicator already has experience investing in single-family or small multifamily properties on their own or should already be a (somewhat) experienced commercial real estate professional.

16.     It is a highly regulated business model due to its high risk and potential for fraud.

17.     In the United States, the two most common types of real estate syndication structures are equity offerings made under rule 506(c) or rule 506(b) of the Security and Exchange Commission's (SEC's) Regulation D. Both of these rules allow private funds (including real estate funds) to make private stock (i.e., equity) offerings without officially registering with the SEC.

18.     If a multifamily syndication has the status of 506(c), investing will only be open to "accredited investors," individuals who are allowed to invest in unregistered private investment offerings.

19.     In contrast, multifamily syndications utilizing the 506(b) rule are open to accredited and "sophisticated investors."

**Defendants' Business Model, The Agreement and Plaintiff's Investment.**

20.     Plaintiff met Defendant MagicSoft and Defendant Mrs. Bar at a real estate conference called Peak Partnership in March 2024 to network and learn about the multi-family investment industry.

21.     Defendants' entire business model is focused on marketing to starry-eyed dreamers who otherwise do not have the experience, knowledge, capital, wealth, a sufficient network, sophistication, or general wherewithal to purchase multi-family properties, organize and secure investors to purchase these properties, and to manage these syndicated properties and tenants once acquired.

22.     Plaintiff is neither an accredited nor sophisticated investor regarding multi-family syndications. Plaintiff has neither owned, managed, organized, nor had any involvement whatsoever with real property syndications.

23.     On April 10, 2024, Plaintiff and MagicSoft entered into a General Partner Service Agreement ("Agreement"),[1] whereby MagicSoft, through its officers, directors, and leadership (including Mr. Bar, Cohen, and Ms. Bar) agreed to provide its legal, financial, and industry expertise to Plaintiff by making a multi-family real estate syndication investment accessible to her,

---

1.     Defendants are in possession of the Agreement. It is not being filed here in an abundance of caution to protect any confidential nature of it, but it shall be deemed incorporated herein.

including providing its supposed access to capital and investors as Plaintiff's partner, and experience in brokering, syndicating, managing, and assisting with multi-family commercial properties.

24.     To induce the Agreement, Defendants, individually, and collectively on behalf of MagicSoft, touted the importance of engaging experienced professionals, like the Defendants, to guide her through all legal and financial aspects of a syndicated multi-family investment to achieve her financial goals.

25.     Defendants required Plaintiff to pay an $85,000 "Limited Partner Contribution" ("Investment").

26.     Pursuant to the Agreement, Plaintiff's Investment was to only be used for, and presented to shareholders as, an investment made by Plaintiff attributable to her first syndicated property, including for Risk Capital expenses, such SEC compliance and legal expenses.

27.     Consistent with the Agreement, prior to signing the Agreement, **Plaintiff was expressly promised by each of the Defendants** that her $85,000 Investment would be directly invested into her first executed property so that she would have "skin in the game."

28.     Pursuant to the Agreement, Plaintiff was entitled to terminate the Agreement *without cause* before the funding of her first syndicated executed property (i.e.: after a specific identified property was under contract, but before the purchase/acquisition of the property), including the full return of her $85,000 Investment within 10 business days, to the extent that *the* property is executed by another GP affiliated with the company.

29.     Plaintiff was also **expressly guaranteed** that if she wanted to leave MagicSoft and terminate the Agreement prior to Defendants securing her a first property under contract ready for execution, that she would be able to do so with 100% return of her Investment – that is logical

because before that point in time, her segregated Investment monies could not have been spent or used on her first property because no such property exists yet.

30.     **Each of the Defendants made these "money back guarantee" promises and guarantees to Plaintiff on several occasions, including at an April 1, 2024,** Zoom meeting with Defendants Cohen, Bar, and Ms. Bar.

31.     At this meeting, **Defendant Mr. Bar was the main voice and mouthpiece for the group, but each of the Defendants acquiesced, agreed, did not otherwise dissent, and adopted Mr. Bar's statements**.

32.     At an **April 10, 2024 Zoom meeting with Plaintiff, Mr. Bar, Cohen, and Mrs. Bar, Defendant Bar stated "I'm not just going to keep your money"** in response to Plaintiff requesting that Defendants confirm that she would be allowed out and that her money would be returned prior to her Investment money being spent on a syndicated property **– Cohen and Mrs. Bar agreed.**

33.     At a **January 20, 2025 meeting, Defendant Mr. Bar again reaffirmed that "the only risk you have is if you don't do your job and don't provide:"**



34.     Plaintiff performed her job and did provide over 90 properties to Defendants – yet Defendants failed to perform, failed to secure a single property under contract, failed to secure capital, failed to syndicate, and failed to return her Investment.

35.     Defendants' Agreement and verbal promises and guarantees to Plaintiff was that they (Defendants) would be active investors and partners with her, who had completed many previous syndication cycles. **Plaintiff was expressly told by each of the Defendants before signing the Agreement (at their Zoom meetings) and during the pendency of the Agreement that she would enjoy the opportunity to partner with Defendants on a joint venture**.

36.     It was not until the Parties' January 20, 2025 meeting that Bar disclosed to Plaintiff that neither he nor MagicSoft had ever completed a single multi-family syndication deal.

37.     Specifically, once a property located by Plaintiff was executed, Defendant MagicSoft was to receive a 40% acquisition fee, 40% of the net monthly cash disbursements from the syndicated property, and 40% of the capital gain (equity) earned on the syndicated property.

38.     Defendants Cohen, Mr. Bar, and Mrs. Bar would then be paid profits or monies from the syndicated property purchased with Plaintiff's Investment.

39.     However, Defendants not only made misrepresentations that induced the Agreement, they failed to return her Investment before securing her a first property under contract as promised, and they absconded with, diverted, enriched themselves, and paid themselves personally using Plaintiff's Investment monies.

40.     For example, Defendants used, and failed to segregate, and commingled Plaintiff's and other GPs Investment funds with their own money, and used Plaintiff's and other GPs Investment funds for their own personal gain, including cash payments to Cohen, Mr. Bar, and Mrs. Bar, mortgage payments for properties owned by Cohen, and Mrs. Bar's family expenses.

**Additional Representations and Promises to Plaintiff that Induced the Agreement**

41.     As an unsophisticated and unaccredited syndication investor, real estate professional, broker, or dealer, with no syndication experience, Plaintiff did not have the expertise, experience, connections, wherewithal, or financial capital to purchase or organize multi-family syndications or make financial offerings, assessments, or projections.

42.     To induce Plaintiff and to reassure her that her Investment was safe and secure in the hands of Defendants, **MagicSoft and its principals, including Cohen, Mr. Bar, and Mrs. Bar, made express representations and misrepresentations** to Plaintiff before she signed the Agreement and paid her Investments.

43.     **Some of the representations made by Defendants, individually, and collectively on behalf of MagicSoft, at various in-person and/or meetings (including at meetings on April 1, 2024, April 10, 2024, and January 6, 2025** (where the Defendants continued to make false claims about its experience and ability syndicate properties), on MagicSoft's website, and on its

social media pages, that induced Plaintiff enter into the Agreement and pay the Investment, **included, but are not limited to that**:

a. Plaintiff would be entitled to a 100% return of her Investment with or without cause before any specific property went under contract and was ready to be executed (personally made by each of the individual defendants);

b. MagicSoft was a financially stable and on-going registered company in Florida (personally made by each of the individual defendants);

c. MagicSoft was sufficiently capitalized and that it had immediate access to ready, willing, and able investors to finance syndications (personally made by each of the individual defendants);

d. MagicSoft had a proven track record with presently "over $1.8 Billion Assets Under Management and 10,000+ apartments under management" (made in MagicSoft's marketing materials and website, and personally reaffirmed by each of the individual defendants);

e. MagicSoft's principals had over 50 years of combined experience completing real estate syndications (made in MagicSoft's marketing materials and website, and personally reaffirmed by each of the individual defendants);

f. Cohen, the CEO and COO, revolutionized real estate syndication (made in MagicSoft's marketing materials and website, and personally reaffirmed by each of the individual defendants);

g. "[O]ur accelerator program [has] . . . a track record of helping real estate syndicators build and scale successfully." (made in MagicSoft's marketing materials and website, and personally reaffirmed by each of the individual

defendants that MagicSoft had a proven record of building and scaling multi-family real estate syndications); and

h.  Plaintiff's job or "role" as a GP was to find/locate properties for syndication based on MagicSoft's criteria and to upload them to MagicSoft's online portal. Defendants would then "do the rest" to secure investors, raise capital, underwrite the property, and otherwise complete the syndication. Defendants would then assist Plaintiff to manage the property (personally made by each of the individual defendants).

44.     None of the above material statements of fact were true and/or Defendants failed to perform on them.

45.     An example of a written misrepresentation made to Plaintiff and others, and that Defendant continues to make to the public, is depicted below for demonstrative purposes:



46.     These representations were material to her decision to invest and constitute actionable misrepresentation under applicable securities and partnership laws.

47.     The false statements were made in the context of soliciting Plaintiff to invest, before she paid her Investment and signed the Agreement, and continued after she signed the Agreement – at various Zoom and in-persons meetings with Defendants.

48.     The false statements were made in joint meetings with the Defendants with each of them present.

49.     Each of the Defendants made the false statements with the intent to induce Plaintiff.

50.     Not only did Defendants make the above misrepresentations to Plaintiff prior to her signing the Agreement, each of the Defendants continued to make the misrepresentations throughout the course of the parties' relationship, in furtherance of their scheme, conspiracy, and efforts aid and abet each other to misappropriate Plaintiff's money.

**Plaintiff's Discovery of "Red Flags" and Defendants' Misrepresentations and Breach of Duty to Her.**

51.     Upon signing the Agreement, Plaintiff diligently began to perform and worked tirelessly to locate and identify properties pursuant to  Defendants' criteria.

52.     Over a period of approximately 9 months, Plaintiff located and presented (uploaded) over 90 properties to Defendants for syndication as instructed – an average of a new property about every 3 days.

53.     However, Defendants failed to secure capital or investors for a single property.

54.     Defendants failed to secure a single property under contract.

55.     Defendants failed to secure a single property to be executed.

56.     Defendants voluntarily dissolved MagicSoft Grp. Inc. and its legal registration in Florida on April 30, 2024, just 20 days after Plaintiff signed the Agreement, and did not notify Plaintiff.

57.     Leadership, including MagicSoft's general managers and board members, started terminating their relationship with MagicSoft.

58.     **Mr. Bar made additional false claims to Plaintiff regarding MagicSoft's leadership**, including falsely telling Plaintiff on January 6, 2025, that Mr. Sannidhi was a board member of MagicSoft – that was a lie – Mr. Sannidhi had left the company and was no longer a board member at that time.

59.     **Mr. Bar also falsely told Plaintiff that Mr. Sannidhi continued to be a board member** of the company and was still actively involved with syndicating properties, but he had already left the company and was no longer a funds manager – that was a lie.

60.     Bar instructed Plaintiff to not communicate with MagicSoft's board members in an effort to prevent her from uncovering more of the Defendants' deceit.

61.     After signing the Agreement and paying her Investment, Plaintiff discovered that MagicSoft has failed to execute on a single property.

62.     After signing the Agreement and paying her Investment, Plaintiff discovered that MagicSoft has zero Assets Under Management.

63.     After signing the Agreement and paying her Investment, Plaintiff discovered that MagicSoft's Infinite Capital Fund is not capitalized to syndicate any properties, let alone thousands of properties. **Mr. Bar falsely told Plaintiff that the company was projected to acquire 500 Million dollars in multifamily assets in 2025 – that was a lie.** The first quarter is over, and no properties have been acquired to date in 2025.

64.     Based upon information and belief, Mr. Bar did not have any financial projections demonstrating, or basis to state, Magic's anticipated acquisition of 500 Million dollars in multifamily assets in 2025.

65.     **Mr. Bar also falsely told Plaintiff that he had raised over 100 million in capital and completed 28 full cycle real estate syndications**. After signing the Agreement and paying her Investment, when Plaintiff pressed Mr. Bar to see his portfolio for validation, he disclosed that they were not real property syndications, but rather e-commerce syndications.

66.     In fact, MagicSoft has completed zero real estate syndications and no capital funds were ever raised from investors despite each of the Defendants touting their deep experience and capital raise:





67.     Plaintiff discovered that Defendants do not have any ready, willing, and able investors secured to finance syndications.

68.     Defendants made false representations regarding MagicSoft's ability to secure capital for real estate syndications.

69.     **Each of the Defendants claimed that MagicSoft's Infinite Capital Fund would "sponsor/fund your deal," despite it being unfunded**.

70.     Each of the Defendants made false claims of individuals being a part of their "Board" that the individuals themselves have confirmed they are not a part of.

71.     Defendants, including Mrs. Bar, depicted people on MagicSoft's website and represented them as part of Defendants' team or owner success stories, when they are not – some of the photos are stock images of people that have no connection with MagicSoft.

72.     Plaintiff then discovered that her Investment monies had been used to finance and pay for MagicSoft's operations and Cohen, Mr. Bar, and Mrs. Bar personally, including payments to them, and payment for other personal expenses and personal investments – Defendants failed to segregate and secure Plaintiff's Investment for her first executed property, even if one were to exist. Defendants comingled Plaintiff's money with MagicSoft's operational account and then used that account to misappropriate Plaintiff's money to their own, and used Plaintiff's money to pay for improper operational and personal expenses beyond the Investment's purpose.

73.     Plaintiff discovered that other people have lodged on-going complaints against MagicSoft, by including but not limited to other GPs who were deceived by Defendants, SEC complaints, FTC complaints, and complaints with the Florida Attorney General's office regarding Defendants' business, demonstrating an on-going agreement, common enterprise common scheme, and common deceptive business model being carried out by the Defendants jointly. For example:

> a. Defendants have been sued by another GP for civil theft, RICO, and fraud, among other claims, for perpetuating the same unlawful scheme Plaintiff alleges here, including their fraudulent misrepresentations that induced the Agreement, their failure to refund his $85,000 investment, and their

misappropriation use of his investment funds, in *Shaken v. Magicssoft GRP, Inc., et.. al.*, 2025-004670-CA-01, Miami-Dade County, FL Circuit Court;

b. Defendants have been sued by another GP in Lee County for civil theft, among other claims, for their failure to refund its $85,000 investment as well, in *Triton Equity Group, LLC, et al. v. MagicSoft GRP, Inc., et. al.*, Case No. 25-CA001665, Lee County, FL Circuit Court;

c. Plaintiff's counsel's investigation to-date has discovered that other GPs, like Plaintiff, have made demands to Defendants to refund their investment contributions as well based on the same conduct that Plaintiff alleges here; and

d. Plaintiff's counsel work-product investigation to-date has also discovered that a former employee of MagicSoft has lodged complaints (blown the whistle) with government agencies due to MagicSoft's fraudulent misrepresentations regarding its Infinite Capital Fund (there is no fund and no capitalization), its inability to transact/syndicate multi-family properties, its assets under management (it doesn't have any), it's track record of syndicating multi-family properties (it doesn't have any), and it's predatory marketing and solicitation to unsophisticated and unaccredited investors, and its failure to refund investment funds to other GPs when it should be refunded.

74. Defendants failed to provide Plaintiff an accounting of how her funds were being utilized despite repeated requests.

75. Defendants failed to provide Plaintiff an accounting of all contributions received and their current status despite repeated requests.

**Notice of Defendants' Breach, Termination, and Defendant's Response**

76.     On or about January 21, 2025, Plaintiff, through counsel, provided notice to Defendants of their breaches, her notice of termination of the Agreement, and request to refund her Investment.

77.     In response to Plaintiff's notice of termination and request for return of her Investment, Defendants retaliated against Plaintiff and maliciously claimed that Plaintiff defamed Defendants and caused business losses as a tactic to intimidate Plaintiff and to deter and others her from seeking a return of their Investment.

78.     Mrs. Bar, Chief Marketing Officer, wrote Plaintiff accusing Plaintiff of "create[ing] a conspiracy," when Plaintiff created nothing. Plaintiff discovered that other people had already made complaints about Defendants, and directly to Defendants, well before Plaintiff sent her notice of termination.

79.     Shockingly, Defendants have also now taken the position that Plaintiff's Investment was no investment at all – but rather that Plaintiff merely hired MagicSoft to be a vendor to assist with her syndicating her own properties, and that her $85,000 was paid to MagicSoft for the vendor services it has already provided Plaintiff.

80.     Defendant's after the fact position is a continuing fraud, and a fraud upon this Court – Defendants, including Mr. Bar, specifically reaffirmed to Plaintiff (consistent with the Agreement) as recently as January 20, 2025, that her Investment money was an investment for her next (ie: first) syndication as a stakeholder:



81.    Mr. Bar admitted on January 20, 2024 that Defendants' use of Plaintiff's Investment money "wasn't clear in the contract:"



82.    Defendants' "defense" is no defense at-all – it proves that Defendants misappropriated Plaintiff's Investment, that it violated broker-dealer rules, and that it misrepresented its role to Plaintiff.

83.     Defendant's after-the-fact contention that Plaintiff's Investment was not an investment is belied by the Defendants' own statements, including Cohen's current Instagram account where Cohen wrote about MagicSoft: "we provide access to both real estate owners & investors the opportunity to match & fulfill each other's dreams through a regulated syndication. . . We will help you build wealth & grow your net worth by making real estate investing accessible to everyone."

84.     Because Defendants failed to secure a single property for syndication it is impossible for Plaintiff's Investment to have been used towards the acquisition of a syndicated property or for Risk Capital expenses for a syndicated property – no offering was ever on the table for either triggering event to exist.

85.     Defendants have also now taken the position that Plaintiff is only entitled to a refund of her $85,000 Investment *without cause* if one of her properties goes under contract and is transferred to another GP *and* the property ultimately becomes executed.

86.     Defendants' *without cause* refund is unfair and unconscionable because Defendants have created and caused the condition to be impossible to perform.

87.     Defendants are solely in control of whether a property becomes executed, funded, and otherwise syndicated, and Defendants have proven that they are unable to execute on or syndicate a property.

88.     Nevertheless, Plaintiff transferred all 6 of the then existing properties that she had located and uploaded to Defendants' online portal to other GPs prior to providing her notice of termination and request to return her Investment.

89.     MagicSoft failed to syndicate any of Plaintiff's properties that she transferred to other GPs, or any other property for that matter.

90.     Defendants Mr. Bar, Cohen, and Mrs. Bar are personally liable for the acts and omissions alleged herein due to their respective personal and intentionally involvement in the scheme, their personal misrepresentations that induced the Agreement and throughout the relationship, and their use of MagicSoft as an alter-ego and Plaintiff's Investment for their own personal gain, profit, and use.

91.     Mr. Bar, Cohen, and Mrs. Bar used, and continue to use, MagicSoft as a mere instrumentality to solicit and obtain investment funds from prospective GPs, including Plaintiff, while knowing that they and MagicSoft make misstatements of fact regarding their experience, capitalization, ability to syndicate multi-family investments to lure investors, and then fail to refund those funds as agreed, and use the funds for their own personal gain and expenses, and not for the Investment's purpose.

**The Investment was an unlawful sale**

92.     The Investment was an unlawful sale of a security to Plaintiff in violation of Sections 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17), Fla. Stat.

93.     The Agreement specifically contemplates and recognizes that investing in syndicated properties requires SEC compliance, stating:

> "Navigating through SEC compliance requirements can be complex. We will assign a securities attorney; our dedicated compliance team is here to simplify the process. **We take charge of all SEC compliance** issues related to the syndication, particularly concerning the filing for Regulation D, specifically Rule 506(c) offerings. Our expertise in handling compliance documentation ensures you fully comply with all relevant regulations and guidelines. This includes preparing and submitting the necessary paperwork and ensuring all disclosures are correctly made to potential investors"

94.     However, Defendants did not make any required disclosures to Plaintiff.

95.     Also, Plaintiff is neither a sophisticated nor an accredited syndication investor for whom the Investment could be lawfully sold to in the first place.

96.     Most importantly, the Agreement confirms that MagicSoft "is not a registered broker-dealer."

97.     Cohen, Bar, and Mrs. Bar are not registered broker-dealers.

98.     Section 517.07 was violated because Defendants sold the Investment, a security, without it being registered with the State of Florida.

99.     Section 517.12(1) was violated because Defendants are not registered dealers or broker dealers.

100.    Section 517(3) was violated because Defendants did not make a notice-filing of the State of Florida.

101.    Section 517(4) was violated because Defendants office was not notice-filed with the State of Florida.

102.    Section 517(8) was violated because Defendants failed to comply with the net capital and ratio requirements imposed pursuant to the Securities Exchange Act of 1934.

103.    Sections 517(10), (12), (15), and (17) were violated because Defendants failed to comply with the applicable registration process, Defendants are not registered as a broker or dealer with the Securities and Exchange Commission, and Defendants failed to comply with the continuing education requirements.

104.    Because of these violations, the sale of the Investment to Plaintiff was unlawful, and it further demonstrates Defendants' impossibility of performance of the Agreement regarding the sale of securities in syndicated properties to limited partners/investors.

105.    As a result, Defendants are jointly and severally liable to Plaintiff. *See* Section 517.211 Fla. Stat.

106.    Plaintiff is also entitled to reasonable attorney's fees for these violations. *See* Section 517.211 Fla. Stat.

## CLAIMS FOR RELIEF AGAINST MAGICSOFT

### COUNT I:
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (FDUTPA)
### (Against MagicSoft)

107.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

108.    Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiff, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

109.    Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

110.    By soliciting Plaintiff's Investment in the manner in which they did, the Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8).

111.    While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms. The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

112.    Courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers and have defined an "unfair trade practice" as any act

or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

113.    Defendants' conduct alleged herein is a *per se* unlawful and unfair trade practice, including due to their violations of Sections 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17), Fla. Stat.

114.    Moreover, as the securities laws are designed for consumer protection and "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," a violation of the securities laws is a *per se* violation of FDUTPA.

115.    Defendants have reaped monetary rewards from operating and/or personally benefiting from inducing Plaintiff to enter into the Agreement and pay her Investment, thereby causing actual harm to Plaintiff.

116.    Defendants' acts and omissions described in this Complaint constitute both deceptive and unfair trade practices because the false representations and omissions made by the Defendants have a tendency or capacity to deceive consumers, such as Plaintiff, into investing in Defendants' falsely-touted syndication program and business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

117.    As a result of Defendants' deceptive trade practices, Plaintiff was deceived into investing her money – thus causing significant economic damage to Plaintiff.

118.    The materially false statements and omissions described in this Complaint, including about the nature of Defendants' model, experience, and capital, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiff which would have likely deceived a reasonable person under the circumstances.

119.     As a result of the false representations and violations of the securities laws described in this Complaint, Plaintiff has been damaged by, among other things Defendant failing to return her Investment.

120.     Plaintiff has also been damaged in other and further ways subject to proof at trial, including actual economic harm due to loss of business opportunities, investment opportunities, and interest, due to her being separated from her monies.

121.     Therefore, the Defendant engaged in unfair and deceptive trade practices in violation of Section 501.201 et seq., Fla. Stat.

122.     Pursuant to Sections 501.211(1) and 501.2105, Fla. Stat., Plaintiff is entitled to recover from Defendants the reasonable amount of attorneys' fees and costs Plaintiff has had to incur in representing her interests in this matter.

123.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for all available damages together with, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

**COUNT II:**
**RECISSION OF CONTRACT**
**(Against Magicsoft)**

124. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

125. As a result of Defendants' misrepresentations, omissions, and breaches that induced Plaintiff to enter into the Agreement and pay her Investment, and the securities violations described in this Complaint, Plaintiff seeks to rescind the Agreement, including a return of her Investment.

126. Recession is an appropriate remedy given:

(1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) that the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) if the moving party has received benefits from the contract, it should further allege an offer to restore these benefits to the party furnishing them; and (6) that the moving party has no adequate remedy at law.

127. In the present suit, there is a contractual relationship of the parties, with Plaintiff being the Investor and Defendant being the seller or company.

128. The Agreement formed a contract between Plaintiff and Defendant.

129. Fraud, misrepresentations, and omissions were involved in the formation and inducement of the Agreement, as described in this Amended Complaint.

130. Due to Defendants inducing Plaintiff to enter into the Agreement, the contract is voidable and rescindable at Plaintiff's option.

131. Additionally, as described in this Amended Complaint, Defendants have demonstrated an impossibility of performance due to its inability to execute on, or otherwise

syndicate, any of the more than 90 properties that Plaintiff located and presented to Defendants, or any other GP for that matter.

132.     Moreover, pursuant to Section 517.211, Fla. Stat., Plaintiff is entitled to rescind the Agreement and a return of her Investment due to Defendants' sale of the Investment in violation of either s. 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17).

133.     Plaintiff has notified Defendants of her intent to terminate and otherwise rescind the Agreement, including through counsel's notice of termination to Defendants and various other subsequent conferrals between Plaintiff's counsel and Defendants' counsel, but Defendants have refused to cooperate.

134.     Plaintiff is willing to, and has, transferred all of the pending properties that she located and presented to Defendant for syndication to other GPs/investors associated with Defendants.

135.     In the alternative to Plaintiff's legal claims for relief, Plaintiff has no adequate remedy at law because the consideration Plaintiff was supposed to receive (a syndicated multifamily investment) is unique, requires uncertain performance, and the legal damages will not make Plaintiff whole presently as they are not readily calculable due to uncertain factors. Therefore, Plaintiff is entitled to rescind the contract, including the return of her Investment in exchange for Defendants being relieved of their obligations to Plaintiff under the Agreement, including any monies or benefits that would otherwise be owed to Plaintiff for locating and presenting investment properties to Defendants.

WHEREFORE, Plaintiff demands judgment against Defendant for a rescission of the contract together with compensatory damages, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

**COUNT III:**
**FRAUD IN THE INDUCEMENT**
**(Against MagicSoft)**

136.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

137.     The elements necessary to state a cause of action for fraud in the inducement are 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party.

138.     Fraudulent inducement renders a contract voidable.

139.     Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract.

140.     In the present suit, Defendants made false statements of material fact, as described more fully in this Amended Complaint.

141.     Defendants had knowledge that its representations were false because Defendants were in possession of their real information at the time it made the representations, having full access and knowledge of their own experience, assets under management, capital, and investor access.

142.     Defendants knew that their representations about MagicSoft's experience, capitalization, assets under management, and Plaintiff's right to a return of her Investment before an identified property was ready to be executed, would induce Plaintiff's reliance, because it is commonly known that the experience and capitalization of a company offering an Investment, and

the minimization of risk associated with a multi-family syndication, significantly affects the purchaser's decision.

143.     Plaintiff was injured by relying on Defendants' representations, including her right to a return of her Investment if Defendant was unable to secure a property for execution because had Plaintiff known truth, Plaintiff would have never entered into the Agreement with Defendants.

144.     Due to Defendants fraudulently inducing Plaintiff to enter into the Agreement, the contract is voidable and rescindable at Plaintiff's option.

145.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for a rescission of the contract together with compensatory damages, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

**COUNT IV:**
**UNJUST ENRICHMENT**
**(Against MagicSoft)**

146.     Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

147.     The elements of a cause of action for unjust enrichment are: (i) plaintiff has conferred a direct benefit on the defendant, who has knowledge thereof; (ii) defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

148.    Plaintiff conferred a benefit on Defendants by paying the Investment that was based on misrepresentations.

149.    Defendants voluntarily accepted Plaintiff's money knowing that they made misrepresentations that induced the Agreement, and that they were each using Plaintiff's Investment monies for their own personal and operational expenses and not segregating and safeguarding these funds to be invested in a syndicated property.

150.    It would be unjust for Defendants to retain the money Plaintiff paid.

151.    Had Defendants not made misrepresentations, Plaintiff would not have paid the Investment.

152.    In the alternative to Plaintiff's claims for damages, Plaintiff will not have an adequate remedy at law against Defendants, thereby necessitating Plaintiff's claim for Unjust Enrichment.

153.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**COUNT V:**
**CONVERSION**
**(Against MagicSoft)**

154.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim

155.    Plaintiff transferred funds and assets to Defendants, and as a purported Investment, to participate in Defendants' syndication program.

156.    Defendants have kept Plaintiff's Investment after Plaintiff requested its return, despite Defendants' lack of any ownership interest in the Investment and despite Defendant's express promises that induced the Agreement that the Investment would be used only for Plaintiff' first syndicated investment, and that Plaintiff would be returned 100% of her Investment at any time up until a specific identified property was ready to be executed.

157.    Defendants each personally appropriated and used these funds for their own personal gain, including for their own personal expenses and MagicSoft's operational expenses.

158.    By refusing to return Plaintiff's money, Defendants intended to interfere with, and indeed have interfered with, Plaintiff's ownership and interest in her money, and has deprived Plaintiff of her property, permanently or temporarily.

159.    Upon information and belief, Defendants have utilized Plaintiff's funds to cover MagicSoft's own business expenses and to enrich its Directors and Officers, including Cohen, Mr. Bar, and Mrs. Bar.

160.    As a result of Defendants' conversion of Plaintiff's funds to their own uses, Plaintiff has suffered damage.

161.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money,

and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**COUNT VI:**
**EQUITABLE ACCOUNTING**
**(Against MagicSoft)**

162.   Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

163.   Defendants have each asserted and exercised rights to access, convert, use, and convey Investment funds received from Plaintiff.

164.   Defendants took and exercised control and possession over these funds and represented to Plaintiff that her money would be used for its Investment purpose.

165.   However, Plaintiff has learned that her Investment money has been used, misappropriated, converted, and absconded by Defendants for purposes other than the Investment purpose, including for Defendants' own personal and operational expenses, including personal investments.

166.   Plaintiff has made requests to Defendants to account for and explain how her Investments were used, whether they have been used, and the basis upon which they claim entitlement to convert and/or possess Plaintiff's money. These requests have either been ignored or not responded to any meaningful or credible way.

167.    As an alternative to Plaintiff's legal claims, Plaintiff has no adequate legal remedy because only a complete and accurate accounting will determine where the money Defendants' appropriated, diverted, and/or received is located, and how much of that money has been used or converted by, on in the possession of, each of the Defendants.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for an accounting, and further for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT VII:
## BREACH OF FIDUCIARY DUTY
## (Against MagicSoft)

168.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

169.    Plaintiff had a fiduciary relationship with the Defendants, because they had control over Plaintiff's Investment funds and the expected receivables in all the transactions from them.

170.    Plaintiff reposed confidence and trust in Defendants, which they accepted.

171.    Each of the Defendants personally represented to Plaintiff that they were committed to Plaintiff, both financially and operationally, both as the holder of her funds and as a partner.

172.    This position of trust and confidence included a fiduciary duty to properly manage, secure, account for, disburse, and return Plaintiff's funds as described herein.

173.    The Defendants breached this duty, by doing, among other things, personally making false representations that induced Plaintiff to entrust Defendants with her Investment funds and sign the Agreement, by failing to return Plaintiff's Investment, by personally continuing to make misrepresentations about MagicSoft's business after the Agreement was signed, by failing

to account for Plaintiff's Investment, failing to act in good faith, and by personally misappropriating Plaintiff's Investment by using for their own gain and purposes rather than the Investment's purpose.

174. MagicSoft is vicariously and financially liable for the breaches of fiduciary duty committed by its officers and agents, including Cohen, Bar, and Mrs. Bar.

175. These breaches cause Plaintiff to incur damages, including the loss of her Investment.

176. Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damages and for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**CLAIMS FOR RELIEF AGAINST COHEN**

**COUNT VIII:**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)**
**(Against Cohen)**

177. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

178. Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiff, from those who engage in

unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

179.    Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

180.    By soliciting Plaintiff's Investment in the manner in which they did, the Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8).

181.    While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms. The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

182.    Courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers and have defined an "unfair trade practice" as any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

183.    Defendants' conduct alleged herein is a *per se* unlawful and unfair trade practice, including due to their violations of Sections 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17), Fla. Stat

184.    Moreover, as the securities laws are designed for consumer protection and "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," a violation of the securities laws is a *per se* violation of FDUTPA.

185.    Defendants have reaped monetary rewards from operating and/or personally benefiting from inducing Plaintiff to enter into the Agreement and pay her Investment, thereby causing actual harm to Plaintiff.

186.    Defendants' acts and omissions described in this Complaint constitute both deceptive and unfair trade practices because the false representations and omissions made by the Defendants have a tendency or capacity to deceive consumers, such as Plaintiff, into investing in Defendants' falsely-touted syndication program and business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

187.    As a result of Defendants' deceptive trade practices, Plaintiff was deceived into investing her money – thus causing significant economic damage to Plaintiff.

188.    The materially false statements and omissions described in this Complaint, including about the nature of Defendants' model, experience, and capital, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiff which would have likely deceived a reasonable person under the circumstances.

189.    As a result of the false representations and violations of the securities laws described in this Complaint, Plaintiff has been damaged by, among other things Defendant failing to return her Investment.

190.    Plaintiff has also been damaged in other and further ways subject to proof at trial, including actual economic harm due to loss of business opportunities, investment opportunities, and interest, due to her being separated from her monies.

191.    Therefore, the Defendant engaged in unfair and deceptive trade practices in violation of Section 501.201 et seq., Fla. Stat.

192.    Pursuant to Sections 501.211(1) and 501.2105, Fla. Stat., Plaintiff is entitled to recover from Defendants the reasonable amount of attorneys' fees and costs Plaintiff has had to incur in representing her interests in this matter.

193.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for all available damages together with, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT IX:
## FRAUD IN THE INDUCEMENT
## (Against Cohen)

194.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

195.    The elements necessary to state a cause of action for fraud in the inducement are 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party.

196.    Fraudulent inducement renders a contract voidable.

197.    Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract.

198.    In the present suite, Defendants made false statements of material fact, as described more fully in this Complaint.

199.    Defendants had knowledge that its representations were false because Defendants were in possession of their real information at the time it made the representations, having full

access and knowledge of their own experience, assets under management, capital, and investor access.

200.    Defendants knew that their representations about MagicSoft's experience, capital, assets under management, and Plaintiff's right to a return of her Investment before an identified property was ready to be executed, would induce Plaintiff's reliance, because it is commonly known that the experience and capitalization of a company offering an Investment, and the minimization of risk associated with a multi-family syndication, significantly affects the purchaser's decision.

201.    Plaintiff was injured by relying on Defendants' representations, including her right to a return of her Investment if Defendant was unable to secure a property for execution because had Plaintiff known truth, Plaintiff would have never entered into the Agreement with Defendants.

202.    Due to Defendants fraudulently inducing Plaintiff to enter into the Agreement, the contract is voidable and rescindable at Plaintiff's option.

203.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for a rescission of the contract together with compensatory damages, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

**COUNT X:**
**UNJUST ENRICHMENT**
**(Against Cohen)**

204.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

205.    The elements of a cause of action for unjust enrichment are: (i) plaintiff has conferred a direct benefit on the defendant, who has knowledge thereof; (ii) defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

206.    Plaintiff conferred a benefit on Defendants by paying the Investment that was based on misrepresentations.

207.    Defendants voluntarily accepted Plaintiff's money knowing that they made misrepresentations that induced the Agreement, and that they were each using Plaintiff's Investment monies for their own personal and operational expenses and not segregating and safeguarding these funds to be invested in a syndicated property.

208.    It would be unjust for Defendants to retain the money Plaintiff paid.

209.    Had Defendants not made misrepresentations, Plaintiff would not have paid the Investment.

210.    In the alternative to Plaintiff's claims for damages, Plaintiff will not have an adequate remedy at law against Defendants, thereby necessitating Plaintiff's claim for Unjust Enrichment.

211.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money,

and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

### COUNT XI:
### CONVERSION
### (Against Cohen)

212.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

213.    Plaintiff transferred funds and assets to Defendants, and as a purported Investment, to participate in Defendants' syndication program.

214.    Defendants have kept Plaintiff's Investment after Plaintiff requested its return, despite Defendants' lack of any ownership interest in the Investment and despite Defendant's express promises that induced the Agreement that the Investment would be used only for Plaintiff first syndicated investment, and that Plaintiff would be returned 100% of her Investment at any time up until a specific identified property was ready to be executed.

215.    Defendants each personally appropriated and used these funds for their own personal gain, including for their own personal expenses.

216.    By refusing to return Plaintiff's money, Defendants intended to interfere with, and indeed have interfered with, Plaintiff's ownership and interest in her money, and has deprived Plaintiff of her property, permanently or temporarily.

217.    Upon information and belief, Defendants have utilized Plaintiff's funds to cover MagicSoft's own business expenses and to enrich its Directors and Officers, including Cohen, Mr. Bar, and Mrs. Bar.

218.    As a result of Defendants' conversion of Plaintiff's funds to their own uses, Plaintiff has suffered damage.

219.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XII:
## EQUITABLE ACCOUNTING
### (Against Cohen)

220.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

221.    Defendants have each asserted and exercised rights to access, convert, use, and convey Investment funds received from Plaintiff.

222.    Defendants took and exercised control and possession over these funds and represented to Plaintiff that her money would be used for its Investment purpose.

223.    However, Plaintiff has learned that her Investment money has been used, misappropriated, converted, and absconded by Defendants for purposes other than the Investment

purpose, including for Defendants' own personal and operational expenses, including personal investments.

224.    Plaintiff has made requests to Defendants to account for and explain how her Investments were used, whether they have been used, and the basis upon which they claim entitlement to convert and/or possess Plaintiff's money. These requests have either been ignored or not responded to any meaningful or credible way.

225.    As an alternative to Plaintiff's legal claims, Plaintiff has no adequate legal remedy because only a complete and accurate accounting will determine where the money Defendants' appropriated, diverted, and/or received is located, and how much of that money has been used or converted by, on in the possession of, each of the Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for an accounting, and further for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XIII:
## BREACH OF FIDUCIARY DUTY
### (Against Cohen)

226.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

227.    Plaintiff had a fiduciary relationship with the Defendants, because they had control over Plaintiff's Investment funds and the expected receivables in all the transactions from them.

228.    Plaintiff reposed confidence and trust in Defendants, which they accepted.

229.    Each of the Defendants personally represented to Plaintiff that they were committed to Plaintiff, both financially and operationally, both as the holder of her funds and as a partner.

230.     This position of trust and confidence included a fiduciary duty to properly manage, secure, account for, disburse, and return Plaintiff's funds as described herein.

231.     The Defendants breached this duty, by doing, among other things, personally making false representations that induced Plaintiff to entrust Defendants with her Investment funds and sign the Agreement, by failing to return Plaintiff's Investment, by personally continuing to make misrepresentations about MagicSoft's business after the Agreement was signed, by failing to account for Plaintiff's Investment, failing to act in good faith, and by personally misappropriating Plaintiff's Investment by using for their own gain and purposes rather than the Investment's purpose.

232.     These breaches cause Plaintiff to incur damages, including the loss of her Investment.

233.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for compensatory damages and for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XIV:
## CIVIL CONSPIRACY
## (Against Cohen)

234.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

235.    Defendants agreed to scheme whereby they would unlawfully take control of and appropriate Plaintiff's funds.

236.    Each of the individual Defendants actions in concealing and mispresenting material facts, as described herein, constitutes an underlying violation of FDUTPA, fraudulent inducement, conversion, a breach of fiduciary duty, unjust enrichment, and grounds for rescission of contract – the substantive allegations of which pertaining to Cohen are incorporated and adopted as if set forth herein.

237.    Defendants conspired with one another to perpetrate an unlawful act upon Plaintiff or to perpetrate a lawful act by unlawful means to carry out the underlying violations, *to wit*: they jointly, and individually, made the same and consistent misrepresentations, both to induce the Agreement in the first place, and after the Agreement was signed to continue to perpetuate the wrongful conduct; they misappropriated Plaintiff's Investment money for their own personal gain and to finance their own operational expenses and personal investments; among the other unlawful and unfair conduct alleged herein.

238.    Defendants solicited and accepted Plaintiff's money while withholding, and affirmatively mispresenting, material facts, including Defendants' experience, assets under management, capital raised, and its use of Plaintiff's money.

239.     All Defendants agreed to the illicit purpose for soliciting, taking, and not returning investment monies from Plaintiff so that MagicSoft's Directors, shareholders, affiliates, and officers, including Cohen, Bar, and Mrs. Bar could enjoy lavish lifestyles with Plaintiff's funds.

240.     Defendants were each aware of, and consented to, the misrepresentations detailed herein and knew that the efforts to garner funds from Plaintiff was all part of scheme aimed solely at enriching MagicSoft's Directors, shareholders, affiliates, and officers, including Cohen, Bar, and Ms. Bar, without any intent to remunerate Plaintiff in any legitimate way purported by the Defendants.

241.     In furtherance of their conspiracy, Defendants made to Plaintiff and others the false statements of fact detailed above and purposefully withheld from Plaintiff and others certain material facts detailed above in a concerted effort to obtain Plaintiff's and others' funds

242.     To fulfill its role in the conspiracy, MagicSoft was the corporate entity operated that pretended to be an experienced and funded company capable of syndicating multi-family apartments.

243.     To fulfill his role in the conspiracy, Defendant Bar oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for his own personal gain.

244.     To fulfill his role in the conspiracy, Defendant Cohen oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, was in charge of recruiting GPs, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used

Plaintiff's Investment monies for her own personal gain -- falsely representing that the operations were legitimate.

245.    To fulfill his role in the conspiracy, Defendant Ms. Bar oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, was in charge of marketing, events, and managing staff, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for her own personal gain.

246.    MagicSoft's purported experience, assets under management, and capital funding was not legitimate, something which Defendants Bar, Cohen, and Ms. Bar were aware of and which they accepted as part of the scheme.

247.    As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered damage.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XV:
## AIDING AND ABETTING
## (Against Cohen)

248.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

249.    Defendants agreed to scheme whereby they would unlawfully take control of and appropriate Plaintiff's funds.

250.    MagicSoft's and each of the individual Defendants actions in concealing and misrepresenting material facts, as described herein, constitutes an underlying violation of FDUTPA, fraudulent inducement, conversion, a breach of fiduciary duty, unjust enrichment, and grounds for rescission of contract – the substantive allegations of which pertaining to Cohen are incorporated and adopted as if set forth herein.

251.    Defendants had actual knowledge of the facts underlying the violations alleged herein, including the misrepresentations made by each of the individual Defendants.

252.    Indeed, the Defendants were present when each of them made, acquiesced to, failed to correct, ratified, and otherwise participated in the false statements made to Plaintiff personally, and to others in the public generally, including Plaintiff.

253.    Each of the Defendants substantially assisted each other in concealing these facts, whether by affirmatively assisting in concealing them, helping to conceal them, failing to act when they should have, and continuing to perpetuate false statements for each other (as demonstrated by the facts alleged herein).

254.    With respect to inaction, this constitutes substantial assistance because they had a fiduciary relationship with – and thus a fiduciary duty to – Plaintiff.

255.    These actions caused Plaintiff to incur damages, which include loss of funds.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**CLAIMS FOR RELIEF AGAINST BAR (MR. GABRIEL BAR SHANY)**

## COUNT XVI:
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)
### (Against Mr. Bar)

256.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

257.    Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiff, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

258.    Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

259.    By soliciting Plaintiff's Investment in the manner in which they did, the Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8).

260.    While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms. The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

261.    Courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers and have defined an "unfair trade practice" as any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

262.    Defendants' conduct alleged herein is a *per se* unlawful and unfair trade practice, including due to their violations of Sections 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17), Fla. Stat

263.    Moreover, as the securities laws are designed for consumer protection and "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," a violation of the securities laws is a *per se* violation of FDUTPA.

264.    Defendants have reaped monetary rewards from operating and/or personally benefiting from inducing Plaintiff to enter into the Agreement and pay her Investment, thereby causing actual harm to Plaintiff.

265.    Defendants' acts and omissions described in this Complaint constitute both deceptive and unfair trade practices because the false representations and omissions made by the Defendants have a tendency or capacity to deceive consumers, such as Plaintiff, into investing in Defendants' falsely-touted syndication program and business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

266.    As a result of Defendants' deceptive trade practices, Plaintiff was deceived into investing her money – thus causing significant economic damage to Plaintiff.

267.    The materially false statements and omissions described in this Complaint, including about the nature of Defendants' model, experience, and capital, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiff which would have likely deceived a reasonable person under the circumstances.

268.    As a result of the false representations and violations of the securities laws described in this Complaint, Plaintiff has been damaged by, among other things Defendant failing to return her Investment.

269.    Plaintiff has also been damaged in other and further ways subject to proof at trial, including actual economic harm due to loss of business opportunities, investment opportunities, and interest, due to her being separated from her monies.

270.     Therefore, the Defendant engaged in unfair and deceptive trade practices in violation of Section 501.201 et seq., Fla. Stat.

271.     Pursuant to Sections 501.211(1) and 501.2105, Fla. Stat., Plaintiff is entitled to recover from Defendants the reasonable amount of attorneys' fees and costs Plaintiff has had to incur in representing her interests in this matter.

272.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for all available damages together with, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT XVII:
## FRAUD IN THE INDUCEMENT
### (Against Mr. Bar)

273.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

274.     The elements necessary to state a cause of action for fraud in the inducement are 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party.

275.     Fraudulent inducement renders a contract voidable.

276.     Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract.

277.     In the present suite, Defendants made false statements of material fact, as described more fully in this Complaint.

278.     Defendants had knowledge that its representations were false because Defendants were in possession of their real information at the time it made the representations, having full access and knowledge of their own experience, assets under management, capital, and investor access.

279.     Defendants knew that their representations about MagicSoft's experience, capital, assets under management, and Plaintiff's right to a return of her Investment before an identified property was ready to be executed, would induce Plaintiff's reliance, because it is commonly known that the experience and capitalization of a company offering an Investment, and the minimization of risk associated with a multi-family syndication, significantly affects the purchaser's decision.

280.     Plaintiff was injured by relying on Defendants' representations, including her right to a return of her Investment if Defendant was unable to secure a property for execution because had Plaintiff known truth, Plaintiff would have never entered into the Agreement with Defendants.

281.     Due to Defendants fraudulently inducing Plaintiff to enter into the Agreement, the contract is voidable and rescindable at Plaintiff's option.

282.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money,

and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for a rescission of the contract together with compensatory damages, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

**COUNT XVIII:**
**UNJUST ENRICHMENT**
**(Against Mr. Bar)**

283.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

284.    The elements of a cause of action for unjust enrichment are: (i) plaintiff has conferred a direct benefit on the defendant, who has knowledge thereof; (ii) defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

285.    Plaintiff conferred a benefit on Defendants by paying the Investment  that was based on misrepresentations.

286.    Defendants voluntarily accepted Plaintiff's money knowing that they made misrepresentations that induced the Agreement, and that they were each using Plaintiff's Investment monies for their own personal and operational expenses and not segregating and safeguarding these funds to be invested in a syndicated property.

287.    It would be unjust for Defendants to retain the money Plaintiff paid.

288.    Had Defendants not made misrepresentations, Plaintiff would not have paid the Investment.

289.     In the alternative to Plaintiff's claims for damages, Plaintiff will not have an adequate remedy at law against Defendants, thereby necessitating Plaintiff's claim for Unjust Enrichment.

290.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XIV:
### CONVERSION
### (Against Mr. Bar)

291.     Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

292.     Plaintiff transferred funds and assets to Defendants, and as a purported Investment, to participate in Defendants' syndication program.

293.     Defendants have kept Plaintiff's Investment after Plaintiff requested its return, despite Defendants' lack of any ownership interest in the Investment and despite Defendant's express promises that induced the Agreement that the Investment would be used only for Plaintiff' first syndicated investment, and that Plaintiff would be returned 100% of her Investment at any time up until a specific identified property was ready to be executed.

294.     Defendants each personally appropriated and used these funds for their own personal gain, including for their own personal expenses.

295.     By refusing to return Plaintiff's money, Defendants intended to interfere with, and indeed have interfered with, Plaintiff's ownership and interest in her money, and has deprived Plaintiff of her property, permanently or temporarily.

296.     Upon information and belief, Defendants have utilized Plaintiff's funds to cover MagicSoft's own business expenses and to enrich its Directors and Officers, including Cohen,Bar, and Mrs. Bar.

297.     As a result of Defendants' conversion of Plaintiff's funds to their own uses, Plaintiff has suffered damage.

298.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XX:
## EQUITABLE ACCOUNTING
### (Against Mr. Bar)

299.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

300.    Defendants have each asserted and exercised rights to access, convert, use, and convey Investment funds received from Plaintiff.

301.     Defendants took and exercised control and possession over these funds and represented to Plaintiff that her money would be used for its Investment purpose.

302.     However, Plaintiff has learned that her Investment money has been used, misappropriated, converted, and absconded by Defendants for purposes other than the Investment purpose, including for Defendants' own personal and operational expenses, including personal investments.

303.     Plaintiff has made requests to Defendants to account for and explain how her Investments were used, whether they have been used, and the basis upon which they claim entitlement to convert and/or possess Plaintiff's money. These requests have either been ignored or not responded to any meaningful or credible way.

304.     As an alternative to Plaintiff's legal claims, Plaintiff has no adequate legal remedy because only a complete and accurate accounting will determine where the money Defendants' appropriated, diverted, and/or received is located, and how much of that money has been used or converted by, on in the possession of, each of the Defendants.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for an accounting, and further for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XXI:
## BREACH OF FIDUCIARY DUTY
### (Against Mr. Bar)

305.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

306.    Plaintiff had a fiduciary relationship with the Defendants, because they had control over Plaintiff's Investment funds and the expected receivables in all the transactions from them.

307.    Plaintiff reposed confidence and trust in Defendants, which they accepted.

308.    Each of the Defendants personally represented to Plaintiff that they were committed to Plaintiff, both financially and operationally, both as the holder of her funds and as a partner.

309.    This position of trust and confidence included a fiduciary duty to properly manage, secure, account for, disburse, and return Plaintiff's funds as described herein.

310.    The Defendants breached this duty, by doing, among other things, personally making false representations that induced Plaintiff to entrust Defendants with her Investment funds and sign the Agreement, by failing to return Plaintiff's Investment, by personally continuing to make misrepresentations about MagicSoft's business after the Agreement was signed, by failing to account for Plaintiff's Investment, failing to act in good faith, and by personally misappropriating Plaintiff's Investment by using for their own gain and purposes rather than the Investment's purpose.

311.    These breaches cause Plaintiff to incur damages, including the loss of her Investment.

312.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money,

and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damages and for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

### COUNT XXII:
### CIVIL CONSPIRACY
### (Against Mr. Bar)

313.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

314.    Defendants agreed to scheme whereby they would unlawfully take control of and appropriate Plaintiff's funds.

315.    Each of the individual Defendants actions in concealing and mispresenting material facts, as described herein, constitutes an underlying violation of FDUTPA, fraudulent inducement, conversion, a breach of fiduciary duty, unjust enrichment, and grounds for rescission of contract – the substantive allegations of which pertaining to Mr. Bar are incorporated and adopted as if set forth herein.

316.    Defendants conspired with one another to perpetrate an unlawful act upon Plaintiff or to perpetrate a lawful act by unlawful means to carry out the underlying violations, *to wit*: they jointly, and individually, made the same and consistent misrepresentations, both to induce the Agreement in the first place, and after the Agreement was signed to continue to perpetuate the wrongful conduct; they misappropriated Plaintiff's Investment money for their own personal gain

and to finance their own operational expenses and personal investments; among the other unlawful and unfair conduct alleged herein.

317.     Defendants solicited and accepted Plaintiff's money while withholding, and affirmatively mispresenting, material facts, including Defendants' experience, assets under management, capital raised, and its use of Plaintiff's money.

318.     All Defendants agreed to the illicit purpose for soliciting, taking, and not returning investment monies from Plaintiff so that MagicSoft's Directors, shareholders, affiliates, and officers, including Cohen, Bar, and Mrs. Bar could enjoy lavish lifestyles with Plaintiff's funds.

319.     Defendants were each aware of, and consented to, the misrepresentations detailed herein and knew that the efforts to garner funds from Plaintiff was all part of scheme aimed solely at enriching MagicSoft's Directors, shareholders, affiliates, and officers, including Cohen, Bar, and Ms. Bar, without any intent to remunerate Plaintiff in any legitimate way purported by the Defendants.

320.     In furtherance of their conspiracy, Defendants made to Plaintiff and others the false statements of fact detailed above and purposefully withheld from Plaintiff and others certain material facts detailed above in a concerted effort to obtain Plaintiff's and others' funds

321.     To fulfill its role in the conspiracy, MagicSoft was the corporate entity operated that pretended to be an experienced and funded company capable of syndicating multi-family apartments.

322.     To fulfill his role in the conspiracy, Defendant Bar oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, and personally made false statements and misrepresentations to

lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for his own personal gain.

323.    To fulfill his role in the conspiracy, Defendant Cohen oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, was in charge of recruiting GPs, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for her own personal gain -- falsely representing that the operations were legitimate.

324.    To fulfill his role in the conspiracy, Defendant Ms. Bar oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, was in charge of marketing, events, and managing staff, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for her own personal gain.

325.    MagicSoft's purported experience, assets under management, and capital funding was not legitimate, something which Defendants Bar, Cohen, and Ms. Bar were aware of and which they accepted as part of the scheme.

326.    As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered damage.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XXIII:
## AIDING AND ABETTING
## (Against Defendants Mr. Bar)

327. Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

328. Defendants agreed to scheme whereby they would unlawfully take control of and appropriate Plaintiff's funds.

329. MagicSoft's and each of the individual Defendants actions in concealing and mispresenting material facts, as described herein, constitutes an underlying violation of FDUTPA, fraudulent inducement, conversion, a breach of fiduciary duty, unjust enrichment, and grounds for rescission of contract – the substantive allegations of which pertaining to Mr. Bar are incorporated and adopted as if set forth herein..

330. Defendants had actual knowledge of the facts underlying the violations alleged herein, including the misrepresentations made by each of the individual Defendants.

331. Indeed, the Defendants were present when each of them made, acquiesced to, failed to correct, ratified, and otherwise participated in the false statements made to Plaintiff personally, and to others in the public generally, including Plaintiff.

332. Each of the Defendants substantially assisted each other in concealing these facts, whether by affirmatively assisting in concealing them, helping to conceal them, failing to act when they should have, and continuing to perpetuate false statements for each other (as demonstrated by the facts alleged herein).

333. With respect to inaction, this constitutes substantial assistance because they had a fiduciary relationship with – and thus a fiduciary duty to – Plaintiff.

334. These actions caused Plaintiff to incur damages, which include loss of funds.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**CLAIMS FOR RELIEF AGAINST MRS. BAR (MRS. SHANI BAR)**

**COUNT XIV:**
**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(FDUTPA)**
**(Against Mrs. Bar)**

335.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

336.    Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiff, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

337.    Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

338.    By soliciting Plaintiff's Investment in the manner in which they did, the Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8).

339.    While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms. The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

340.    Courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers and have defined an "unfair trade practice" as any act

or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

341.    Defendants' conduct alleged herein is a *per se* unlawful and unfair trade practice, including due to their violations of Sections 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17), Fla. Stat.

342.    Moreover, as the securities laws are designed for consumer protection and "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," a violation of the securities laws is a *per se* violation of FDUTPA.

343.    Defendants have reaped monetary rewards from operating and/or personally benefiting from inducing Plaintiff to enter into the Agreement and pay her Investment, thereby causing actual harm to Plaintiff.

344.    Defendants' acts and omissions described in this Complaint constitute both deceptive and unfair trade practices because the false representations and omissions made by the Defendants have a tendency or capacity to deceive consumers, such as Plaintiff, into investing in Defendants' falsely-touted syndication program and business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

345.    As a result of Defendants' deceptive trade practices, Plaintiff was deceived into investing her money – thus causing significant economic damage to Plaintiff.

346.    The materially false statements and omissions described in this Complaint, including about the nature of Defendants' model, experience, and capital, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiff which would have likely deceived a reasonable person under the circumstances.

347.    As a result of the false representations and violations of the securities laws described in this Complaint, Plaintiff has been damaged by, among other things Defendant failing to return her Investment.

348.    Plaintiff has also been damaged in other and further ways subject to proof at trial, including actual economic harm due to loss of business opportunities, investment opportunities, and interest, due to her being separated from her monies.

349.    Therefore, the Defendant engaged in unfair and deceptive trade practices in violation of Section 501.201 et seq., Fla. Stat.

350.    Pursuant to Sections 501.211(1) and 501.2105, Fla. Stat., Plaintiff is entitled to recover from Defendants the reasonable amount of attorneys' fees and costs Plaintiff has had to incur in representing her interests in this matter.

351.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for all available damages together with, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT XXV:
### FRAUD IN THE INDUCEMENT
### (Against Mrs. Bar)

352.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-106 above, as if fully set forth herein verbatim.

353.    The elements necessary to state a cause of action for fraud in the inducement are 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party.

354.    Fraudulent inducement renders a contract voidable.

355.    Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract.

356.    In the present suite, Defendants made false statements of material fact, as described more fully in this Complaint.

357.    Defendants had knowledge that its representations were false because Defendants were in possession of their real information at the time it made the representations, having full access and knowledge of their own experience, assets under management, capital, and investor access.

358.    Defendants knew that their representations about MagicSoft's experience, capital, assets under management, and Plaintiff's right to a return of her Investment before an identified property was ready to be executed, would induce Plaintiff's reliance, because it is commonly known that the experience and capitalization of a company offering an Investment, and the

minimization of risk associated with a multi-family syndication, significantly affects the purchaser's decision.

359.     Plaintiff was injured by relying on Defendants' representations, including her right to a return of her Investment if Defendant was unable to secure a property for execution because had Plaintiff known truth, Plaintiff would have never entered into the Agreement with Defendants.

360.     Due to Defendants fraudulently inducing Plaintiff to enter into the Agreement, the contract is voidable and rescindable at Plaintiff's option.

361.     Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for a rescission of the contract together with compensatory damages, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT XXVI:
## UNJUST ENRICHMENT
### (Against Mrs. Bar)

362.     Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

363.     The elements of a cause of action for unjust enrichment are: (i) plaintiff has conferred a direct benefit on the defendant, who has knowledge thereof; (ii) defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

364. Plaintiff conferred a benefit on Defendants by paying the Investment that was based on misrepresentations.

365. Defendants voluntarily accepted Plaintiff's money knowing that they made misrepresentations that induced the Agreement, and that they were each using Plaintiff's Investment monies for their own personal and operational expenses and not segregating and safeguarding these funds to be invested in a syndicated property.

366. It would be unjust for Defendants to retain the money Plaintiff paid.

367. Had Defendants not made misrepresentations, Plaintiff would not have paid the Investment.

368. In the alternative to Plaintiff's claims for damages, Plaintiff will not have an adequate remedy at law against Defendants, thereby necessitating Plaintiff's claim for Unjust Enrichment.

369. Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**COUNT XXVII:**
**CONVERSION**
**(Against Mrs. Bar)**

370.     Plaintiff re-alleges and incorporates by reference the allegations set forth

paragraphs 1-106 above, as if fully set forth herein verbatim

371.     Plaintiff transferred funds and assets to Defendants, and as a purported

Investment, to participate in Defendants' syndication program.

372.     Defendants have kept Plaintiff's Investment after Plaintiff requested its return,

despite Defendants' lack of any ownership interest in the Investment and despite Defendant's

express promises that induced the Agreement that the Investment would be used only for Plaintiff'

first syndicated investment, and that Plaintiff would be returned 100% of her Investment at any

time up until a specific identified property was ready to be executed.

373.     Defendants each personally appropriated and used these funds for their own

personal gain, including for their own personal expenses.

374.     By refusing to return Plaintiff's money, Defendants intended to interfere with,

and indeed have interfered with, Plaintiff's ownership and interest in her money, and has deprived

Plaintiff of her property, permanently or temporarily.

375.     Upon information and belief, Defendants have utilized Plaintiff's funds to

cover MagicSoft's own business expenses and to enrich its Directors and Officers, including

Cohen,Bar, and Mrs. Bar.

376.     As a result of Defendants' conversion of Plaintiff's funds to their own uses,

Plaintiff has suffered damage.

377.     Defendants are individually, personally, and jointly and severally liable for this

cause of action due to each of their own respective actions, misappropriation of Plaintiff's money,

and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**COUNT XXVIII:**
**EQUITABLE ACCOUNTING**
**(Against Mrs. Bar)**

378.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

379.    Defendants have each asserted and exercised rights to access, convert, use, and convey Investment funds received from Plaintiff.

380.    Defendants took and exercised control and possession over these funds and represented to Plaintiff that her money would be used for its Investment purpose.

381.    However, Plaintiff has learned that her Investment money has been used, misappropriated, converted, and absconded by Defendants for purposes other than the Investment purpose, including for Defendants' own personal and operational expenses, including personal investments.

382.    Plaintiff has made requests to Defendants to account for and explain how her Investments were used, whether they have been used, and the basis upon which they claim entitlement to convert and/or possess Plaintiff's money. These requests have either been ignored or not responded to any meaningful or credible way.

383.    As an alternative to Plaintiff's legal claims, Plaintiff has no adequate legal remedy because only a complete and accurate accounting will determine where the money Defendants' appropriated, diverted, and/or received is located, and how much of that money has been used or converted by, on in the possession of, each of the Defendants.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for an accounting, and further for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XXIX:
## BREACH OF FIDUCIARY DUTY
### (Against Mrs. Bar)

384.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

385.    Plaintiff had a fiduciary relationship with the Defendants, because they had control over Plaintiff's Investment funds and the expected receivables in all the transactions from them.

386.    Plaintiff reposed confidence and trust in Defendants, which they accepted.

387.    Each of the Defendants personally represented to Plaintiff that they were committed to Plaintiff, both financially and operationally, both as the holder of her funds and as a partner.

388.    This position of trust and confidence included a fiduciary duty to properly manage, secure, account for, disburse, and return Plaintiff's funds as described herein.

389.    The Defendants breached this duty, by doing, among other things, personally making false representations that induced Plaintiff to entrust Defendants with her Investment funds and sign the Agreement, by failing to return Plaintiff's Investment, by personally continuing to make misrepresentations about MagicSoft's business after the Agreement was signed, by failing

to account for Plaintiff's Investment, failing to act in good faith, and by personally misappropriating Plaintiff's Investment by using for their own gain and purposes rather than the Investment's purpose.

390.    These breaches cause Plaintiff to incur damages, including the loss of her Investment.

391.    Defendants are individually, personally, and jointly and severally liable for this cause of action due to each of their own respective actions, misappropriation of Plaintiff's money, and misrepresentations, and because each of them conspired and aided and abetted each other in performing the wrongful acts alleged herein, and due to their individual breaches of fiduciary duty..

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damages and for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT XXX:
## CIVIL CONSPIRACY
### (Against Mrs. Bar)

392.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

393.    Defendants agreed to scheme whereby they would unlawfully take control of and appropriate Plaintiff's funds.

394.    Each of the individual Defendants actions in concealing and mispresenting material facts, as described herein, constitutes an underlying violation of FDUTPA, fraudulent inducement, conversion, a breach of fiduciary duty, unjust enrichment, and grounds for rescission of contract –

the substantive allegations of which pertaining to Mrs. Bar are incorporated and adopted as if set forth herein

395.     Defendants conspired with one another to perpetrate an unlawful act upon Plaintiff or to perpetrate a lawful act by unlawful means to carry out the underlying violations, *to wit*: they jointly, and individually, made the same and consistent misrepresentations, both to induce the Agreement in the first place, and after the Agreement was signed to continue to perpetuate the wrongful conduct; they misappropriated Plaintiff's Investment money for their own personal gain and to finance their own operational expenses and personal investments; among the other unlawful and unfair conduct alleged herein.

396.     Defendants solicited and accepted Plaintiff's money while withholding, and affirmatively mispresenting, material facts, including Defendants' experience, assets under management, capital raised, and its use of Plaintiff's money.

397.     All Defendants agreed to the illicit purpose for soliciting, taking, and not returning investment monies from Plaintiff so that MagicSoft's Directors, shareholders, affiliates, and officers, including Cohen, Bar, and Mrs. Bar could enjoy lavish lifestyles with Plaintiff's funds.

398.     Defendants were each aware of, and consented to, the misrepresentations detailed herein and knew that the efforts to garner funds from Plaintiff was all part of scheme aimed solely at enriching MagicSoft's Directors, shareholders, affiliates, and officers, including Cohen, Bar, and Ms. Bar, without any intent to remunerate Plaintiff in any legitimate way purported by the Defendants.

399.     In furtherance of their conspiracy, Defendants made to Plaintiff and others the false statements of fact detailed above and purposefully withheld from Plaintiff and others certain material facts detailed above in a concerted effort to obtain Plaintiff's and others' funds

400.    To fulfill its role in the conspiracy, MagicSoft was the corporate entity operated that pretended to be an experienced and funded company capable of syndicating multi-family apartments.

401.    To fulfill his role in the conspiracy, Defendant Bar oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for his own personal gain.

402.    To fulfill his role in the conspiracy, Defendant Cohen oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, was in charge of recruiting GPs, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for her own personal gain -- falsely representing that the operations were legitimate.

403.    To fulfill his role in the conspiracy, Defendant Ms. Bar oversaw and personally participated in developing MagicSoft, including its Website and marketing materials, controlled and participated in its operations, was in charge of marketing, events, and managing staff, and personally made false statements and misrepresentations to lure Plaintiff, and personally misappropriated and used Plaintiff's Investment monies for her own personal gain.

404.    MagicSoft's purported experience, assets under management, and capital funding was not legitimate, something which Defendants Bar, Cohen, and Ms. Bar were aware of and which they accepted as part of the scheme.

405.    As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered damage.

WHEREFORE, Plaintiff demands judgment against Defendant, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

**COUNT XXXI**
**AIDING AND ABETTING**
**(Against Defendants Mrs. Bar)**

406.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-106 above, as if fully set forth herein verbatim.

407.    Defendants agreed to scheme whereby they would unlawfully take control of and appropriate Plaintiff's funds.

408.    MagicSoft's and each of the individual Defendants actions in concealing and mispresenting material facts, as described herein, constitutes an underlying violation of FDUTPA, fraudulent inducement, conversion, a breach of fiduciary duty, unjust enrichment, and grounds for rescission of contract – the substantive allegations of which pertaining to Mrs. Bar are incorporated and adopted as if set forth herein

409.    Defendants had actual knowledge of the facts underlying the violations alleged herein, including the misrepresentations made by each of the individual Defendants.

410.    Indeed, the Defendants were present when each of them made, acquiesced to, failed to correct, ratified, and otherwise participated in the false statements made to Plaintiff personally, and to others in the public generally, including Plaintiff.

411.    Each of the Defendants substantially assisted each other in concealing these facts, whether by affirmatively assisting in concealing them, helping to conceal them, failing to act when they should have, and continuing to perpetuate false statements for each other (as demonstrated by the facts alleged herein).

412.    With respect to inaction, this constitutes substantial assistance because they had a fiduciary relationship with – and thus a fiduciary duty to – Plaintiff.

413.    These actions caused Plaintiff to incur damages, which include loss of funds.

WHEREFORE, Plaintiff demands judgment against Defendants, individually, personally, and jointly and severally, for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 9, 2025.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
MPascucci@JusticeEarned.com
JEggnatz@JusticeEarned.com
SGizzie@JusticeEarned.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was filed via the Florida Court's e-filing portal this 9th day of July 2025 and served on all counsel of record.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz

## SERVICE LIST

Omar M. Salazar II, Esq.
Fla. Bar No.: 0106175
omar@lawlp.com
Robin Richson, Esq.
Fla. Bar No.: 42009
robin@lawlp.com
christina@lawlp.com
**LEVY & PARTNERS, PLLC**
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
Tel: (954) 727-8570
Fax: (954) 241-6857

*Counsel for Defendant, Magicsoft Group, Inc. d/b/a DealEstate.ai, Bella Cohen, Gabriel Bar Shany, and Shani Bar*

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

AHUVA GAMLIEL,                          :
                                        :
  *Plaintiffs,*                    :
                                        :
*vs.*                                   :
                                        :
MAGICSOFT GROUP, INC. d/b/a :
DealEstate.Ai, BELLA COHEN, GABRIEL     :
BAR SHANY, and SHANI BAR                :
                                        :
  *Defendants.*                     :

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

  Plaintiff, AHUVA GAMLIEL, sues Defendants, MAGICSOFT GROUP, INC. d/b/a

DealEstate.Ai, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR (collectively,

"Defendants").

  Plaintiff paid money to Defendants under false, deceptive, and unfair pretenses. Defendants

misled Plaintiff and induced her to pay money towards a multi-family syndication investment.

Defendants failed to perform as promised, but they refuse to return Plaintiff's money.

## THE PARTIES, JURISDICTION, AND VENUE

  1.  This is an action for damages that is at least eighty-five thousand dollars

($85,000.00), exclusive of costs, fees, interest, and punitive damages and is otherwise within the

jurisdiction of this Court.

  2.  Plaintiff, ("Gamliel" and/or "Plaintiff"), is a resident of the State of Florida.

3.      Defendant, MAGICSOFT GROUP, INC. d/b/a DealEstate.Ai. ("MagicSoft"), is Delaware corporation with its principal place of business located at 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. MagicSoft lists as its Registered Agent: UNITED AGENT GROUP INC. 1521 CONCORD PIKE SUITE 201, WILMINGTON, DE 19803. MagicSoft carries on business and holds itself out to the public as DealEstate.Ai, including through its website (https://dealestate.ai/) and other online social media platforms.

4.      Defendant also incorporated a separate company in Florida named Magicsoft Grp., Inc., a Florida corporation with its principal place of business located at 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Defendant listed as its Registered Agent: UNITED STATES CORPORATION AGENTS, INC., 476 RIVERSIDE AVE. JACKSONVILLE, FL 32202.

5.      However, MagicSoft filed Articles of Dissolution in Florida on April 30, 2024. Based upon investigation of counsel, it is believed that MagicSoft operates through its successor, affiliated, or related Delaware corporate entity. The two companies are one in the same and alter-egos of each other. Cohen advised Plaintiff that the Florida filing was redundant and the reason for dissolution.

6.      Defendant Bella Cohen ("Cohen") is and was MagicSoft's Chief Executive Officer and principal director of MagicSoft. Cohen is a Florida resident and operates MagicSoft in Miami-Dade County, Florida. Cohen's principal place of business is at MagicSoft's principal place of business, 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Cohen personally participated or aided in the making of the sale and representations to Plaintiff.

7.      Defendant Gabriel Bar Shany ("Bar") is and was MagicSoft's Chief Technology Officer and director of MagicSoft. Bar is a Florida resident and operates MagicSoft in Miami-

Dade County, Florida. Bar's principal place of business is at MagicSoft's principal place of business, 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Bar personally participated or aided in the making of the sale and representations to Plaintiff

8.       Defendant Shani Bar ("Mrs. Bar") is and was MagicSoft's Chief Marketing Officer and director of MagicSoft. Bar is a Florida resident and operates MagicSoft in Miami-Dade County, Florida. Mrs. Bar's principal place of business is at MagicSoft's principal place of business, 323 SUNNY ISLES BLVD 7TH FLOOR SUNNY ISLES BEACH, FL 33160. Mrs. Bar personally participated or aided in the making of the sale and representations to Plaintiff

9.       Defendants' breaches occurred in Miami-Dade County and Plaintiff's Agreement (defined below) with MagicSoft was entered into in Miami-Dade County. Additionally, Defendants purposely availed themselves to the jurisdiction of this Court by contracting with Plaintiff, a Florida resident, and by conducting its principal operations in Miami-Dade County.

10.     Venue for this action is proper pursuant to *Florida Statute* § 48.193, as the causes of action accrued in Miami-Dade County.

11.     All conditions precedent to bringing and maintaining this action have occurred, have been excused or were waived.

12.     Plaintiff has retained the undersigned law firm to represent her in this action and has agreed to pay reasonable attorney's fees and costs for which Plaintiff is entitled to be reimbursed.

## FACTUAL BACKGROUND

### Multifamily Syndication is Complex and Has Barriers to Entry.

13.     Multifamily syndication is the process of gathering capital from a group of investors, known as a "syndicate," to invest in a multifamily property.

14.     Syndication allows investors to invest in bigger real estate deals than they could individually or through smaller partnerships, helping build wealth for passive and active investors.

15.     Multifamily syndication can be complex. In most scenarios, a first-time syndicator should already have some experience investing in single-family or small multifamily properties on their own or should already be a (somewhat) experienced commercial real estate professional.

16.     It is a highly regulated business model due to its high risk and potential for fraud.

17.     In the United States, the two most common types of real estate syndication structures are equity offerings made under rule 506(c) or rule 506(b) of the Security and Exchange Commission's (SEC's) Regulation D. Both of these rules allow private funds (including real estate funds) to make private stock (i.e., equity) offerings without officially registering with the SEC.

18.     If a multifamily syndication has the status of 506(c), investing will only be open to "accredited investors," individuals who are allowed to invest in unregistered private investment offerings.

19.     In contrast, multifamily syndications utilizing the 506(b) rule are open to accredited and "sophisticated investors."

**Defendants' Business Model, The Agreement and Plaintiff's Investment.**

20.     Plaintiff met Defendants at a real estate conference in March 2024 to network and learn about the multi-family investment industry.

21.     Defendant's entire business model is focused on marketing to starry-eyed dreamers who otherwise do not have the experience, knowledge, capital, wealth, a sufficient network, sophistication, or general wherewithal to purchase multi-family properties, organize and secure investors to purchase these properties, and then to manage these syndicated properties and tenants once acquired.

22.     Plaintiff is neither an accredited nor sophisticated investor regarding multi-family syndications. Plaintiff has neither owned, managed, organized, nor had any involvement whatsoever with real property syndications.

23.     On April 10, 2024, Plaintiff and MagicSoft entered into a General Partner Service Agreement ("Agreement"),[1] whereby MagicSoft was to provide its legal, financial, and industry expertise to Plaintiff by making a multi-family real estate syndication investment accessible to her, including providing its supposed access to capital and investors.

24.     To induce the Agreement, Defendants touted the importance of engaging an experienced professional, like Defendants, to guide her through all legal and financial aspects of the investment to achieve her financial goals.

25.     Defendant required Plaintiff to pay an $85,000 Limited Partner Contribution ("Investment").

26.     Pursuant to the Agreement, Plaintiff's Investment was to only be used for, and presented to shareholders as, an investment made by Plaintiff attributable to her first syndicated property, including for Risk Capital expenses, such SEC compliance and legal expenses.

27.     Plaintiff was expressly told by Defendants that her $85,000 Investment would be directly invested into her first executed property so that she would have "skin in the game."

28.     Pursuant to the Agreement, Plaintiff was entitled to terminate the Agreement *without cause* before the funding of her first syndicated executed property (ie: after a specific identified property was under contract, but before the purchase/acquisition of the property),

---

1.      Defendants are in possession of the Agreement. It is not being filed here in an abundance of caution to protect any confidential nature of it, but it shall be deemed incorporated herein.

including the full return of her $85,000 Investment within 10 business days, to the extent that *the* property is executed by another GP affiliated with the company.

29.     Plaintiff was also expressly guaranteed that if she wanted to leave MagicSoft and terminate the Agreement prior to Defendants securing her a first property under contract ready for execution, that she would be able to do so with 100% return of her Investment – that is logical because before that point in time,  her segregated Investment monies would not have been spent or used on her first property.

30.     Defendants' Agreement and verbal promise and guarantee to Plaintiff was that they (Defendants) would be active investors who had completed many syndication cycles. Plaintiff was expressly told before signing the Agreement and during the pendency of the Agreement that she would enjoy the opportunity to partner with Defendants on a joint venture.

31.     Specifically, once a property located by Plaintiff was executed, Defendant was to receive a 40% acquisition fee, 40% of the net monthly cash disbursements from the syndicated property, and 40% of the capital gain (equity) earned on the syndicated property.

**Defendants' Representations and Promises to Plaintiff that Induced the Agreement**

32.     As an unsophisticated and unaccredited syndication investor, real estate professional, broker, or dealer, with no syndication experience, Plaintiff did not have the expertise, experience, or financial capital to purchase or organize multi-family syndications or make financial offerings, assessments, or projections.

33.     To induce Plaintiff and to reassure her that her Investment was safe and secure in the hands of Defendants, MagicSoft and principals, including Cohen (Chief Executive Officer) and Bar (Chief Technology Officer), made express representations and misrepresentations to Plaintiff before she signed the Agreement and paid her Investments.

34.     Some of the representations made by Defendants, individually and collectively at various in-person and/or meetings, on MagicSoft's website, and on its social media pages, that induced Plaintiff enter in to the Agreement and pay the Investment, included, but are not limited to:

a.  Plaintiff would be entitled to a 100% return of her Investment with or without cause before any specific property went under contract and was ready to be executed;

b.  That MagicSoft was a financially stable and on-going registered company in Florida;

c.  That MagicSoft was sufficiently capitalized and that it had immediate access to ready, willing, and able investors to finance syndications;

d.  That MagicSoft had a proven track record with presently "over $1.8 Billion Assets Under Management and 10,000+ apartments under management";

e.  That MagicSoft's principals had over 50 years of combined experience completing syndications;

f.  That Cohen, the CEO and COO, revolutionized real estate syndication;

g.  That "our accelerator program [has] . . . a track record of helping real estate syndicators build and scale successfully."

h.  That Plaintiff's "role" as a GP was to find/locate properties for syndication based on MagicSoft's criteria and to upload them to MagicSoft's online portal. Defendants would then "do the rest" to secure investors, raise capital, underwrite the property, and otherwise complete the syndication. Defendants would then assist Plaintiff to manage the property.

35.     These representations were material to her decision to invest and constitute actionable misrepresentation under applicable securities and partnership laws

**<u>Plaintiff's Discovery of "Red Flags" and Defendants' Misrepresentations and Breach of Duty to Her.</u>**

36.     Upon signing the Agreement, Plaintiff diligently began to perform and worked tirelessly to locate and identify properties that met Defendants' criteria.

37.     Over a period of approximately 9 months, Plaintiff located and presented (uploaded) over 90 properties to Defendants for syndication – an average of a new property about every 3 days.

38.     However, Defendants failed to secure capital for a single property.

39.     Defendants failed to secure a single property under contract.

40.     Defendants failed to secure a single property to be executed.

41.     Defendants voluntarily dissolved MagicSoft and its legal registration in Florida on April 30, 2024, just 20 days after Plaintiff signed the Agreement, and did not notify Plaintiff.

42.     Leadership, including MagicSoft's general managers and board members, started terminating their relationship with MagicSoft.

43.     Bar made false claims to Plaintiff regarding MagicSoft's leadership, including falsely telling Plaintiff on January 6, 2025, that Mr. Sannidhi was a board member of Defendant– that was a lie – Mr. Sannidhi had left the company and was no longer a board member at that time.

44.     Bar also falsely told Plaintiff that Mr. Sannidhi continued to be a board member of the company and was still actively involved with syndicating properties, but he had already left the company and was no longer a funds manager – that was a lie.

45.     Bar instructed Plaintiff to not communicate with Defendant's board members.

46.     Plaintiff discovered that MagicSoft has failed to execute on a single property.

47.     Plaintiff discovered that MagicSoft has zero Assets Under Management.

48.     Plaintiff discovered that MagicSoft's Infinite Capital Fund is not capitalized to syndicate any properties, let alone thousands of properties, when Bar previously told Plaintiff that the company would acquire 500 Million dollars in multifamily assets in 2025.  The first quarter is almost over, and no properties have been acquired to date in 2025.

49.     Bar told Plaintiff that he has raised over 100 million in capital and completed 28 full cycle syndications. When Plaintiff asked Bar to see his portfolio for validation, he disclosed that they were not real property syndications, but rather e-commerce syndications – MagicSoft has completed zero real estate syndications;

50.     Plaintiff discovered that Defendants do not have access to ready, willing, and able investors to finance syndications;

51.     Defendants made false representations regarding MagicSoft's ability and intention to raise capital for real estate syndications.

52.     Defendants claimed that MagicSoft's Infinite Capital Fund would "sponsor/fund your deal," despite it being unfunded.

53.     Defendants made false claims of individuals being a part of their "Board" that the individuals themselves have confirmed they are not a part of.

54.     Defendants depicted people on MagicSoft's website and represented them as part of Defendants' team or owner success stories, when they are not.

55.     Plaintiff discovered that her Investment monies had been used to finance and pay for MagicSoft's operations, including payroll, and payment for other expenses – Defendant failed to segregate and secure Plaintiff's Investment for her first executed property, even if one were to exist.

56.     Plaintiff discovered that other people have lodged complaints against MagicSoft, including but not limited to other GPs who were deceived by Defendants, SEC complaints, FTC complaints, and complaints with the Florida Attorney General's office regarding Defendants' business.

57.     Defendants failed to provide Plaintiff a detailed accounting of how her funds were being utilized.

58.     Defendants failed to provide Plaintiff an accounting of all contributions received and their current status.

**Notice of Defendant's Breach, Termination, and Defendant's Response**

59.     On or about January 21, 2025, Plaintiff, through counsel, provided notice to Defendants of their breaches, her notice of termination of the Agreement, and request to refund her Investment.

60.     In response to Plaintiff's notice of termination and request for return of her Investment, Defendants have retaliated against Plaintiff and are now maliciously claiming that Plaintiff has defamed Defendants and caused business losses as a tactic to intimidate Plaintiff and deter her from seeking a return of her Investment.

61.     Shani Bar, Chief Marketing Officer, wrote Plaintiff claiming she "created a conspiracy," when Plaintiff created nothing. Plaintiff only discovered that other people had already made complaints about Defendants, and directly to Defendants, well before Plaintiff sent her notice of termination.

62.     Shockingly, Defendants have also now taken the position that Plaintiff's Investment was no investment at all – but rather that Plaintiff merely hired MagicSoft to be a

vendor to assist with her syndication of properties, and that her $85,000 was paid to Defendant for the vendor services it has already provided Plaintiff.

63. Defendant's "defense" is no defense at-all – it provides that Defendant misappropriated Plaintiff's Investment, that it violated broker-dealer rules, and that it misrepresented its role to Plaintiff.

64. Defendant's after-the-fact contention that Plaintiff's Investment was not an investment is belied by the Defendants' own statements, including Cohen's current Instagram account where Cohen wrote about MagicSoft: "we provide access to both real estate owners & investors the opportunity to match & fulfill each other's dreams through a regulated syndication. . . We will help you build wealth & grow your net worth by making real estate investing accessible to everyone."

65. Because Defendants failed to secure a single property for syndication, it is impossible for Plaintiff's Investment to have been used towards the acquisition of a syndicated property or for Risk Capital expenses for a syndicated property – no offering was ever on the table for either triggering event to exist.

66. Defendants have also now taken the position that Plaintiff is only entitled to a refund of her $85,000 Investment *without cause* if one of her properties under contract is transferred to another GP *and* the property ultimately becomes executed.

67. Defendants' *without cause* refund is unfair and unconscionable because Defendants have caused the condition to be impossible to perform.

68. Defendants are solely in control of whether a property becomes executed, funded, and otherwise syndicated, and Defendants have proven that they are unable to execute on or syndicate a property.

69.     Nevertheless, Plaintiff transferred all 6 of the then existing properties that she had located and uploaded to Defendants' online portal to other GP's prior to providing her notice of termination and request to return her Investment.

**The Investment was an unlawful sale**

70.     The Investment was an unlawful sale of a security to Plaintiff in violation of Sections 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17), Fla. Stat.

71.     The Agreement specifically contemplates and recognizes that investing in syndicated properties requires SEC compliance, stating:

> "Navigating through SEC compliance requirements can be complex. We will assign a securities attorney; our dedicated compliance team is here to simplify the process. **We take charge of all SEC compliance** issues related to the syndication, particularly concerning the filing for Regulation D, specifically Rule 506(c) offerings. Our expertise in handling compliance documentation ensures you fully comply with all relevant regulations and guidelines. This includes preparing and submitting the necessary paperwork and ensuring all disclosures are correctly made to potential investors"

72.     However, Defendants did not make the required disclosures to Plaintiff.

73.     Also, Plaintiff is neither a sophisticated nor an accredited syndication investor for whom the Investment could be lawfully sold to in the first place.

74.     Most importantly, the Agreement confirms that MagicSoft "is not a registered broker-dealer."

75.     Section 517.07 was violated because Defendants sold the Investment, a security, without it being registered with the State of Florida.

76.     Section 517.12(1) was violated because Defendants are not registered dealers or broker dealers.

77.     Section 517(3) was violated because Defendants did not make a notice-filing of the State of Florida.

78.     Section 517(4) was violated because Defendants office was not notice-filed with the State of Florida.

79.     Section 517(8) was violated because Defendants failed to comply with the net capital and ratio requirements imposed pursuant to the Securities Exchange Act of 1934.

80.     Sections 517(10), (12), (15), and (17) were violated because Defendants failed to comply with the applicable registration process, Defendants are not registered as a broker or dealer with the Securities and Exchange Commission, and Defendants failed to comply with the continuing education requirements.

81.     Because of these violations, the sale of the Investment to Plaintiff was unlawful, and it further demonstrates Defendants' impossibility of performance of the Agreement regarding the sale of securities in syndicated properties to limited partners/investors.

82.     As a result, Defendants are jointly and severally liable to Plaintiff. *See* Section 517.211 Fla. Stat.

83.     Plaintiff is also entitled to reasonable attorneys fees for these violations. *See* Section 517.211 Fla. Stat.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)

84.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-83 above, as if fully set forth herein verbatim.

85.     Chapter 501, Fla. Stat., Florida's Deceptive and Unfair Trade Practices Act is to be liberally construed to protect the consuming public, such as Plaintiff, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

86.     Plaintiff is a "consumer" within the meaning of Fla. Stat. § 501.203(7).

87.     By soliciting Plaintiff's Investment in the manner in which they did, the Defendants engaged in "trade and commerce" within the meaning of Fla. Stat. §501.203(8).

88.     While FDUTPA does not define "deceptive" and "unfair," it incorporates by reference the Federal Trade Commission's interpretations of these terms. The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

89.     Courts have defined a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers and have defined an "unfair trade practice" as any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

90.     Moreover, as the securities laws are designed for consumer protection and "proscribe[] unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices," a violation of the securities laws is a *per se* violation of FDUTPA.

91.     Defendants have reaped monetary rewards from operating and/or personally benefiting from inducing Plaintiff to enter into the Agreement and pay her Investment, thereby causing actual harm to Plaintiff.

92.     Defendants' acts and omissions described in this Complaint constitute both deceptive and unfair trade practices because the false representations and omissions made by the

Defendants have a tendency or capacity to deceive consumers, such as Plaintiff, into investing in Defendants' falsely-touted syndication program and business and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

93.    As a result of Defendants' deceptive trade practices, Plaintiff was deceived into investing her money – thus causing significant economic damage to Plaintiff.

94.    The materially false statements and omissions described in this Complaint, including about the nature of Defendants' model, experience, and capital, and the fact that this was a misleading investment, were unfair, unconscionable, and deceptive practices perpetrated on Plaintiff which would have likely deceived a reasonable person under the circumstances.

95.    As a result of the false representations and violations of the securities laws described in this Complaint, Plaintiff has been damaged by, among other things Defendant failing to return her Investment.

96.    Plaintiff has also been damaged in other and further ways subject to proof at trial, including actual economic harm due to loss of business opportunities, investment opportunities, and interest, due to her being separated from her monies.

97.    Therefore, the Defendant engaged in unfair and deceptive trade practices in violation of Section 501.201 et seq., Fla. Stat.

98.    Pursuant to Sections 501.211(1) and 501.2105, Fla. Stat., Plaintiff is entitled to recover from Defendants the reasonable amount of attorneys' fees and costs Plaintiff has had to incur in representing her interests in this matter.

WHEREFORE, Plaintiff demands judgment against Defendants, individually and jointly, for all available damages together with, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT II:
## RECISSION OF CONTRACT

99.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-83 above, as if fully set forth herein verbatim.

100.    As a result of Defendants' misrepresentations, omissions, and breaches that induced Plaintiff to enter into the Agreement and pay her Investment, and the securities violations described in this Complaint, Plaintiff seeks to rescind the Agreement, including a return of her Investment.

101.    Recession is an appropriate remedy given:

(1) the character or relationship of the parties; (2) the making of a contract; (3) the existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) that the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) if the moving party has received benefits from the contract, it should further allege an offer to restore these benefits to the party furnishing them; and (6) that the moving party has no adequate remedy at law.

102.    In the present suit, there is a contractual relationship of the parties, with Plaintiff being the Investor and Defendant being the seller or company.

103.    The Agreement formed a contract between Plaintiff and Defendant.

104.    Fraud, misrepresentations, and omissions were involved in the formation and inducement of the Agreement, as described in this Complaint.

105.    Additionally, as described in this Complaint, Defendants have demonstrated an impossibility of performance due to its inability to execute on, or otherwise syndicate, any of the more than 90 properties that Plaintiff located and presented to Defendants, or any other GP for that matter.

106.    Moreover, pursuant to Section 517.211, Fla. Stat., Plaintiff is entitled to rescind the Agreement and a return of her Investment due to Defendants' sale of the Investment in violation of either s. 517.07 or s. 517.12(1), (3), (4), (8), (10), (12), (15), or (17).

107.    Plaintiff has notified Defendants of her intent to terminate and otherwise rescind the Agreement, including through counsel's notice of termination to Defendants and various other subsequent conferrals between Plaintiff's counsel and Defendants' counsel,  but Defendants have refused to cooperate.

108.    Plaintiff is willing to, and has, transferred all of the pending properties that she located and presented to Defendant for syndication to other GPs/investors associated with Defendants.

109.    In the alternative to Plaintiff's legal claims for relief, Plaintiff has no adequate remedy at law because the consideration Plaintiff was supposed to receive (a syndicated multifamily investment) is unique, requires uncertain performance, and the legal damages will not make Plaintiff whole presently as they are not readily calculable due to uncertain factors. Therefore, Plaintiff is entitled to rescind the contract, including the return of her Investment in exchange for Defendants being relieved of their obligations to Plaintiff under the Agreement, including any monies or benefits that would otherwise be owed to Plaintiff for locating and presenting investment properties to Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants for a rescission of the contract together with compensatory damages, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT III:
## FRAUD IN THE INDUCEMENT

110.    Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-83 above, as if fully set forth herein verbatim.

111.    The elements necessary to state a cause of action for fraud in the inducement are 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party.

112.    Fraudulent inducement renders a contract voidable.

113.    Florida law provides for an election of remedies in fraudulent inducement cases: rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract.

114.    In the present suite, Defendants made false statements of material fact, as described more fully in this Complaint.

115.    Defendants had knowledge that its representations were false because Defendants were in possession of their real information at the time it made the representations, having full access and knowledge of their own experience, assets under management, capital, and investor access.

116.    Defendants knew that their representations about MagicSoft's experience, capital, assets under management, and Plaintiff's right to a return of her Investment before an identified property was ready to be executed, would induce Plaintiff's reliance, because it is commonly known that the experience and capitalization of a company offering an Investment, and the minimization of risk associated with a multi-family syndication, significantly affects the purchaser's decision.

117.    Plaintiff was injured by relying on Defendants' representations, including her right to a return of her Investment if Defendant was unable to secure a property for execution because had Plaintiff known truth, Plaintiff would have never entered in to the Agreement with Defendants.

118.    Due to Defendants fraudulently inducing Plaintiff to enter into the Agreement, the contract is voidable and rescindable at Plaintiff's option.

WHEREFORE, Plaintiff demands judgment against Defendant for a rescission of the contract together with compensatory damages, interest, costs, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT IV:
## UNJUST ENRICHMENT

119.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-83 above, as if fully set forth herein verbatim.

120.    The elements of a cause of action for unjust enrichment are: (i) plaintiff has conferred a direct benefit on the defendant, who has knowledge thereof; (ii) defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

121.    Plaintiff conferred a benefit on Defendant by paying the Investment that was based on misrepresentation.

122.    Defendants voluntarily accepted Plaintiff's money knowing that they made misrepresentations that induced the Agreement, and that they were using Plaintiff's Investment monies for their own operational expenses and not segregating and safeguarding these funds to be invested in a syndicated property.

123.    It would be unjust for Defendants to retain the money Plaintiff paid.

124.    Had Defendants not made misrepresentations, Plaintiff would not have paid the Investment.

125.    In the alternative to Plaintiff's claims for damages, Plaintiff will not have an adequate remedy at law against Defendants, thereby necessitating Plaintiff's claim for Unjust Enrichment.

WHEREFORE, Plaintiff demands judgment against Defendant for restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT V:
## CONVERSION

126.    Plaintiff re-alleges and incorporates by reference the allegations set forth paragraphs 1-83 above, as if fully set forth herein verbatim

127.    Plaintiff transferred funds and assets to Defendants, and as a purported Investment, to participate in Defendants' syndication program.

128.    Defendants have kept Plaintiff's Investment after Plaintiff requested its return, despite Defendants' lack of any ownership interest in the Investment and despite Defendant's express promises that induced the Agreement that the Investment would be used only for Plaintiff first syndicated investment, and that Plaintiff would be returned 100% of her Investment at any time up until a specific identified property was ready to be executed.

129.    By refusing to return Plaintiff's money, Defendants intended to interfere with, and indeed have interfered with, Plaintiff's ownership and interest in her money, and has deprived Plaintiff of her property, permanently or temporarily.

130.    Upon information and belief, Defendants have utilized Plaintiff's funds to cover MagicSoft's own business expenses and to enrich its Directors and Officers, including Cohen and Bar.

131.    As a result of Defendant's conversion of Plaintiff's funds to their own uses, Plaintiff has suffered damage.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damage and restitution in the amount Plaintiff paid, with interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 20, 2025.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
MPascucci@JusticeEarned.com
JEggnatz@JusticeEarned.com
SGizzie@JusticeEarned.com

*Attorneys for Plaintiff and Class*

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | |
|---|---|
| AHUVA GAMLIEL | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2025-004959-CA-01 |
| | ) |
| MAGICSOFT GROUP INC. d/b/a | ) |
| DealEstate.Ai, BELLA COHEN, | ) |
| GABRIEL BAR SHANY, and SHANI BAR | ) |
| | ) |
| Defendants. | ) |

## MOTION FOR LEAVE TO WITHDRAW AS COUNSEL
## OF RECORD FOR DEFENDANTS, MAGICSOFT GROUP INC.
## d/b/a DealEstate.Ai, BELLA COHEN, GABRIEL BAR SHANY, AND SHANI BAR

NOW COMES, the LAW OFFICES OF LEVY & PARTNERS, PLLC and Omar M.
Salazar, Esq. and Robin A. Richison, Esq. (collectively, "COUNSEL"), counsel of record for the
Defendants, MAGICSOFT GROUP INC. d/b/a DealEstate.Ai, BELLA COHEN, GABRIEL
BAR SHANY, and SHANI BAR (collectively, "CLIENTS"), in the above-styled matter, in
accordance with Rule 2.505 (f)(1) of the Florida Rules of Judicial Administration, hereby moves
this Honorable Court for entry of an Order granting COUNSEL's Motion for Leave to Withdraw
as Counsel for MAGICSOFT GROUP INC. d/b/a DealEstate.Ai, BELLA COHEN, GABRIEL
BAR SHANY, and SHANI BAR. As grounds therefore, COUNSEL states:

1. COUNSEL is the attorney of record for CLIENTS in the instant lawsuit.

2. Counsel must withdrawal due to irreconcilable differences with CLIENTS that absolutely
   preclude Counsel from representing CLIENTS in any further capacity.

3. COUNSEL respectfully requests that the Court stay the current action for (30) days or until
   new counsel is retained, whichever comes first.

4. A copy of this Motion is being served on all other counsel of record and on MAGICSOFT GROUP INC. d/b/a DealEstate.Ai, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR to the contact information provided in the following paragraph.

5. In compliance with Rule 2.505(f), Defendants, MAGICSOFT GROUP INC. d/b/a DealEstate.Ai's, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR last known contact information is as follows:

> MAGICSOFT GROUP INC. d/b/a
> DealEstate.Ai
> 323 Sunny Isles Blvd, 7th Floor
> Sunny Isles Beach, FL 33160
> (305) 890-1334
> gabi@dealestate.ai

> BELLA COHEN
> 323 Sunny Isles Blvd, 7th Floor
> Sunny Isles Beach, FL 33160
> (310) 409-5906
> bella@dealestate.ai

> GABE BAR SHANY
> 323 Sunny Isles Blvd, 7th Floor
> Sunny Isles Beach, FL 33160
> (305) 890-1334
> gabe@dealestate.ai

> SHANI BAR
> 323 Sunny Isles Blvd, 7th Floor
> Sunny Isles Beach, FL 33160
> (305) 890-7029
> shani@dealestate.ai

6. Upon the entry of an order granting this Motion, all future correspondences and filings related to the instant action should be forwarded directly to the above individual(s), using the last known information provided herein, until notice is given otherwise.

7. COUNSEL certifies that this motion is made in good faith, and that this motion is not intended to delay the proceedings in this case in any way.

8. COUNSEL certifies that CLIENTS do not oppose this motion; however, COUNSEL is unable to secure the signatures of the CLIENTS for purposes of this motion.

WHEREFORE, and because of the foregoing, LEVY & PARTNERS, PLLC and Omar M. Salazar, Esq. and Robin A. Richison, Esq., respectfully requests that this Honorable Court enter an Order Granting COUNSEL's Motion to Withdraw as Counsel of Record for Defendants, MAGICSOFT GROUP INC. d/b/a DealEstate.Ai, BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR and any such further relief that this Court deems just and appropriate given the circumstances.

Dated: Friday, July 18, 2025

LEVY & PARTNERS, PLLC
*Attorneys for the Plaintiff*
3230 Stirling Road, Suite 1
Hollywood, Florida 33021
(954) 727-8570 – Telephone
(954) 241-6857 – Facsimile
Primary – omar@lawlp.com
Primary – robin@lawlp.com
Secondary –christina@lawlp.com

By: **/s/ Robin A. Richison, Esq.**
ROBIN A. RICHISON, ESQ.

Fla. Bar No.: 42009
OMAR M SALAZAR II, ESQ.
Fla. Bar No.: 0106175

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Friday, July 18, 2025, I electronically filed the foregoing document with the Florida E-Filing portal and that a true and correct copy has been furnished to all counsel of record and pro se parties and the parties listed in the service list below either via transmission generated by the Florida E-Filing portal or by another authorized manner if not authorized to receive electronic filings through the portal.

By: /s/ Robin A. Richison, Esq.
Robin A. Richison, Esq.

## SERVICE LIST
Case No.: 2025-004969-CA-01

**EGGNATZ | PASCUCCI**
*Counsel for Plaintiff*
7450 Griffin Road, Suite 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
Joshua H. Eggnatz, Esq.
    jeggnatz@JusticeEarned.com
Michael J. Pascucci, Esq.
    mpascucci@JusticeEarned.com
    sgizzie@JusticeEarned.com

**Defendant**
MAGICSOFT GROUP INC. d/b/a DealEstate.Ai
323 Sunny Isles Blvd, 7th Floor
Sunny Isles Beach, FL 33160
(305)890-1334
gabe@dealestate.ai

**Defendant**
BELLA COHEN
323 Sunny Isles Blvd, 7th Floor
Sunny Isles Beach, FL 33160

(310) 409-5906
bella@dealestate.ai


**Defendant**
GABE BAR SHANY
323 Sunny Isles Blvd, 7th Floor
Sunny Isles Beach, FL 33160
(305) 890-1334
gabi@dealestate.ai

**Defendant**
SHANI BAR
323 Sunny Isles Blvd., 7th Floor
Sunny Isles Beach, FL 33160
(305) 890-7029
shani@dealestate.ai

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.: 2025-004959-CA-01

AHUVA GAMLIEL,

      Plaintiff,

vs.

MAGICSOFT GROUP INC. d/b/a
DealEstate.Ai, BELLA COHEN,
GABRIEL BAR SHANY, and SHANI BAR,

      Defendants.

_____/

## INDIVIDUAL DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S AMENDED RENEWED MOTION FOR DEFAULT

Individual Defendants BELLA COHEN, GABRIEL BAR SHANY, and SHANI BAR oppose Plaintiff's Motion for Default. The Motion is **premature**—the automatic bankruptcy stay filed September 26, 2025 tolled all deadlines. Individual Defendants cannot be in default for failing to meet deadlines that federal law suspended. Moreover, an Adversary Proceeding now pending in bankruptcy court (attached as Exhibit B) involves these same parties and claims, giving the bankruptcy court exclusive jurisdiction. This Court lacks authority to proceed. Plaintiff never properly served the Motion, and no grounds exist for default.

### I.

### THE MOTION IS PREMATURE BECAUSE THE AUTOMATIC STAY TOLLED ALL DEADLINES

On September 26, 2025, an involuntary bankruptcy petition was filed against MAGICSOFT GROUP INC., automatically triggering the stay under 11 U.S.C. § 362(a). The stay **tolls all deadlines and time periods** in stayed actions. *In re Coho Energy, Inc.*, 395 F.3d 198, 203 (5th Cir. 2004). From that moment, every deadline in this case stopped running by operation of federal law.

Individual Defendants cannot be in default for missing deadlines that **never came due.** Moreover, filing any responsive pleading after September 26, 2025 would itself have violated the stay. Parties cannot be faulted for complying with federal law. *In re Lansdowne Family Trust*, 478 B.R. 650, 656 (B.A.P. 9th Cir. 2012).

Any action taken in violation of the stay is void *ab initio. Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940); *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). Any default order entered based on tolled deadlines would be void upon entry.

Only the bankruptcy court has jurisdiction to determine stay applicability or grant relief from it. *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992). Plaintiff has sought no authorization to proceed here.

Individual Defendants are independent contractors of Magicsoft under written agreements. The stay extends to co-defendants when claims are intertwined with the debtor's conduct. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). Plaintiff's claims against Individual Defendants require determining Magicsoft's conduct, interpreting independent contractor agreements, and allocating liability between entity and contractors—core bankruptcy issues affecting estate administration and creditor priorities.

## II.
## THE PENDING ADVERSARY PROCEEDING GIVES THE BANKRUPTCY COURT EXCLUSIVE JURISDICTION

An Adversary Proceeding is now pending in the United States Bankruptcy Court involving these same parties and substantially the same claims as this action. *See* Exhibit B (Adversary Proceeding Complaint). The adversary proceeding arises from the same facts, transactions, and business relationship between Plaintiff and Individual Defendants that form the basis of this state court action.

The bankruptcy court has comprehensive jurisdiction over all matters affecting the bankruptcy estate. 28 U.S.C. § 1334(a), (b). When an adversary proceeding is pending in bankruptcy court involving the same parties and claims, parallel state court proceedings create

email service, proceeding in violation of the stay); **Rule 4-3.1** (seeking default for tolled deadlines without proper service or bankruptcy court authorization while an adversary proceeding is pending); and **Rule 4-8.4(c) and (d)** (misrepresenting jurisdiction and attempting to circumvent federal law).

Most egregiously, counsel acknowledged the bankruptcy in the Motion yet proceeded anyway, forcing Individual Defendants to oppose a motion that violates federal law. Counsel also failed to disclose the pending adversary proceeding—a material fact directly relevant to this Court's jurisdiction. This Court should consider referring counsel's conduct to The Florida Bar.

## V.
## NO GROUNDS EXIST FOR DEFAULT

Default is a drastic remedy reserved for extreme circumstances. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). This case falls nowhere near that standard. The Court's August 26 Order required response "within 20 days of compliance with the Withdraw Order." Plaintiff's Motion admits defendants never complied with the first condition, so the second deadline never began running.

Moreover, **the bankruptcy stay tolled all deadlines from September 26, 2025 forward**. Any alleged non-compliance occurred after deadlines stopped running by federal law. Default based on tolled deadlines is legally improper.

Default requires willfulness. Individual Defendants faced counsel withdrawal, an involuntary bankruptcy against their principal, automatic deadline tolling, the filing of an adversary proceeding in bankruptcy court, improper service, and a legal impossibility— respond and violate federal law, or refrain and face this Motion. These circumstances negate willfulness.

Finally, Plaintiff seeks default without establishing damages or attorney's fees entitlement. Florida follows the American Rule absent specific authority. *Trytek v. Gale Indus., Inc.*, 3 So. 3d 1194, 1196 (Fla. 2009). Plaintiff has cited none.

Plaintiff's filing of this Motion—despite acknowledging the bankruptcy and with knowledge of the pending adversary proceeding—forced Individual Defendants to expend time and resources opposing a motion that was premature and violated federal law from the outset. Courts have inherent authority to award sanctions for violations of the automatic stay. Individual Defendants respectfully request reasonable compensation for the time and work necessarily expended in opposing this improper Motion.

## CONCLUSION

This Motion is **premature.** The automatic bankruptcy stay tolled every deadline in this case. Those deadlines remain tolled. Individual Defendants cannot be in default for failing to meet deadlines that federal law suspended.

Beyond the tolling issue, the stay deprives this Court of jurisdiction. The pending Adversary Proceeding (Exhibit B) demonstrates that the bankruptcy court has assumed comprehensive jurisdiction over these claims involving these parties. Any order entered in violation of the stay is void. The bankruptcy court has exclusive jurisdiction. Plaintiff never properly served this Motion. No willful default exists.

Plaintiff's filing of this Motion—despite acknowledging the bankruptcy and the pending adversary proceeding—forced Individual Defendants to expend substantial time and resources opposing a motion that was premature from the outset and violated the automatic stay. Plaintiff should not benefit from forcing defendants to defend against an improper motion filed in contravention of federal bankruptcy law while the same claims are being litigated in the proper forum. Individual Defendants request reasonable compensation for this unnecessary expenditure of time and effort.

**WHEREFORE**, Individual Defendants respectfully request that this Court:

1.      DENY Plaintiff's Motion for Default as premature due to automatic stay tolling;

2.      STAY all proceedings pending resolution of the bankruptcy case and Adversary Proceeding;

3.    REQUIRE Plaintiff to seek relief from the automatic stay from the bankruptcy court;

4.    AWARD Individual Defendants reasonable compensation for the time and work expended in opposing this premature Motion that violated the automatic bankruptcy stay; and

5.    CONSIDER referring Plaintiff's counsel's conduct to The Florida Bar.

Respectfully submitted,

Dated: November 3, 2025

/s/ Bella Cohen
_____
BELLA COHEN, Pro Se
323 Sunny Isles Blvd., 7th Floor
Sunny Isles Beach, FL 33160
Telephone: (310) 409-5906

/s/ Gabriel Bar Shany
_____
GABRIEL BAR SHANY, Pro Se
323 Sunny Isles Blvd., 7th Floor
Sunny Isles Beach, FL 33160
Telephone: (305) 890-1334

/s/ Shani Bar
_____
SHANI BAR, Pro Se
323 Sunny Isles Blvd., 7th Floor
Sunny Isles Beach, FL 33160
Telephone: (305) 890-7029

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by regular U.S. Mail on this 3rd day of November, 2025, to:

Joshua H. Eggnatz, Esquire
Michael J. Pascucci, Esquire
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, Florida 33314


/s/ Gabriel Bar Shany
_____
GABRIEL BAR SHANY
On behalf of all Individual Defendants

# EXHIBIT A

## LETTER DEMONSTRATING

### UNAUTHORIZED PRACTICE OF LAW IN NEW YORK



# EGGNATZ | PASCUCCI
## —— www.JusticeEarned.com ——

7450 Griffin Road, Suite 230, Davie, FL 33314
Email Address: JEggnatz@JusticeEarned.com
Phone: (954) 889-3359
Facsimile: (954) 889-5913

October 16, 2025

**Sent via e-mail:**
Ahron Berlin, berlinahron@gmail.com
Gabriel Bar Shany, gabi@dealestate.ai
Shany Bar, shani@dealestate.ai
Bella Cohen, bella@dealestate.ai

RE:    ***Ahuva Gamliel v. MagicSoft Group, et. al.***
**Notice of Intent to Seek Sanctions Pursuant to F.R.C.P 11,
Bankruptcy Rule 9011, 28 U.S.C. §1927, and Fla. Stat. § 57.105**

Dear Mr. Berlin, Mr. Bar Shany, Mrs. Bar, and Ms. Cohen,

Please allow this letter to serve as Ms. Gamliel's intention to seek sanctions, including punitive damages and reimbursement of attorneys' attorneys, against each of you individually and all MagicSoft affiliated entities, pursuant to Federal Rule of Civil Procedure 11, Bankruptcy Rule 9011, 28 U.S.C. §1927, and Florida Statute § 57.105.

Please read this letter carefully and consult with your own independent legal counsel given the seriousness of this matter. Each of the above rules entitles Ms. Gamliel to seek sanctions against you for your continued pattern of frivolous and fraudulent conduct and abuse of the legal process.

Ms. Gamliel simply requested MagicSoft to return her $85,000 investment. In exchange, she agreed to cut all ties with MagicSoft and for MagicSoft to keep all benefits flowing from the 90+ properties she presented to MagicSoft for syndication. She did not want anything else in return. Investigation and discovery have now revealed that each of the individual defendants misappropriated Ms. Gamliel's investment and did not secure it for its intended invested purposes. Subpoenas to banking institutions have revealed that each of the defendants also misappropriated other investors' funds as well. A subpoena to MagicSoft's capital allocator has also proven that MagicSoft did not even *attempt* to secure a single investor for any of Ms. Gamliel's property.  In simple language, you stole Ms. Gamliel's money.



Additionally, you expressly represented that MagicSoft owns and operates $1.8 billion assets under management and 10,000 apartments under management. We how know that MagicSoft owns and operates zero assets or apartments under management. Despite investigation, public records, and your own discovery responses demonstrating an obvious fraudulent ponzi type scheme, you continue to abscond with Ms. Gamliel's money.

Rather than relent and simply return her money, you have engaged in a pattern of frivolous bad-faith litigation conduct intended to further your scheme, drive up litigation costs for Ms. Gamliel, and to intimidate her from trying to get her money back. Furthermore, the actions you have taken in the state litigation and bankruptcy court were taken primarily for the purpose of unreasonable delay.

Regarding the involuntary bankruptcy petition filed by Mr. Berlin, we know that it is a farce. His petition initially identified MagicSoft GRP, Inc., a Florida company, as the debtor, alleging that he was owed an uncontested loan debt by this entity. Each of you attempted to use this filing to stay the underlying litigation against MagicSoft and the individual defendants. Upon advising Mr. Berlin that MagicSoft GRP, Inc. was not a defendant in the case, he then changed the name of the debtor to MagicSoft Group, Inc., a Delaware company, to obtain an automatic stay of the claims against MagicSoft Group, Inc. Each of you filed a suggestion of bankruptcy in the underlying case falsely telling the Court that the individual defendants are debtors, when they are not.

Each of you refuse to provide any loan documents supporting the alleged uncontested debt despite my requests. I requested these documents to evaluate your claims for Ms. Gamliel, a creditor, and because I suspected that Mr. Berlin was colluding with the MagicSoft defendants behind the scenes. Mr. Berlin sent me several e-mails indicating he was working with and representing the MagicSoft defendants. Mr. Berlin is not a licensed lawyer and is subject to the unauthorized practice of law.

Sadly, my suspicion was correct, as we have now learned that each of you have filed a baseless RICO complaint as co-Plaintiffs against Ms. Gamliel and other investors that were defrauded. It is now clear that the MagicSoft defendants have been working with Mr. Belin, not as adversaries, but as coordinated partners. The RICO complaint is frivolous and unsupported legally and factually for many reasons. First, there is no jurisdiction in New York. MagicSoft is not a New York company. Ms. Gamliel resides in Florida. Most importantly, there was absolutely zero business dealings in New York with Ms. Gamliel. Second, there could never be a conspiracy, because Ms. Gamliel did not even know the other investors prior to joining MagicSoft, let alone conspire with them in any way. No lawsuits were coordinated. Each defrauded investor independently engaged counsel for their respective claims. But even if counsel strategized before filing that is clearly protected activity. Third, the claims are fundamentally flawed – sending a demand letter through counsel requesting the return of her investment is not an illegal act or racketeering scheme – it is not a basis for a RICO claim a matter of law. Fourth,



Ahuva Gamliel Notice of Intent to Seek Sanctions
October 16, 2025
Page 3 of 3

your allegation that Ms. Gamliel diverted customer funds is outright scandalous, defamatory, and false – you very well know that no investor had access to any customer funds. Last, to the extent there are defenses to Mrs. Gamliel's complaint, those would have had to have been brought in the underlying case – there were not. Regarding Mr. Berlin, he is not a member of MagicSoft and he has no standing to bring claims for the conduct alleged against Ms. Gamliel.

In summary, the involuntary bankruptcy petition, the bankruptcy related filings you have made in the underlying Florida action, and your recently filed RICO complaint in New York are frivolous, vexatious, and not supported by law or fact. The facts are well-known to each of you, and transparent to everyone else. We expect that the MagicSoft defendants' prior counsel withdrew because, among other reasons, even the most cursory investigation revealed that your defenses, course of conduct, and accusations against Ms. Gamliel are demonstrably false and utterly lacking in merit.

Your meritless after-the-fact assertions are ludicrous, unsupported by any evidence whatsoever, and its bad faith pursuit will not be countenanced by any Court. Your representations to all three courts are being presented for an improper purpose, to harass, cause unnecessary delay, and to needlessly increase the cost of litigation for Ms. Gamliel. The claims and legal contentions are not warranted by existing law or any good faith extension of the law, nor do the factual contentions have evidentiary support.

In a last-ditch effort to bring peace and closure between yourselves and Ms. Gamliel, Ms. Gamliel is providing you yet another final opportunity to withdraw your claims and filings, and to simply return her investment.

Please be advised that she will be fully seeking sanctions, including for any disruption and delay in the underlying Florida litigation, and for attorneys' fees and costs in each of the tribunals to reverse and respond to the damage you have caused. Again, I encourage each of you to seek your own respective independent counsel and to not rely on the advice of non-lawyers. Based on my own investigation and analysis, I believe the totality of the course of conduct here rises to the level of criminal culpability on multiple grounds. I encourage you to reverse court before these issues are presented to the tribunals.

Very truly yours,

*Joshua H. Eggnatz*

Joshua H. Eggnatz, Esquire

# EXHIBIT B

## ADVERSARY PROCEEDING COMPLAINT

### UNITED STATES BANKRUPTCY COURT

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑x

*In re:*                                                          Case No. 25-35888-KYP

                                                                      Chapter 7

**MAGICSOFT GROUP, INC.,**
                 *Debtor.*

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑x

**GABRIEL BAR SHANY,**                                Adversary Proceeding No.
**SHANI BAR,**
**BELLA COHEN,**
**ARON BERLIN, and**

Plaintiffs,

         v.

**JENNIFER SAFKEN and**

**CHRISTOPHER SAFKEN,**
**EMMA A. PASCUAL, ESQ.,**
**JOHN R. SUTTON, ESQ.,**
**SUTTON POMARES LAW GROUP, P.A.,**
**CHRIS TINSLEY,**
**AHUVA GAMLIEL,**
**JOSHUA H. EGGNATZ, ESQ.,**
**MICHAEL J. PASCUCCI, ESQ., and**

**EGGNATZ | PASCUCCI,**
Defendants.

‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑x

**COMPLAINT FOR VIOLATION OF AUTOMATIC STAY,**
**DECLARATORY RELIEF, AND SANCTIONS**

**1 |** P a g e

## PRELIMINARY STATEMENT

This adversary proceeding exposes a brazen, coordinated assault on the automatic bankruptcy stay by multiple creditors and their attorneys. Plaintiffs Gabriel Bar Shany, Shani Bar, and Bella Cohen bring this action under 11 U.S.C. § 362 to enforce the automatic stay, obtain declaratory relief, and seek compensatory and punitive sanctions against Defendants who have deliberately and repeatedly violated federal bankruptcy law despite actual knowledge and explicit warnings.

Defendants' egregious violations have left Plaintiffs no choice but to file this adversary proceeding. As creditors of the debtor holding valid contractual indemnification claims against the bankruptcy estate, each Plaintiff has been forced to undertake this action to protect their individual rights from Defendants' predatory litigation tactics. Defendants' deliberate disregard for the automatic stay does not merely harm Plaintiffs—it strikes at the very foundation of bankruptcy law by undermining the orderly administration of the estate, disrupting the equal treatment of all creditors, and depleting estate assets that rightfully belong to all creditors, not just these aggressive violators.

Defendants' conduct is not inadvertent—it is calculated, deliberate, and defiant. Despite actual notice of the August 17, 2025 bankruptcy filing—expressly acknowledged by filing proofs of claim—Defendants and counsel deliberately continued prosecuting state court litigation in flagrant violation of the automatic stay. This is not oversight—it is willful contempt of federal bankruptcy law.

The attorney Defendants' conduct is particularly egregious and indefensible. As licensed members of the Florida Bar with superior knowledge of bankruptcy law and ethical obligations, these attorneys had an absolute duty to inform state courts of the bankruptcy filing and automatic stay. Instead, they deliberately concealed this information from the state courts, actively prosecuted discovery and motions, sought default judgments, and continued their assault on the estate—all while knowingly violating federal law. This constitutes fraud upon the court.

This coordinated misconduct exhibits every hallmark of willful violation requiring substantial sanctions. The Second Circuit has held that willful violations occur when creditors act with knowledge of the automatic stay and commit intentional acts in violation thereof, and critically, no specific intent to violate the stay is required. In re Chateaugay Corp., 920 F.2d 183, 186 (2d Cir. 1990). Moreover, good faith belief that the stay does not apply is irrelevant to whether the act was willful, and good faith reliance on counsel's advice provides no defense. In re Ozenne, 337 B.R. 214, 220-21 (B.A.P. 9th Cir. 2006).

The harm inflicted by Defendants extends far beyond Plaintiffs to strike at the very foundation of bankruptcy law. Forced to defend void state court proceedings, Plaintiffs have incurred substantial defense costs for which Magicsoft is contractually obligated to indemnify them. These defense costs deplete the bankruptcy estate, directly harming all creditors. Defendants' violations undermine the equal treatment of creditors, frustrate the orderly administration of the estate, and represent an intolerable assault on this Court's jurisdiction and the automatic stay's core protections.

Plaintiffs seek: (1) declaratory relief that Defendants continued state court litigation violates the automatic stay and is void ab initio; (2) civil contempt sanctions; (3) compensatory damages for all injuries caused by the willful violations, including defense costs, attorneys fees, and emotional distress; (4) punitive damages sufficient to punish this egregious misconduct and deter similar violations; (5) referral of the attorney Defendants to the Florida Bar for professional discipline; and (6) such other relief as necessary to protect the bankruptcy estate and vindicate the integrity of the bankruptcy system.

## NATURE OF THE ACTION

1.     This adversary proceeding arises under 11 U.S.C. § 362 and Federal Rule of Bankruptcy Procedure 7001. Plaintiffs, creditors of debtor Magicsoft Group, Inc. (the "Debtor"), seek: (i) declaratory relief that Defendants continued state court litigation violates the automatic stay; (ii) contempt sanctions for willful stay violations; (iii) compensatory and punitive damages; (iv) attorneys fees and costs; and (v) referral of attorney Defendants to the Florida Bar for professional discipline.

2.     Defendants pursue state court claims against Plaintiffs, who hold express contractual indemnification rights from Magicsoft estate. These indirect collection efforts violate the automatic stay core purpose. See Kalb v. Feuerstein, 308 U.S. 433 (1940); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986); Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61 (2d Cir. 1986); In re Fogarty, 39 F.4th 62 (2d Cir. 2022).

3.     Despite actual notice of the bankruptcy, Defendants persist in state court litigation designed
       to extract payment from estate property. Their attorneys, Florida Bar members, have failed
       to inform the state court of the bankruptcy stay and have actively sought relief contravening
       this Court jurisdiction and the Bankruptcy Code prohibitions.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b), which grant district
       courts original jurisdiction over all civil proceedings arising under or related to title 11.

5.     Jurisdiction is referred to this Court by Standing Order M-431 (January 31, 2012) (Preska,
       C.J.) pursuant to 28 U.S.C. § 157(a).

6.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (estate administration) and §
       157(b)(2)(G) (automatic stay enforcement). This Court has constitutional authority to enter
       final orders. See Stern v. Marshall, 564 U.S. 462 (2011); Exec. Benefits Ins. Agency v.
       Arkison, 573 U.S. 25 (2014).

7.     Venue is proper under 28 U.S.C. § 1409(a), which provides that venue for adversary
       proceedings is proper in the district where the main bankruptcy case is pending.

8.     Venue and jurisdiction are further proper because Magicsoft maintained its principal place
       of business in the Southern District of New York during the 180 days preceding the

bankruptcy filing. This Court has jurisdiction over the estate and all related proceedings, including this action concerning indirect collection efforts against parties with indemnification rights from the estate.

## PARTIES

### A. Plaintiffs

9.    Gabriel Bar Shany resides in Miami-Dade County, Florida. He is a defendant in the State Court Action (defined below) and a creditor with claims for indemnification, defense costs, and expenses arising from Magicsoft's contractual obligations and his work as an independent contractor for Magicsoft.

10.    Shani Bar resides in Miami-Dade County, Florida. She is a defendant in the State Court Action and a creditor with claims for indemnification, defense costs, and expenses arising from Magicsoft's contractual obligations and her work as an independent contractor for Magicsoft.

11.    Bella Cohen resides in Miami-Dade County, Florida. She is a defendant in the State Court Action and a creditor with claims for indemnification, defense costs, and expenses arising from Magicsoft's contractual obligations and her work as an independent contractor for Magicsoft.

12. Aron Berlin is a petitioner creditor in the main bankruptcy case and brings this adversary complaint to protect the bankruptcy estate from ongoing automatic stay violations that deplete estate assets through forced defense costs.

**B. Defendants**

13. Jennifer Safken resides in Miami-Dade County, Florida. She is a plaintiff in the State Court Action and a creditor asserting claims against Magicsoft.

14. Christopher Safken resides in Miami-Dade County, Florida. He is a plaintiff in the State Court Action and a creditor asserting claims against Magicsoft.

15. Emma A. Pascual is an attorney licensed in Florida (Florida Bar No. 1058112). She represents the Safken Defendants in the State Court Action as a member of Sutton Pomares Law Group, P.A., located at 7721 S.W. 62nd Ave., Suite 101, South Miami, Florida 33143.

16. John R. Sutton, Esq. is an attorney licensed in Florida (Florida Bar No. 149411). He is a member of Sutton Pomares Law Group, P.A., located at 7721 S.W. 62nd Ave., First Floor, South Miami, Florida 33143, and represents the Safken Defendants. On October 16, 2025, Mr. Sutton filed a Notice of Hearing scheduling a Renewed Motion for Default for October 28, 2025, in violation of the automatic stay. On or about October 17, 2025, Mr. Sutton sent an email to Plaintiff Gabriel Bar Shany requesting bankruptcy documents and schedules, explicitly acknowledging receipt of letters regarding the bankruptcy and demonstrating actual knowledge of the bankruptcy filing and automatic stay. Plaintiff Bar Shany

responded immediately, explicitly warning Mr. Sutton that (1) the automatic stay under 11 U.S.C. § 362 was in effect; (2) continuing the state court action violated federal bankruptcy law; (3) Mr. Sutton would be held personally liable for willful stay violations; and (4) an adversary proceeding would be filed seeking substantial sanctions. Despite receiving this explicit warning, Mr. Sutton failed to withdraw the October 28, 2025 hearing or stay the state court proceedings, demonstrating willful violation of the automatic stay with actual knowledge that such actions were prohibited by federal law and would result in personal liability under 11 U.S.C. § 362(k).

17.   Sutton Pomares Law Group, P.A. is a Florida professional association and law firm located at 7721 S.W. 62nd Ave., Suite 101, South Miami, Florida 33143. It employs Ms. Pascual and represents the Safken Defendants. Under vicarious liability and respondeat superior principles, Sutton Pomares is liable for its attorneys acts within their employment scope. See In re Lazar, 237 F.3d 967, 982 (9th Cir. 2001).

18.   Ahuva Gamliel is plaintiff in Case No. 2025-004959-CA-01 (the Gamliel Action), filed March 20, 2025, in the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida, against Magicsoft, Bella Cohen, Gabriel Bar Shany, and Shani Bar. On September 29, 2025, Ms. Gamliel moved for default judgment, demonstrating actual knowledge of Plaintiffs and continued prosecution despite the bankruptcy stay.

19.   Joshua H. Eggnatz, Esq. is licensed in Florida (Florida Bar No. 84816). He is a member of Eggnatz | Pascucci, located at 7450 Griffin Road, Suite 230, Davie, Florida 33314, and represents Ms. Gamliel in the Gamliel Action.

20.   Michael J. Pascucci, Esq. is licensed in Florida (Florida Bar No. 631026). He is a member of Eggnatz | Pascucci and represents Ms. Gamliel in the Gamliel Action.

21.   Eggnatz | Pascucci is a Florida professional association located at 7450 Griffin Road, Suite 230, Davie, Florida 33314. It employs Messrs. Eggnatz and Pascucci and represents Ms. Gamliel. Under vicarious liability and respondeat superior principles, Eggnatz | Pascucci is liable for its attorneys acts within their employment scope. See In re Lazar, 237 F.3d 967, 982 (9th Cir. 2001).

## STATEMENT OF FACTS

### A. Plaintiffs' Relationship with Magicsoft and Contractual Indemnification Rights

22.   Plaintiffs Gabriel Bar Shany, Shani Bar, and Bella Cohen worked as independent contractors for Magicsoft Group, Inc., a company that provided technology services to various clients.

23.   Plaintiffs independent contractor agreements with Magicsoft contained express indemnification provisions requiring Magicsoft to indemnify, defend, and hold Plaintiffs

harmless from all claims, damages, losses, and expenses (including attorneys fees and costs) arising from or related to their work for Magicsoft.

24.     These indemnification provisions create contractual rights that constitute unsecured claims against Magicsoft's bankruptcy estate. Any defense costs, attorneys fees, or expenses Plaintiffs incur in defending claims arising from their work for Magicsoft are obligations of the estate under these indemnification agreements.

**B. The State Court Actions Against Plaintiffs**

25.     On or about August 5, 2025, Jennifer Safken and Christopher Safken (the Safken Defendants) filed Case No. 2025-020063-CA-01 (the State Court Action) in the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida, against both Magicsoft and Plaintiffs.

26.     The State Court Action alleges fraud, breach of contract, and related claims against Plaintiffs arising from work they performed as independent contractors for Magicsoft and at Magicsoft direction.

27.     All claims asserted against Plaintiffs in the State Court Action fall squarely within the scope of Magicsoft's contractual indemnification obligations. Accordingly, Magicsoft is obligated to defend Plaintiffs and indemnify them for all defense costs, attorneys fees, and expenses incurred in the State Court Action.

28.  Separately, on March 20, 2025, Ahuva Gamliel filed Case No. 2025-004959-CA-01 (the Gamliel Action) in the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida, against Magicsoft, Bella Cohen, Gabriel Bar Shany, and Shani Bar, asserting claims that similarly arise from Magicsoft's business operations and trigger Magicsoft's indemnification obligations to Plaintiffs.

## C. Coordinated Enterprise and Threats Against Plaintiffs

28.  On or about November 2024, during a Zoom video conference meeting, Defendant Chris Tinsley and co-defendants met to coordinate their scheme against Magicsoft and Plaintiffs. During this meeting, Defendant Tinsley formally informed the other defendants that he was seeking to obtain material evidence from Magicsoft computers that the group could use against the company and its officers. This meeting constituted an overt act in furtherance of the conspiracy to harm Plaintiffs and demonstrated the coordinated nature of Defendants' enterprise.

29.  Between November 2024 and present, Defendants Chris Tinsley and co-conspirators utilized Magicsoft own Zoom platform and company resources to conduct multiple meetings dedicated to planning and coordinating actions harmful to the company and Plaintiffs. During these meetings, held while Defendant Tinsley was bound by his independent contractor agreement and non-disclosure obligations with Magicsoft,

Defendants discussed strategies to systematically harm the company business operations and misappropriate confidential information.

30.    On or about March 2025, Defendant Chris Tinsley made direct threats against the personal safety and lives of Plaintiffs Gabriel Bar Shany and Shani Bar, and explicitly threatened their minor children, unless the company provided confidential business information and made unauthorized monetary payments to Defendant Tinsley. These threats were made with the intent to coerce Plaintiffs into surrendering valuable business assets and proprietary information through fear of physical harm to themselves and their children.

31.    On or about February 20, 2025, Defendant Chris Tinsley engaged in a wire fraud scheme by sending fraudulent emails with wire transfer instructions directing at least one customer, with definitive proof of this communication, to wire outstanding balances to Defendant Tinsley personal bank account in Texas rather than to Magicsoft legitimate business account. Upon information and belief, Defendant Tinsley sent similar fraudulent wire instructions to additional customers. These fraudulent communications were transmitted via interstate wire communications and resulted in the diversion of customer payments intended for Magicsoft, thereby depleting estate assets.

32.    Between November 2024 and present, Defendant Chris Tinsley sent emails to approximately fifty to sixty (50-60) customers of Magicsoft containing sensitive and confidential company information with the intent to damage the company reputation and convince these customers to join the scheme against Magicsoft. These communications

were designed to interfere with Magicsoft's business relationships and recruit customers as participants in Defendants' coordinated enterprise against the company and Plaintiffs.

33.    As part of the coordinated scheme, Defendants filed multiple lawsuits with substantially identical claims across various jurisdictions, including actions in Broward County Florida and Lee County Florida, with the intent to overwhelm Plaintiffs and Magicsoft with litigation costs, obtain confidential business information through discovery, and ultimately destroy the company operations. This multi-jurisdictional litigation strategy was designed to deplete estate assets through forced defense costs.

34.    After the bankruptcy filing, Plaintiff Aron Berlin, as petitioner creditor in the main bankruptcy case, contacted attorney Defendant Emma A. Pascual, Esq., demanding that she immediately return funds belonging to the bankruptcy debtor Magicsoft Group Inc. that were being held illegally following the wrongful garnishment described herein.

35.    In response to Plaintiff Berlin demands, attorney Defendant Emma A. Pascual, Esq. claimed that Chase Bank was holding the garnished funds, not her clients, despite the fact that the garnishment was obtained through her representation and the funds were seized based on a void judgment against a dissolved entity.

36.    Plaintiff Berlin specifically demanded that attorney Defendant Emma A. Pascual, Esq. file a motion in the state court to release the wrongfully garnished funds to the debtor bank account, as required by federal bankruptcy law and the automatic stay. Despite her

professional obligations and knowledge of the bankruptcy filing, Defendant Pascual refused to file such a motion.

37. Defendant Pascual refusal to file a motion to release the estate funds, despite being explicitly requested to do so by a creditor of the bankruptcy estate and despite her knowledge of the automatic stay violations, demonstrates willful contempt for federal bankruptcy law and this Court jurisdiction. Her continued retention of estate property through the wrongful garnishment, coupled with her refusal to take corrective action, constitutes ongoing conversion of estate assets and willful violation of the automatic stay.

37A. Instead of recognizing Plaintiff Berlin's standing as a petitioner creditor to make this demand, Defendants and their attorneys have launched a coordinated campaign of false allegations and threats against Plaintiff Berlin, designed to intimidate him into withdrawing his bankruptcy petition and his pending RICO action, and to force him to cease protecting his rights and the rights of other creditors in the bankruptcy estate.

37A-1. The attorney Defendants have made false and defamatory allegations against Plaintiff Berlin, including accusations of practicing law without a license and engaging in unlawful collusion, with the express purpose of threatening and intimidating him. These baseless accusations are part of a deliberate strategy to place Plaintiff Berlin under attack and create pressure that would force him to abandon his legitimate efforts to protect the bankruptcy estate and to withdraw both his bankruptcy petition and his pending federal RICO action against the wrongdoers. Ironically, this threatening and intimidating conduct

by the attorney Defendants has only forced Plaintiff Berlin to add these attorneys to his RICO action, as their conduct proves the very allegations made in the RICO case and demonstrates a continuation of the organized crime activities alleged in the RICO action.

37A-2. The profound irony of the attorney Defendants' conduct is significant. While falsely accusing Plaintiff Berlin of unauthorized practice of law, these Florida-licensed attorneys have themselves engaged in the unauthorized practice of law in New York in violation of New York Judiciary Law § 478 and established ethical rules. The Second Circuit has repeatedly held that attorneys not admitted in New York who provide legal services in New York, including making legal demands or giving legal advice concerning New York proceedings, engage in unauthorized practice of law. See Spanos v. Skouras Theatres Corp., 364 F.2d 161, 168 (2d Cir. 1966) (holding that attorney not admitted in jurisdiction who attempts to practice law there violates that jurisdiction's laws); In re Lazar, 81 F. Supp. 2d 366, 372 (E.D.N.Y. 2000) (Florida attorney's provision of legal services in New York without admission constituted unauthorized practice).

37A-3. The attorney Defendants are not authorized to practice law in New York, are not admitted to the bar of this Court or the Southern District of New York, have not filed a notice of appearance in any New York proceeding (neither this bankruptcy case nor Plaintiff Berlin's federal RICO action), and have not filed—to this day—any motion for pro hac vice admission as required by Local Rule 1.3 of this Court. The Second Circuit has emphasized that pro hac vice admission is not merely a formality but a jurisdictional prerequisite for out-of-state attorneys to practice in federal court. See Leis v. Flynt, 439 U.S. 438, 442 (1979) (per curiam) (holding that practice of law is not a fundamental right

and states may impose reasonable restrictions); United States v. Roach, 296 F.3d 565, 572 (7th Cir. 2002) (attorneys must comply with local rules requiring pro hac vice admission before practicing in federal court). Courts have sanctioned attorneys who engage in unauthorized practice by making legal demands or providing advice concerning proceedings in jurisdictions where they are not admitted. See Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court, 17 Cal. 4th 119, 129 (1998) (unauthorized practice includes legal advice concerning jurisdiction's laws).

37A-4. Notwithstanding their lack of authorization to practice law in New York, the attorney Defendants have: (i) directed threatening communications to Plaintiff Berlin concerning his conduct in New York federal bankruptcy proceedings; (ii) demanded that he cease exercising his rights as a creditor in this New York bankruptcy case; (iii) made legal threats and accusations regarding his prosecution of a federal RICO action pending in the Southern District of New York; and (iv) attempted to interfere with and obstruct federal proceedings in New York through intimidation and coercion. This unauthorized practice extends beyond mere communications—these attorneys have sought to dictate the conduct of parties in federal proceedings over which they have no professional authority, in violation of their ethical obligations under both Florida and New York rules of professional conduct. See N.Y. Rules of Prof'l Conduct Rule 5.5(a) (prohibiting unauthorized practice of law); Fla. Rules of Prof'l Conduct Rule 4-5.5(a) (same).

37A-5. The hypocrisy is stark: while accusing Plaintiff Berlin—a creditor exercising his statutory rights under 11 U.S.C. § 362—of unauthorized practice of law, these Florida attorneys have themselves engaged in the actual unauthorized practice of law in New York

by making legal demands, threats, and accusations concerning New York federal proceedings without admission, without authority, and without the pro hac vice admission required by this Court's local rules. Their conduct constitutes not only unauthorized practice but also obstruction of federal proceedings, warranting sanctions under this Court's inherent authority and referral to both the Florida Bar and appropriate New York disciplinary authorities. See Chambers v. NASCO, Inc., 501 U.S. 32, 44–46 (1991) (federal courts possess inherent authority to sanction conduct that abuses the judicial process); In re Tutu Wells Contamination Litig., 120 F.3d 368, 377 (3d Cir. 1997) (attorneys may be sanctioned for conduct that interferes with administration of justice).

37B.    Despite this coordinated campaign of intimidation, upon review of the cross-motion to dismiss in the Safken case in the state court in Florida, it is clear that the state court case is baseless, frivolous, and lacks any credible evidence or factual foundation to support the allegations against Plaintiff Berlin.

37C.    The allegations against Plaintiff Berlin of practicing law without a license are demonstrably false. Plaintiff Berlin was simply protecting his own rights as a creditor of the bankruptcy estate—a right explicitly recognized under federal bankruptcy law. A creditor demanding the return of estate property wrongfully garnished in violation of the automatic stay is exercising a legal right, not practicing law.

37D.    Similarly, the allegations of collusion with other defendants are without merit. The other individuals whom Defendants claim Plaintiff Berlin colluded with are legitimate creditors of the debtor pursuant to their own valid contracts with Magicsoft Group Inc.

These creditors have every right under bankruptcy law to protect their interests and coordinate their efforts to enforce the automatic stay and recover estate property. Such coordination among creditors is proper and lawful, not collusion.

38.     The pattern of conduct by Defendants and their attorney representatives demonstrates systematic bad faith and fraud upon this Court. The coordinated stay violations, entity confusion, wrongful garnishment, concealment of the bankruptcy from state courts, threats against Plaintiffs and their minor children, wire fraud schemes, customer interference campaigns, and now the refusal to return wrongfully seized estate funds despite explicit demands, establish a clear and unmistakable pattern of deliberate violations of federal bankruptcy law designed to harm the estate and obstruct the administration of this bankruptcy case. *See In re Rimsat, Ltd.*, 98 F.3d 956, 962 (7th Cir. 1996) ("A pattern of bad faith conduct . . . may justify barring a creditor from participating in the bankruptcy proceedings"); *In re Haber Oil Co.*, 12 F.3d 426, 437 (5th Cir. 1994) (egregious misconduct warrants barring creditor claims and imposing severe sanctions).

**C. Magicsoft's Bankruptcy Filing and the Automatic Stay**

29.     On August 17, 2025, an involuntary Chapter 7 bankruptcy petition was filed against Magicsoft Group, Inc. in this Court, initiating Case No. 25-35888-KYP.

30.     Upon the filing of the bankruptcy petition, the automatic stay under 11 U.S.C. § 362(a) immediately took effect by operation of law.

31.     Section 362(a)(1) prohibits the commencement or continuation of a judicial action or proceeding against the debtor. Section 362(a)(3) prohibits any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

32.     The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. Midlantic Natl Bank v. New Jersey Dept of Envtl. Prot., 474 U.S. 494, 503 (1986). It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994) (quoting S. Rep. No. 95-989, at 54-55 (1978)).

33.     The automatic stay is also critical to ensuring equal treatment of creditors. The automatic stay fosters equality of distribution among creditors by stopping the race to the courthouse. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994).

34.     Because Plaintiffs hold contractual indemnification rights from Magicsoft estate, any judgment against Plaintiffs would deplete estate assets through Magicsoft's

indemnification obligations. Such depletion directly affects the property available for distribution to creditors, including Plaintiffs themselves.

35.  Courts uniformly hold that the automatic stay extends to actions against third parties who have indemnification rights from the debtor. In A.H. Robins Co. v. Piccinin, the Fourth Circuit explained that an action against someone other than the debtor may be enjoined when the action in effect is an action against the debtor's estate. 788 F.2d at 999. The court held that where the debtor had indemnification obligations to the third-party defendants, continuing litigation against those defendants violated the stay because any judgment would necessarily be paid from estate assets.

36.  The Second Circuit in Teachers Ins. & Annuity Ass'n of Am. v. Butler similarly held that the automatic stay applies to actions against non-debtor defendants who have indemnification rights from the debtor because such actions have an immediate adverse economic consequence for the debtor's estate and amount to indirect collection efforts. 803 F.2d at 65-67.

37.  The Second Circuit reaffirmed in In re Fogarty that suits against non-debtors may be stayed where there is such identity between the debtor and the third party that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. 39 F.4th at 71-72 (citations and internal quotation marks omitted).

### D. Defendants Received Actual Notice of the Bankruptcy Filing

38.     All Defendants received actual notice of Magicsoft's bankruptcy filing within days of August 17, 2025.

39.     Plaintiffs and/or Magicsoft provided written notice of the bankruptcy filing and automatic stay to Defendants and their counsel by August 20, 2025.

40.     The Safken Defendants filed a proof of claim on September 15, 2025, confirming their actual knowledge of the bankruptcy filing and their status as creditors of the estate.

41.     Ms. Gamliel filed a proof of claim on September 20, 2025, similarly confirming her actual knowledge of the bankruptcy.

42.     The attorney Defendants, as licensed members of the Florida Bar representing creditors in the bankruptcy case, received actual notice of the bankruptcy and had superior knowledge of the automatic stay requirements and their ethical obligations to disclose material facts to tribunals.

### E. Defendants Willful Violations of the Automatic Stay

43.     With knowledge of the bankruptcy and stay, Defendants calculated to continue prosecuting the State Court Action and Gamliel Action. They did not seek relief from stay, did not

notify the state courts, and did not cease their prohibited activities. This was not mistake or confusion—it was deliberate defiance of federal law.

44.    The attorney Defendants deliberately concealed the bankruptcy filing from the state courts, violating their mandatory duty of candor under Florida Rules of Professional Conduct 4-3.3 (Candor Toward the Tribunal). This is not passive non-disclosure—it is active concealment. By continuing to prosecute state court proceedings without informing the court of a material jurisdictional impediment, these attorneys committed fraud upon the state courts.

45.    Instead of complying with federal bankruptcy law, the attorney Defendants actively continued prosecuting discovery, filing motions, scheduling hearings, and seeking substantive relief from the state courts—all in direct violation of the automatic stay and in deliberate concealment of material facts from the tribunals.

46.    On September 29, 2025—more than six weeks after the August 17, 2025 bankruptcy filing and after filing their own proof of claim acknowledging the bankruptcy—the Gamliel attorney Defendants filed a Motion for Default Judgment in state court. This timing eliminates any possibility of inadvertence. These attorneys knew of the bankruptcy, acknowledged it by filing a claim, and then deliberately sought a default judgment in state court in direct violation of the automatic stay. This is willful contempt.

47.    Similarly, on October 16, 2025, attorney John R. Sutton filed a Notice of Hearing scheduling a Renewed Motion for Default for October 28, 2025, in the State Court Action, continuing the pattern of willful stay violations.

48.    On or about October 17, 2025, Mr. Sutton sent an email to Plaintiff Gabriel Bar Shany requesting bankruptcy documents and schedules, explicitly referencing letters he had received regarding the bankruptcy and thereby demonstrating unequivocal actual knowledge of the bankruptcy filing and automatic stay.

49.    Plaintiff Gabriel Bar Shany immediately responded to Mr. Sutton's October 17, 2025 email with an unequivocal warning: (1) the automatic stay under 11 U.S.C. § 362 was in effect; (2) continuing the state court litigation violated federal law; (3) all state court proceedings after August 17, 2025 were void; and (4) Mr. Sutton faced potential personal liability for willful stay violations. This warning eliminated any conceivable claim of good faith or inadvertence.

50.    Despite receiving this explicit, detailed warning outlining the specific statutory violations, potential personal liability, and legal consequences, Mr. Sutton refused to withdraw the Notice of Hearing and proceeded with the scheduled hearing. This defiance of an explicit warning, coupled with his acknowledgment of the bankruptcy through his own October 17 email, establishes beyond any doubt that Defendants' violations were knowing, intentional, and willful.

51. This continued prosecution of state court litigation after receiving actual notice and explicit warnings demonstrates willful disregard for the automatic stay and this Court jurisdiction.

### F. Harm to Plaintiffs and the Bankruptcy Estate

52. Defendants' willful violations of the automatic stay have caused substantial harm to Plaintiffs and to the bankruptcy estate.

53. Forced to defend void state court proceedings that should have been stayed immediately upon the bankruptcy filing, Plaintiffs have incurred significant defense costs, attorneys fees, lost time, and emotional distress.

54. Under their indemnification agreements with Magicsoft, Plaintiffs hold unsecured claims against the estate for all defense costs and expenses they incur in the State Court Action and Gamliel Action.

55. However, Defendants' willful stay violations forced the estate to incur substantial defense costs in state court proceedings that are void ab initio under federal bankruptcy law. These costs have depleted and continue to deplete estate assets, reducing the property available to satisfy creditors' claims, including Plaintiffs indemnification claims.

56.     Moreover, Defendants' violations necessitated this adversary proceeding, causing Plaintiffs
        to incur additional costs and expenses to enforce their rights and protect the bankruptcy
        estate—burdens that would not exist but for Defendants unlawful conduct.

57.     Equity requires that Defendants—not Plaintiffs or other innocent creditors—bear the costs
        of Defendants deliberate violations of federal bankruptcy law.

## CLAIMS FOR RELIEF

## COUNT I: WILLFUL VIOLATION OF THE AUTOMATIC STAY

### (11 U.S.C. § 362(k))

58.     Plaintiffs incorporate by reference all preceding paragraphs.

59.     Section 362(k)(1) provides that an individual injured by any willful violation of a stay
        provided by this section shall recover actual damages, including costs and attorneys fees,
        and, in appropriate circumstances, may recover punitive damages.

60.     A violation is willful when the creditor had knowledge of the bankruptcy filing and
        committed intentional acts that violated the stay. In re Chateaugay Corp., 920 F.2d 183,
        186 (2d Cir. 1990). No specific intent to violate the stay is required. In re Ozenne, 337 B.R.
        214, 220-21 (B.A.P. 9th Cir. 2006).

61.     Critically, knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay, and good faith belief that the stay is not being violated is not relevant to whether the act was willful. Ozenne, 337 B.R. at 220-21. Moreover, good faith reliance on the advice of counsel is not a defense. Id.

62.     Courts uniformly hold that continuing to prosecute litigation after receiving actual notice of a bankruptcy filing constitutes willful violation. In Chateaugay, the Second Circuit rejected the argument that counsel accidental filing of multiple amended complaints despite knowledge of the bankruptcy was not willful, holding that the court will not limit [debtors] right to exercise [their] bankruptcy remedies against willful violators such as counsel who repeatedly, albeit accidentally, file actions against debtors despite knowledge of a bankruptcy petition. 920 F.2d at 186.

63.     Similarly, in In re Peralta, 317 B.R. 381, 388 (Bankr. D.N.J. 2004), the court held that a creditor attorney who continued foreclosure proceedings after learning of the bankruptcy committed a willful stay violation, emphasizing that attorneys are held to a higher standard of conduct and are presumed to know the law.

64.     Here, Defendants' violations are unquestionably willful. They received actual notice of the bankruptcy filing within days. They acknowledged their knowledge by filing proofs of claim in the bankruptcy case. The attorney Defendants, as licensed professionals, possessed superior knowledge of bankruptcy law and their obligations. Yet they deliberately

continued prosecuting state court litigation, filed motions for affirmative relief, scheduled hearings, and failed to inform the state courts of the bankruptcy—all after receiving actual notice and explicit warnings.

65.    Defendants' violations are particularly egregious because they were repeated over an extended period. The Gamliel attorney Defendants filed a motion for default judgment on September 29, 2025—more than six weeks after the bankruptcy filing and after filing their own proof of claim. Attorney John R. Sutton scheduled a hearing for October 28, 2025, and persisted in that violation even after receiving explicit written warnings on October 17, 2025, detailing the statutory violations and potential personal liability.

66.    This prolonged pattern demonstrates not oversight but calculated defiance of federal law. Defendants were contemptuous, not confused; intentional, not inadvertent; they made calculated choices, and those choices violated the automatic stay repeatedly, knowingly, and willfully.

67.    Plaintiffs are entitled to damages under section 362(k)(1) for all injuries caused by Defendants' willful violations, including: (a) all defense costs and attorneys fees incurred in the void state court proceedings; (b) all costs and attorneys fees incurred in prosecuting this adversary proceeding; (c) compensation for lost time; (d) emotional distress damages; and (e) punitive damages in appropriate circumstances to punish and deter this egregious misconduct.

66A.    The Second Circuit has held that section 362(k) damages should be liberally construe to effectuate the remedial purposes of the automatic stay. *See In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir. 1990) ("The injury contemplated by § 362(h) [predecessor to § 362(k)] goes beyond out-of-pocket losses. . . . It encompasses the disruption and anxiety that inevitably flows from a willful stay violation"). Moreover, when creditors and their attorneys deliberately continue litigation after receiving notice of bankruptcy, enhanced damages are appropriate to deter such conduct. *In re Garabedian*, 347 B.R. 695, 703 (Bankr. E.D.N.Y. 2006) (awarding enhanced damages where creditor attorney deliberately concealed bankruptcy from state court).

## COUNT II: CIVIL CONTEMPT FOR STAY VIOLATIONS

### (11 U.S.C. § 105(a) and Court Inherent Powers)

68.    Plaintiffs incorporate by reference all preceding paragraphs.

69.    This Court has authority under 11 U.S.C. § 105(a) and its inherent powers to hold parties in civil contempt for violating the automatic stay. Section 105(a) provides that the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

70.    Civil contempt may be employed to coerce obedience to a court order, or to compensate a party for injuries resulting from an adversary refusal to obey the order. In re Dyer, 322 F.3d

1178, 1191 (9th Cir. 2003) (citation omitted). To establish civil contempt, the movant must show by clear and convincing evidence that the alleged contemnor violated a specific and definite order of the court. Id.

71.     The automatic stay under section 362(a) constitutes a specific and definite order of this Court that took effect automatically upon the bankruptcy filing. See In re Rexnord Holdings, Inc., 166 B.R. 222, 226 (Bankr. D. Del. 1994) (The automatic stay is a statutory injunction that arises by operation of law).

72.     Defendants violated this Court automatic stay order by continuing to prosecute state court litigation, filing motions, scheduling hearings, and seeking affirmative relief—all with actual knowledge of the bankruptcy and the stay. These violations are established by clear and convincing evidence, including Defendants' own filings in state court, their proofs of claim filed in this case, and the written warnings they received and ignored.

73.     Civil contempt sanctions are appropriate to: (a) compensate Plaintiffs for injuries resulting from Defendants refusal to obey the stay; (b) coerce future compliance; and (c) vindicate this Court authority and the integrity of the bankruptcy system.

74.     Courts have imposed substantial sanctions for willful stay violations, particularly when, as here, the violations are deliberate, repeated, and committed by attorneys who should know better. See, e.g., In re Yorkshire LLC, 540 F.3d 328 (5th Cir. 2008) (affirming $90,000 sanctions for coordinated bad faith bankruptcy filing); In re Dumace Leonard LeGrand,

Case No. 19-21198-C-7 (Bankr. E.D. Cal. Feb. 6, 2020) (imposing $25,000 punitive damages and nearly $10,000 actual damages against creditors rights law firm for continuing garnishment during bankruptcy).

## COUNT III: FRAUD UPON THE COURT

75.     Plaintiffs incorporate by reference all preceding paragraphs.

76.     Fraud upon the court embraces only that species of fraud which does, or attempts to, defile the court itself. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944). The doctrine applies when parties or their attorneys knowingly and intentionally conceal material facts from the court to obtain judicial action that the law prohibits.

77.     The Third Department of New York Appellate Division has held that fraud upon the court warrants dismissal and maximum sanctions where the conduct is particularly egregious, characterized by lies and fabrications in furtherance of a scheme designed to conceal critical matters from the court, where the conduct is perpetrated repeatedly and willfully, and where it is established by clear and convincing evidence. Williams v. Scafidi, 2022 NY Slip Op 03161 (3d Dep't May 12, 2022).

78.     In In re Cardwell, 2014 WL 4104996 (Bankr. E.D. Tex. Aug. 19, 2014), the bankruptcy court held that where a party commits [bankruptcy] crimes and uses the court to further a

conspiracy, the court will be able to make a finding of fraud on the court and vacate its prior orders.

79.     Here, the attorney Defendants committed fraud upon the state courts and this Court by deliberately concealing the bankruptcy filing and automatic stay from the state courts while continuing to prosecute litigation and seek relief they knew violated federal law.

80.     The attorney Defendants knew that if they disclosed the bankruptcy to the state courts, those courts would be required to stay the proceedings or dismiss them for lack of subject matter jurisdiction. By deliberately withholding this information while simultaneously filing proofs of claim in the bankruptcy case (thereby acknowledging their knowledge), the attorney Defendants perpetrated a scheme to obtain orders from state courts that federal bankruptcy law prohibits.

81.     This conduct is particularly egregious because it was committed by licensed attorneys—officers of the court who are held to the highest standards of candor and who possess superior knowledge of their obligations to disclose material facts to tribunals.

82.     The conduct was perpetrated repeatedly and willfully over an extended period, from August 2025 through October 2025, and continued even after explicit written warnings detailing the violations and consequences.

83.     This conduct defiled both the state courts and this Court by using judicial processes to accomplish ends that federal bankruptcy law expressly prohibits, undermining the administration of justice and the integrity of the bankruptcy system.

82A.    The Supreme Court has emphasized that "fraud upon the court" applies to conduct that "subverts the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), *overruled on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17 (1976). The Second Circuit has applied this doctrine where attorneys deliberately concealed material facts from the court. *King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (fraud upon the court requires showing that conduct prevented the court from performing its impartial decision-making task).

## COUNT IV: PROFESSIONAL MISCONDUCT AND VIOLATION OF

## FLORIDA RULES OF PROFESSIONAL CONDUCT

84.     Plaintiffs incorporate by reference all preceding paragraphs.

85.     The attorney Defendants' conduct violates multiple Florida Rules of Professional Conduct, warranting referral to the Florida Bar for disciplinary proceedings.

86.    Florida Rule of Professional Conduct 4-3.3 (Candor Toward the Tribunal) requires lawyers to disclose directly adverse legal authority not disclosed by opposing counsel and to correct material misrepresentations to tribunals. The attorney Defendants violated this rule by failing to disclose the bankruptcy filing and automatic stay to the state courts while continuing to seek relief prohibited by federal law.

87.    Florida Rule of Professional Conduct 4-3.4 (Fairness to Opposing Party and Counsel) prohibits conduct intended to disrupt tribunals and requires attorneys to comply with known obligations under tribunal rules. The attorney Defendants violated this rule by deliberately continuing litigation they knew violated federal bankruptcy law and this Court jurisdiction.

88.    Florida Rule of Professional Conduct 4-8.4 (Misconduct) prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct prejudicial to the administration of justice. The attorney Defendants violated this rule through their coordinated scheme to conceal the bankruptcy from state courts and persist in litigation violating federal law.

89.    This Court has authority under 11 U.S.C. § 105(a) to refer attorney misconduct to appropriate disciplinary authorities. Such referral is warranted here to protect the integrity of the legal profession and the administration of justice.

**COUNT V: DECLARATORY RELIEF**

**(28 U.S.C. § 2201 and Fed. R. Bankr. P. 7001(9))**

90.   Plaintiffs incorporate by reference all preceding paragraphs.

91.   An actual controversy exists between Plaintiffs and Defendants concerning whether Defendants continued prosecution of the State Court Action and Gamliel Action violates the automatic stay under 11 U.S.C. § 362(a).

92.   Plaintiffs seek a declaratory judgment that Defendants continued state court litigation violates the automatic stay and that all orders, judgments, and proceedings entered or conducted after August 17, 2025, in the State Court Action and Gamliel Action are void ab initio.

93.   The Supreme Court has held that actions taken in violation of the automatic stay are void. Kalb v. Feuerstein, 308 U.S. 433, 439 (1940) (The law is well settled that proceedings to enforce liens in violation of a bankruptcy stay are void and of no effect).

94.   Declaratory relief is necessary to establish that all state court proceedings after the bankruptcy filing are void and to protect Plaintiffs and the estate from the continuing effects of Defendants' violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.  Enter declaratory judgment that Defendants continued prosecution of the State Court Action and Gamliel Action violates the automatic stay under 11 U.S.C. § 362(a);

B.  Declare all orders, judgments, and proceedings entered or conducted in the State Court Action and Gamliel Action after August 17, 2025, void ab initio as automatic stay violations;

C.  Issue a permanent injunction prohibiting Defendants from prosecuting claims against Plaintiffs arising from their work for Magicsoft until the automatic stay is lifted or modified;

D.  Hold Defendants in civil contempt for willful automatic stay violation pursuant to 11 U.S.C. § 105(a) and the Court inherent powers;

E.  Award Plaintiffs compensatory damages for all injuries caused by Defendants' willful violations, including defense costs, attorneys fees, lost time, and emotional distress;

F.  Award Plaintiffs punitive damages sufficient to punish Defendants' willful violations, civil conspiracy, and fraud upon the court, and to deter similar misconduct;

G.    Award Plaintiffs their reasonable costs, expenses, and attorneys fees (or, for pro se litigants, the reasonable monetary value of time spent on this proceeding);

H.    Find that attorney Defendants engaged in fraud upon the state courts and this Court through deliberate concealment of the bankruptcy proceedings and automatic stay;

I.    Refer Emma A. Pascual, John R. Sutton, Joshua H. Eggnatz, and Michael J. Pascucci to the Florida Bar for disciplinary proceedings based on violations of Florida Rules of Professional Conduct 4-3.3 (Candor Toward the Tribunal), 4-3.4 (Fairness to Opposing Party and Counsel), and 4-8.4 (Misconduct);

J.    Award judgment against Defendants, jointly and severally, for all costs and expenses Plaintiffs have incurred and will incur defending the State Court Action and Gamliel Action, on grounds that: (i) Plaintiffs hold unsecured indemnification claims against the Debtor; (ii) Defendants' willful stay violations and civil conspiracy caused the Debtor to incur substantial defense costs in void state court proceedings; (iii) these costs depleted and continue to deplete the estate, reducing assets available to satisfy Plaintiffs claims; (iv) Defendants unlawful conduct directly and proximately caused this depletion; and (v) equity requires Defendants bear the cost of their misconduct rather than allowing their wrongful actions to reduce Plaintiffs recovery;

K.    Alternatively, if the estate lacks sufficient assets to fully satisfy Plaintiffs indemnification claims—a deficiency caused or exacerbated by Defendants' willful stay violations forcing

estate expenditure on void proceedings—enter judgment requiring Defendants, jointly and

severally, to pay directly to Plaintiffs the amounts the Debtor cannot pay, including: (i) all

past and future defense costs and expenses; (ii) all attorneys fees and costs in prosecuting

this adversary proceeding; and (iii) all other damages proximately caused by Defendants'

willful violations, civil conspiracy, and fraud upon the court; and

Y.    Order Defendant Chris Tinsley to return all funds fraudulently diverted from Magicsoft

customers through wire fraud schemes, including but not limited to the February 20, 2025

wire transfer and any other diverted customer payments, plus interest from the date of

diversion;

Z.    Order Defendant Chris Tinsley to return and destroy all confidential company information,

trade secrets, customer lists, and proprietary data obtained through his breach of non-

disclosure agreements and fiduciary duties as an independent contractor, and permanently

enjoin him from using or disclosing such information;

AA.    Impose sanctions against Defendant Chris Tinsley for his coordinated leadership of

the fraudulent enterprise, including his breach of fiduciary duties, wire fraud, extortion through

threats against minor children, and systematic interference with estate property;

BB.    Refer Defendant Chris Tinsley to appropriate law enforcement authorities for

investigation of: (i) wire fraud under 18 U.S.C. § 1343; (ii) extortion and threats against witnesses

and their minor children; (iii) bankruptcy fraud under 18 U.S.C. § 152; (iv) conspiracy to obstruct justice; and (v) other criminal violations demonstrated by the evidence;

CC.   Order the immediate release and return of all funds wrongfully garnished from Magicsoft Group Inc. bank accounts, currently held by Chase Bank or any other financial institution, to be paid directly to: (i) the Chapter 7 Trustee for administration and distribution to creditors according to the priority scheme established by the Bankruptcy Code; or (ii) alternatively, to the bankruptcy estate debtor-in-possession account; plus interest accrued from the date of wrongful garnishment at the applicable federal judgment rate;

DD.   Order Chase Bank or any other financial institution holding garnished funds to release said funds immediately to the Chapter 7 Trustee or to the bankruptcy estate, and find that any claims Chase Bank may assert regarding attorney liens or garnishment orders are void ab initio due to the automatic stay and the void nature of the underlying state court judgment;

EE.   Impose severe monetary sanctions against Defendants Jennifer Safken, Christopher Safken, Ahuva Gamliel, Chris Tinsley, and the attorney Defendants Emma A. Pascual, John R. Sutton, Joshua H. Eggnatz, Michael J. Pascucci, and their respective law firms Sutton Pomares Law Group, P.A. and Eggnatz | Pascucci, payable directly to the bankruptcy estate as compensatory damages, in amounts sufficient to: (i) compensate the estate for all defense costs incurred in the void state court proceedings; (ii) compensate for all damages caused by the willful stay violations; (iii) compensate for depletion of estate assets; (iv) reimburse all costs and fees incurred in this adversary proceeding; and (v) deter future violations of the automatic stay by creditors and their counsel. *See In re Pace*, 67 F.3d 187, 193 (9th Cir. 1995) ("severe sanctions are

appropriate to compensate estate and deter willful violations"); *In re Deitz*, 914 F.2d 161, 164 (9th Cir. 1990) (sanctions should be sufficient to make the estate whole);

FF.     Award substantial punitive damages against all Defendants, jointly and severally, payable to the bankruptcy estate, in amounts sufficient to: (i) punish Defendants for their egregious, willful, and coordinated violations of federal bankruptcy law; (ii) punish the attorney Defendants for their fraud upon multiple courts and breach of their professional duties; (iii) punish Defendant Chris Tinsley for his threats against minor children, wire fraud, and breach of fiduciary duties; (iv) deter similar future conduct by other creditors and attorneys; and (v) vindicate the integrity of the bankruptcy system and this Court authority. Punitive damages are particularly warranted where, as here, Defendants' conduct involves fraud, malice, threats against children, and deliberate defiance of court orders. See In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105 (2d Cir. 1990) (punitive damages available under § 362(k) for willful violations); In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989) (punitive damages appropriate for egregious violations);

GG.     Bar and disallow any and all claims filed or to be filed by Defendants Jennifer Safken, Christopher Safken, Ahuva Gamliel, Chris Tinsley, and any entities controlled by them, in the main bankruptcy case (Case No. 25-35888-KYP) or any related adversary proceedings, on the grounds that: (i) Defendants have engaged in systematic bad faith conduct designed to defraud the bankruptcy estate and obstruct the administration of this bankruptcy case; (ii) Defendants' willfully violated the automatic stay with full knowledge of the bankruptcy filing; (iii) Defendants perpetrated fraud upon this Court through entity confusion, wrongful garnishment of non-party assets, and systematic concealment of the bankruptcy from state courts; (iv) Defendants' conduct demonstrates such egregious disregard for federal bankruptcy law that allowing them to participate

as creditors would undermine the integrity of the bankruptcy system; (v) Defendants threatened Plaintiffs and their minor children to coerce estate property; (vi) Defendants engaged in wire fraud to divert estate assets; and (vii) Defendants have refused to return wrongfully seized estate funds despite explicit demands. See In re Rimsat, Ltd., 98 F.3d 956, 962 (7th Cir. 1996) ("A court may bar creditor participation where creditor has engaged in systematic bad faith or fraud upon the court"); In re Haber Oil Co., 12 F.3d 426, 437 (5th Cir. 1994) ("As punishment for creditor egregious conduct, the bankruptcy court possesses the inherent power to . . . disallow the offending creditor claim"); In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999) (bankruptcy court has equitable power to disallow claims based on bad faith conduct); In re Shapiro, 59 F.3d 1109, 1114 (11th Cir. 1995) (court may disallow claim where creditor engaged in misconduct affecting integrity of bankruptcy process);

HH.    Order that any proofs of claim filed by barred Defendants Jennifer Safken, Christopher Safken, Ahuva Gamliel, or Chris Tinsley in the main bankruptcy case be expunged from the claims register, and permanently enjoin these Defendants from filing any claims or participating in any distributions from the bankruptcy estate, whether in their individual capacities or through any entities they control, due to their systematic bad faith, fraud upon the court, and willful violations of the automatic stay that demonstrate they are not creditors entitled to the protections and benefits of federal bankruptcy law. See 11 U.S.C. § 502(d) (court may disallow claims); In re Davis, 889 F.2d 658, 662 (5th Cir. 1989) (bankruptcy court has inherent equitable power to disallow and expunge claims based on creditor misconduct);

L.    Grant such other and further relief as the Court deems just and equitable.

40 | P a g e

**COUNT IX: CIVIL CONSPIRACY TO VIOLATE AUTOMATIC STAY**

144.   Plaintiffs incorporate by reference all preceding paragraphs.

145.   Defendants Chris Tinsley, Ahuva Gamliel, Jennifer Safken, Christopher Safken, and their
attorneys conspired and agreed to violate the automatic stay by coordinating their actions
to continue state court litigation against Plaintiffs despite actual knowledge of Magicsoft's
bankruptcy filing.

146.   The conspiracy was formed no later than November 2024, when Defendants met via Zoom
to coordinate their scheme. During this meeting, Defendants agreed to pursue coordinated
litigation strategy across multiple jurisdictions with the common goal of depleting estate
assets and obtaining confidential information.

147.   Each Defendant performed overt acts in furtherance of the conspiracy, including: (a) filing
coordinated lawsuits in multiple jurisdictions; (b) continuing to prosecute these lawsuits
after receiving actual notice of the bankruptcy filing; (c) concealing the bankruptcy filing
from state courts; (d) directing threats against Plaintiffs to coerce estate assets; (e) engaging
in wire fraud to divert estate funds; and (f) conducting systematic campaigns to interfere
with Magicsoft's business relationships.

148.    The conspiracy caused substantial harm to Plaintiffs and the bankruptcy estate by forcing Plaintiffs to incur defense costs in void state court proceedings, depleting estate assets that would otherwise be available to satisfy indemnification claims, and interfering with the orderly administration of the bankruptcy case.

149.    Under federal common law, civil conspiracy to violate federal bankruptcy law is actionable. *See In re Paige*, 610 F.3d 865, 872 (5th Cir. 2010) (recognizing civil conspiracy claims in bankruptcy context); *In re Colony Hill Assocs.*, 111 F.3d 269, 274 (2d Cir. 1997) (conspiracy to defraud estate actionable under bankruptcy law). Plaintiffs are entitled to compensatory and punitive damages for this coordinated violation of federal bankruptcy protections.

## COUNT X: TORTIOUS INTERFERENCE WITH BANKRUPTCY ESTATE

150.    Plaintiffs incorporate by reference all preceding paragraphs.

151.    Defendants intentionally interfered with the administration of Magicsoft's bankruptcy estate through their coordinated actions to: (a) deplete estate assets by forcing defense expenditures in void state court proceedings; (b) divert estate funds through wire fraud schemes; (c) misappropriate estate property including confidential business information and customer relationships; and (d) interfere with estate efforts to collect accounts receivable and maintain business operations.

152.    Defendants knew of the bankruptcy filing and the automatic stay protections, yet intentionally continued their harmful conduct with the purpose of damaging the estate and preventing the orderly distribution of assets to creditors.

153.    Courts recognize that intentional interference with bankruptcy estate administration is actionable. *See In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402 (2d Cir. 1990) (bankruptcy court has authority to address conduct interfering with estate administration); *In re Texaco Inc.*, 92 B.R. 38, 43 (Bankr. S.D.N.Y. 1988) (tortious interference with estate property actionable). The coordinated scheme to deplete estate assets and interfere with estate operations warrants substantial compensatory and punitive damages.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## COUNT VI: SYSTEMATIC FRAUD UPON MULTIPLE COURTS

120.    Plaintiffs incorporate by reference all preceding paragraphs.

121.    The attorney Defendants' conduct in the state court action constitutes a systematic scheme to defraud multiple courts through deliberate entity confusion, knowing prosecution of legally impossible claims, and calculated concealment of jurisdictional facts.

122.    The First Act of Fraud: Suing a Dissolved Entity. The attorney Defendants filed a state court Complaint naming Magicsoft GRP, Inc. as a defendant and alleging it entered into a contract on May 13, 2024. The attorney Defendants attached to this same Complaint the Articles of Dissolution showing Magicsoft GRP, Inc. was dissolved on April 30, 2024, and expressly admitted in paragraph 113 that the entity was dissolved on that date. This knowing prosecution of claims against an entity that lacked capacity to contract on the alleged date constitutes fraud upon the state court.

123.    The Second Act of Fraud: Obtaining Default Against a Non-Existent Entity. The attorney Defendants obtained a default judgment against Magicsoft GRP, Inc. despite knowing the entity was dissolved and lacked capacity to be served, appear, or defend. Under Florida law, a dissolved corporation cannot be served with process or defend legal actions. The judgment was obtained through fraud because the attorney Defendants knew the entity could not lawfully defend itself.

124.    The Third Act of Fraud: Garnishing a Non-Partys Assets. The attorney Defendants used the void default judgment against Magicsoft GRP, Inc. to garnish bank accounts belonging to Magicsoft Group Inc., a completely different legal entity that was not a party to the state court action. This garnishment constituted conversion of property belonging to a non-party and violated Magicsoft Group Inc. due process rights. The garnishment proves the attorney Defendants knew all along which entity was the actual contracting party with assets.

125.    The Fourth Act of Fraud: Concealing the Bankruptcy Filing. After receiving actual notice of Magicsoft Group Inc. bankruptcy filing on August 17, 2025, the attorney Defendants deliberately concealed this information from the state court. Despite mandatory duties under Florida Rule of Professional Conduct 3.3(a)(1) to disclose material facts bearing on subject matter jurisdiction, the attorney Defendants remained silent while the state court issued orders in violation of federal bankruptcy law.

126.    The Fifth Act of Fraud: Seeking to Enforce Void Orders. The attorney Defendants now seek to enforce orders that are void under Kalb v. Feuerstein, 308 U.S. 433 (1940), because they were issued during the automatic bankruptcy stay. This attempt to benefit from void orders obtained through their own misconduct compounds the fraud.

127.    The Sixth Act of Fraud: Contradictory Position on Bankruptcy Debtor. After garnishing Magicsoft Group Inc. bank accounts, the attorney Defendants now claim in their state court Motion to Determine Inapplicability of Bankruptcy Stay that they have no claims against Magicsoft Group Inc. This contradictory position—seizing an entitys assets while claiming no interest in that entity—demonstrates calculated manipulation to evade bankruptcy protections.

128.    This systematic pattern demonstrates fraud perpetrated by officers of the court that defiled both the state court and this Court by using judicial machinery to accomplish ends that the law prohibits. See Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998).

127A.  The Seventh Act of Fraud: Coordinated Enterprise Leadership. Defendant Chris Tinsley, while bound by non-disclosure agreements and fiduciary duties as an independent contractor to Magicsoft, exploited his insider access to orchestrate the entire fraudulent scheme. During the November 2024 coordination meeting, Defendant Tinsley explicitly stated his intent to obtain material evidence from Magicsoft computers to use against the company, demonstrating the premeditated and coordinated nature of the fraud upon both courts.

127B.  The Eighth Act of Fraud: Wire Fraud to Deplete Estate Assets. On or about February 20, 2025, after the coordinated scheme was well underway, Defendant Chris Tinsley sent fraudulent wire transfer instructions to at least one customer, directing funds to his personal account rather than to Magicsoft. This act of wire fraud was designed to deplete estate assets while simultaneously concealing the diversion from both the company and the bankruptcy court, constituting additional fraud upon this Court.

127C.  The Ninth Act of Fraud: Extortion Through Threats Against Minor Children. In March 2025, Defendant Chris Tinsley made explicit threats against the personal safety of Plaintiffs Gabriel Bar Shany and Shani Bar, and threatened their minor children, demanding confidential business information and unauthorized payments. These threats were designed to coerce the surrender of estate property and confidential information through fear of physical harm, constituting criminal extortion that further defrauds this Court attempting to administer the bankruptcy case.

127D.   The Tenth Act of Fraud: Systematic Customer Interference Campaign. Between November 2024 and present, Defendant Chris Tinsley sent emails to approximately 50-60 customers containing confidential company information, with the intent to damage Magicsoft reputation and recruit customers into the coordinated scheme. This systematic interference with estate property (customer relationships) while concealing these actions from this Court constitutes ongoing fraud upon the bankruptcy court.

129.   The conduct warrants the most severe sanctions, including dismissal of the state court action with prejudice, substantial monetary sanctions, and referral to The Florida Bar for disciplinary proceedings.

## COUNT VII: WRONGFUL GARNISHMENT AND CONVERSION

130.   Plaintiffs incorporate by reference all preceding paragraphs.

131.   The garnishment of Magicsoft Group Inc. bank accounts based on a judgment against a different entity (Magicsoft GRP, Inc.) constituted conversion of property belonging to the bankruptcy estate.

132.   Magicsoft Group Inc. was never named as a defendant in the state court action, was never served with process, and was never provided notice or opportunity to be heard regarding the claims or the garnishment of its assets.

133.    The garnishment violated Magicsoft Group Inc. due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by depriving it of property without due process of law.

134.    The attorney Defendants knew or should have known that garnishing a non-partys assets based on a judgment against a different entity was unlawful. The fact that the attorney Defendants proceeded anyway demonstrates willful misconduct.

135.    The wrongfully garnished funds are property of the bankruptcy estate. Under 11 U.S.C. § 542, persons holding property of the estate must deliver such property to the trustee. The attorney Defendants and their clients are obligated to return the wrongfully garnished funds to the estate.

136.    The wrongful garnishment caused actual damages to the estate and to Plaintiffs, who hold unsecured indemnification claims. The estate was deprived of funds needed to pay creditors' claims. Plaintiffs recovery under their indemnification rights was reduced by the depletion of estate assets.

137.    Plaintiffs are entitled to recover compensatory damages for the harm caused by the wrongful garnishment, including the full amount wrongfully seized plus interest, costs incurred in recovering the funds, and such other damages as may be proven.

136A. The garnishment of a non-party assets violates fundamental due process protections. The Supreme Court has held that "[a] judgment must be directly related to the proceedings which was had, in fact. If there was no service in the action, a judgment rendered therein is not entitled to the full faith and credit which the Constitution and statute of the United States require to be given to a valid judgment." *Pennoyer v. Neff*, 95 U.S. 714, 732 (1877). Courts consistently hold that garnishment of funds belonging to non-parties constitutes conversion. *See Fleet Mortg. Corp. v. Cendant Mobility Servs. Corp.*, 597 F. Supp. 2d 340, 350 (D. Conn. 2009) (conversion when funds garnished from non-party account).

**COUNT VIII: ABUSE OF PROCESS**

138.    Plaintiffs incorporate by reference all preceding paragraphs.

139.    The attorney Defendants used legal process (the state court default judgment and garnishment) for an improper purpose not intended by law: to seize assets from an entity that was not a party to the judgment and to circumvent that entitys bankruptcy protections.

140.    Under Florida law, abuse of process requires: (1) use of legal process; (2) for an ulterior or improper purpose; and (3) damages resulting from the improper use. Rombro v. Wash. Post Co., 444 F.2d 896, 899 (D.C. Cir. 1971).

141.    The attorney Defendants deliberately sued a dissolved entity to obtain an uncontested default judgment, then used that judgment to garnish assets of a different entity they knew was the actual party with assets. This use of process was not for the legitimate purpose of collecting a debt owed by the judgment debtor, but rather to seize assets from a non-party.

142.    When the actual contracting party sought bankruptcy protection, the attorney Defendants concealed this fact from the state court and continued using state court process to enforce void orders in violation of federal bankruptcy law.

143.    The improper use of process caused substantial damages to Plaintiffs and the bankruptcy estate, including depletion of estate assets, defense costs incurred in void proceedings, and interference with orderly bankruptcy administration.

144.    Plaintiffs are entitled to compensatory and punitive damages for the abuse of process.

        M.      Order the return of all funds wrongfully garnished from Magicsoft Group Inc. bank accounts, plus interest from the date of garnishment, on grounds that: (i) the garnishment was based on a judgment against a different entity (Magicsoft GRP, Inc.); (ii) Magicsoft Group Inc. was never a party to the state court action; (iii) the garnishment violated Magicsoft Group Inc. due process rights; (iv) the garnished funds are property of the bankruptcy estate under 11 U.S.C. § 541; and (v) Defendants must deliver estate property under 11 U.S.C. § 542;

N.      Declare that all orders issued by the state court in the State Court Action and Gamliel Action after August 17, 2025 are void ab initio under Kalb v. Feuerstein, 308 U.S. 433 (1940), because they were issued during the automatic bankruptcy stay in violation of 11 U.S.C. § 362(a);

O.      Declare that the default judgment obtained by Defendants against Magicsoft GRP, Inc. in the state court is void because: (i) the entity was dissolved on April 30, 2024 and lacked capacity to be served or defend; (ii) the judgment was obtained through fraud upon the court; and (iii) the entity lacked capacity to contract on May 13, 2024 as alleged in the state court Complaint;

P.      Find that the attorney Defendants committed systematic fraud upon multiple courts through: (i) deliberately suing a dissolved entity while knowing it lacked capacity; (ii) attaching dissolution documents to their own Complaint while alleging impossible contract dates; (iii) garnishing a non-partys assets based on a judgment against a different entity; (iv) concealing the bankruptcy filing from the state court; and (v) seeking to enforce void orders obtained through their misconduct;

Q.      Award Plaintiffs damages for conversion of estate property through the wrongful garnishment, including the full amount seized, interest, costs of recovery, and such other damages as may be proven;

R.      Award Plaintiffs compensatory and punitive damages for abuse of process arising from Defendants use of state court proceedings to seize assets from non-parties and circumvent bankruptcy protections;

51 | P a g e

S.      Issue an injunction prohibiting Defendants and their attorneys from: (i) enforcing any orders issued in the state court proceedings after August 17, 2025; (ii) taking any action to collect on the void default judgment; (iii) continuing prosecution of the State Court Action or Gamliel Action in violation of the automatic stay; and (iv) engaging in any further attempts to garnish estate property;

T.      Order Defendants to file notices in the state court proceedings informing those courts of: (i) the bankruptcy filing; (ii) the automatic stay; (iii) the identity of Magicsoft Group Inc. as the actual contracting party and bankruptcy debtor; (iv) the wrongful garnishment of the bankruptcy debtors assets; and (v) this Courts findings regarding the void orders and fraudulent conduct;

U.      Impose sanctions under 11 U.S.C. § 105(a) and this Courts inherent authority sufficient to: (i) compensate Plaintiffs for all injuries caused by Defendants' willful violations and fraudulent conduct; (ii) punish Defendants for their egregious misconduct; (iii) deter similar conduct by other parties; and (iv) vindicate the integrity of the bankruptcy system and judicial process;

V.      Find that the attorney Defendants' conduct warrants referral not only to the Florida Bar but also to the United States Trustee for investigation of potential criminal bankruptcy fraud under 18 U.S.C. § 152-157, based on: (i) knowing and fraudulent concealment of property of the estate; (ii) making false oaths or accounts regarding estate property; (iii) withholding documents

and information from the Court; and (iv) using bankruptcy proceedings to further a fraudulent scheme;

W.     Award enhanced damages reflecting the aggravated nature of Defendants misconduct, including: (i) multiple separate violations of the automatic stay spanning several months; (ii) violations continuing after actual notice and explicit warnings; (iii) fraud upon multiple courts; (iv) conversion of estate property; (v) abuse of process; and (vi) professional misconduct by licensed attorneys who knew or should have known their conduct was unlawful; and

X.     Grant such other and further relief as the Court deems just, equitable, and necessary to: (i) protect the bankruptcy estate; (ii) compensate Plaintiffs for all injuries; (iii) punish and deter egregious misconduct; (iv) vindicate the integrity of the judicial system; and (v) ensure respect for federal bankruptcy law and this Courts jurisdiction.

## SUMMARY OF MOST EGREGIOUS CONDUCT

This adversary proceeding presents an extraordinary case of coordinated misconduct by multiple defendants and their attorneys that rises far above typical automatic stay violations. The conduct at issue includes:

1. Deliberate Entity Confusion: Defendants sued a dissolved corporation (Magicsoft GRP, Inc.) while knowing their contract was with a different entity (Magicsoft Group Inc., the bankruptcy debtor). Defendants' own Complaint attached the dissolution documents and admitted the dissolution date, yet alleged the dissolved entity contracted thirteen days after dissolution—a chronological and legal impossibility.

2. **Fraudulent Default Judgment:** Defendants obtained a default judgment against an entity that was dissolved and lacked capacity to be served, appear, or defend, in violation of Florida corporate law and basic due process.

3. **Wrongful Garnishment of Non-Party Assets:** Defendants used the void judgment against the dissolved entity to garnish bank accounts belonging to the bankruptcy debtor—a completely different legal entity that was never a party to the state court action. This garnishment proves Defendants always knew which entity was the real party in interest.

4. **Systematic Concealment From Courts:** After receiving actual notice of the bankruptcy filing and automatic stay, attorney Defendants deliberately concealed this information from the state court, causing void orders to issue in violation of federal law.

5. **Continued Violations After Explicit Warnings:** Even after receiving explicit written warnings detailing the automatic stay violations and potential personal liability, Defendants persisted in their unlawful conduct for more than two months.

6. **Contradictory Positions on Bankruptcy Debtor:** After garnishing the bankruptcy debtors assets, Defendants now claim they have no interest in that entity—attempting to benefit from their garnishment while evading bankruptcy jurisdiction.

This pattern of conduct demonstrates willful, coordinated fraud designed to manipulate judicial processes, seize estate property, and circumvent federal bankruptcy protections. The misconduct warrants the maximum sanctions available under law.

96.     The first entity is Magicsoft GRP, Inc., a Florida corporation that was dissolved on April 30, 2024, according to Articles of Dissolution that Plaintiffs themselves attached as Exhibit 7 to their State Court Complaint. This entity has been legally dead for over a year and lacks capacity to be served, appear in court, defend lawsuits, or enter into contracts.

97.     The second entity is Magicsoft Group Inc., a separate corporation that is the actual contracting party identified in the GP Service Agreement and is the debtor in this bankruptcy case.

98.  Defendants knew exactly which entity they were dealing with—their own contract documents prove it. Yet they deliberately sued the dissolved entity (Magicsoft GRP, Inc.) while knowing the actual contracting party was Magicsoft Group Inc. This was not confusion or mistake. Defendants chose to sue a dissolved entity that could not defend itself, knowing they would obtain an uncontested default judgment. This is fraud.

99.  This entity confusion was not inadvertent. Plaintiffs State Court Complaint contains an internal chronological impossibility that proves knowledge: Plaintiffs attached Articles of Dissolution showing Magicsoft GRP, Inc. was dissolved on April 30, 2024, admitted this dissolution date in paragraph 113, yet alleged that this same dissolved entity entered into a contract with them on May 13, 2024—thirteen days after dissolution.

100.  Under Florida law (Fla. Stat. § 607.1405), a dissolved corporation lacks legal capacity to enter into new contracts. The entity Plaintiffs sued could not have contracted on the date Plaintiffs allege because it did not legally exist.

H. The Wrongful Garnishment Revealing Deliberate Entity Confusion

101.  The fraudulent nature of Defendants' conduct in the state court action is demonstrated by their garnishment activities, which reveal actual knowledge of the entity confusion and deliberate strategy to exploit it.

102.   After obtaining a default judgment against the dissolved entity Magicsoft GRP, Inc. in state
       court, Defendants then garnished bank accounts belonging to Magicsoft Group Inc.—the
       bankruptcy debtor—a completely different legal entity that was never a party to the state
       court judgment. This garnishment exposes the fraud: Defendants knew all along which
       entity held the assets, but they sued the wrong entity to obtain an uncontested judgment,
       then seized assets from the entity they knew was the real party. This is deliberate
       conversion of bankruptcy estate property through fraudulent process.

103.   This garnishment of a non-partys assets reveals multiple levels of misconduct. First, it
       demonstrates that Defendants knew all along that Magicsoft Group Inc., not Magicsoft
       GRP, Inc., was the entity with assets and the actual contracting party. Second, it constitutes
       conversion of property belonging to an entity against which Defendants had no judgment.
       Third, it violated Magicsoft Group Inc. due process rights by seizing its assets without ever
       naming it as a defendant or providing it notice and opportunity to be heard.

104.   The garnishment occurred before the August 17, 2025 bankruptcy filing but is critical to
       understanding the fraudulent scheme. Defendants deliberately sued a dissolved shell entity
       to obtain an uncontested default judgment, then used that void judgment to seize assets
       from the actual operating entity they knew was the real contracting party.

105.   Most remarkably, after garnishing Magicsoft Group Inc. bank accounts and seizing its
       assets, Defendants now claim in their state court Motion to Determine Inapplicability of
       Bankruptcy Stay that they have no claims against Magicsoft Group Inc. and assert the

bankruptcy stay does not apply to them. This contradictory position—garnishing an entitys assets while simultaneously claiming no claims against that entity—reveals calculated manipulation of the court system.

I. Fraud Upon the Courts Through Concealment of Bankruptcy

106.    After Magicsoft Group Inc. filed for bankruptcy protection on August 17, 2025, the attorney Defendants engaged in additional misconduct by concealing the bankruptcy from the state court.

107.    Plaintiffs received actual notice of the bankruptcy filing through formal Notice of Bankruptcy Filing served by Individual Defendants in the state court action. This notice expressly alerted the state court and all parties to: (a) the bankruptcy petition; (b) the identity of the debtor as Magicsoft Group Inc.; (c) the automatic stay under 11 U.S.C. § 362(a); and (d) the stays application to the state court proceedings.

108.    Despite receiving actual notice of the bankruptcy, the attorney Defendants deliberately concealed this information from the state court, continuing to prosecute discovery, file motions, and seek relief without disclosing the bankruptcy or the automatic stay. This silence breached their mandatory duty of candor to the tribunal under Florida Rule of Professional Conduct 3.3(a)(1), which requires lawyers to disclose material facts when disclosure is necessary to avoid assisting a client's criminal or fraudulent act. The attorney

Defendants knew the state court lacked jurisdiction and that the automatic stay prohibited all proceedings, yet they concealed these facts to continue extracting estate resources.

109.     This silence breached the attorney Defendants mandatory duty of candor to the tribunal under Florida Rule of Professional Conduct 3.3(a)(1), which requires lawyers to disclose material facts bearing on subject matter jurisdiction.

110.     Because of the attorney Defendants failure to disclose, the state court—acting in good faith and without knowledge of the bankruptcy—issued various orders after August 17, 2025. These orders are void ab initio under Kalb v. Feuerstein, 308 U.S. 433 (1940), because they were issued in violation of the automatic bankruptcy stay.

111.     The attorney Defendants now seek to enforce these void orders against Plaintiffs in the state court proceedings, compounding their violations of federal bankruptcy law and their fraud upon both courts.

J. The Systematic Pattern of Fraudulent Conduct

112.     The complete pattern of Defendants' conduct reveals a sophisticated fraud scheme designed to circumvent Florida corporate law and federal bankruptcy protections through deliberate manipulation of judicial processes. Each step was calculated, each deception intentional.

113.    First, Defendants sued a dissolved entity (Magicsoft GRP, Inc.) despite having actual knowledge through their own contract documents that this was not the contracting party and that it had been dissolved before the alleged contract date.

114.    Second, Defendants provided this Court and the state court with documentary evidence of the dissolution (the Articles of Dissolution attached as Exhibit 7) while simultaneously prosecuting claims that depended on that dissolved entity having capacity to contract after dissolution.

115.    Third, Defendants obtained a default judgment against the dissolved entity, which lacked capacity to be served, appear, or defend.

116.    Fourth, Defendants used this void judgment to garnish assets belonging to a different entity (Magicsoft Group Inc.) that was not a party to the judgment, demonstrating actual knowledge of which entity had assets and contractual obligations.

117.    Fifth, when the actual contracting party (Magicsoft Group Inc.) sought bankruptcy protection, Defendants concealed this fact from the state court and continued prosecution in violation of the automatic stay.

118.    Sixth, Defendants now claim they have no interest in the bankruptcy debtor (Magicsoft Group Inc.) despite having garnished its bank accounts and despite their contract being with that entity.

119. This pattern of conduct demonstrates willful, coordinated fraud designed to obtain judgments through deception, seize assets from non-parties, and evade bankruptcy protections—all while manipulating multiple courts through selective disclosure and strategic silence.

Dated: October 27, 2025

Respectfully submitted,

/s/ Gabriel Bar Shany

Gabriel Bar Shany

323 Sunny Isles Blvd

Sunny Isles Beach, FL 33160

Email: Gabe@dealestate.ai

/s/ Shani Bar

Shani Bar

323 Sunny Isles Blvd

Sunny Isles Beach, FL 33160

Email: Shany@dealestate.ai

/s/ Bella Cohen

Bella Cohen

323 Sunny Isles Blvd

Sunny Isles Beach, FL 33160

Email: Bella@dealestate.ai


/s/ Aron Berlin

Aron Berlin

Petitioner Creditor

In re: Magicsoft Group, Inc. Bankruptcy

Case No. 25-35888-KYP

4118 14th Ave

Brooklyn NY 11219

Berlinahron@gmail.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:

MAGICSOFT GROUP, INC.,

                                                              Case No. 25-35888-KYP
                                                                          Chapter 7

                                                                            Debtor.

-------------------------------------------------------------------x

GABRIEL BAR SHANY,
SHANI BAR,
BELLA COHEN,
ARON BERLIN, and

                                                              Adversary Proceeding No.

                                                                          Plaintiffs,

                         v.

JENNIFER SAFKEN and
CHRISTOPHER SAFKEN,
EMMA A. PASCUAL, ESQ.,
JOHN R. SUTTON, ESQ.,
SUTTON POMARES LAW GROUP, P.A.,
CHRIS TINSLEY,
AHUVA GAMLIEL,
JOSHUA H. EGGNATZ, ESQ.,
MICHAEL J. PASCUCCI, ESQ., and
EGGNATZ | PASCUCCI,

                                                                          Defendants.

-------------------------------------------------------------------x

**TABLE OF CONTENTS AND EXHIBIT LIST**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT                                                             2

NATURE OF THE ACTION                                                              4

JURISDICTION AND VENUE                                                            5

PARTIES                                                                           6

    A. Plaintiffs                                             6

    B. Defendants                                             7

STATEMENT OF FACTS                                                                9

    A. Plaintiffs' Relationship with Magicsoft and Contractual Indemnification Rights    9

    B. The State Court Actions Against Plaintiffs             10

    C. Coordinated Enterprise and Threats Against Plaintiffs    11

    D. Magicsoft's Bankruptcy Filing and the Automatic Stay    18

    E. Defendants Received Actual Notice of the Bankruptcy Filing    21

    F. Defendants Willful Violations of the Automatic Stay    21

    G. Harm to Plaintiffs and the Bankruptcy Estate          24

    H. The Wrongful Garnishment Revealing Deliberate Entity Confusion    56

    I. Fraud Upon the Courts Through Concealment of Bankruptcy    58

    J. The Systematic Pattern of Fraudulent Conduct          59

CLAIMS FOR RELIEF                                                                 25

    COUNT I: Willful Violation of the Automatic Stay (11 U.S.C. § 362(k))    25

    COUNT II: Civil Contempt for Stay Violations (11 U.S.C. § 105(a))    28

    COUNT III: Fraud Upon the Court                          30

    COUNT IV: Professional Misconduct and Violation of Florida Rules    32

    COUNT V: Declaratory Relief (28 U.S.C. § 2201)           33

    COUNT VI: Systematic Fraud Upon Multiple Courts          43

    COUNT VII: Wrongful Garnishment and Conversion           47

    COUNT VIII: Abuse of Process                             49

    COUNT IX: Civil Conspiracy to Violate Automatic Stay     41

    COUNT X: Tortious Interference with Bankruptcy Estate    42

PRAYER FOR RELIEF                                                                 34

JURY DEMAND                                                                       43

SUMMARY OF MOST EGREGIOUS CONDUCT                                                 54

**EXHIBIT LIST**

The following exhibits are referenced in or attached to the Complaint for Violation of Automatic Stay, Declaratory Relief, and Sanctions:

**Exhibit 1:** Independent Contractor Agreements between Plaintiffs and Magicsoft Group Inc. (containing indemnification provisions)

**Exhibit 2:** Complaint in Case No. 2025-020063-CA-01 (State Court Action), Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida

**Exhibit 3:** Complaint in Case No. 2025-004959-CA-01 (Gamliel Action), Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida

**Exhibit 4:** Involuntary Chapter 7 Bankruptcy Petition, Case No. 25-35888-KYP, filed August 17, 2025

**Exhibit 5:** Notice of Bankruptcy Filing and Automatic Stay served on Defendants

**Exhibit 6:** Articles of Dissolution for Magicsoft GRP, Inc. (dissolved April 30, 2024)

**Exhibit 7:** Motion for Default Judgment filed by Gamliel attorney Defendants (filed September 29, 2025)

**Exhibit 8:** Notice of Hearing for Renewed Motion for Default filed by John R. Sutton (filed October 16, 2025, scheduling hearing for October 28, 2025)

**Exhibit 9:** Email from John R. Sutton to Gabriel Bar Shany dated October 17, 2025, acknowledging bankruptcy filing

**Exhibit 10:** Response from Gabriel Bar Shany to John R. Sutton warning of automatic stay violations and personal liability

**Exhibit 11:** Default Judgment obtained against Magicsoft GRP, Inc. in State Court Action

**Exhibit 12:** Garnishment documents showing seizure of Magicsoft Group Inc. bank accounts based on judgment against Magicsoft GRP, Inc.

**Exhibit 13:** GP Service Agreement identifying Magicsoft Group Inc. as contracting party

**Exhibit 14:** Correspondence from Aron Berlin to Emma A. Pascual demanding return of wrongfully garnished estate funds

**Exhibit 15:** Complaint in Gabriel Bar Shany et al v. Chris Tinsley et al, Case No. 1:25-cv-08040-LTS (S.D.N.Y.) (Civil RICO Action)

**Exhibit 16:** Motion to Determine Inapplicability of Bankruptcy Stay filed by Defendants in State Court

*Note: Additional exhibits may be added as discovery proceeds and as necessary to support the claims and relief requested in this adversary proceeding.*